Anthony C. Kaye (Utah SBN 8611)
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
875 Third Avenue
New York, NY 10022
Telephone: (212) 704-6128
Email: Tony.Kaye@troutman.com

Nathan R. Marigoni (Utah SBN 14885)
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308
Telephone: (470) 832-5575
Email: Nathan.Marigoni@troutman.com

Matthew H. Ladner (*pro hac vice forthcoming*)
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
350 S. Grand Ave., Suite 3400
Los Angeles, CA 90071
Telephone: (213) 928-9816
E-mail: Matthew.Ladner@troutman.com

William M. Taylor (*pro hac vice forthcoming*)
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
125 High St., 19th Floor
Boston, MA 02110
Telephone: (617) 204-5186
Email: William.Taylor@troutman.com

*Attorneys for Defendant*
HFN, INC.

## UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ALLAN MILLER,<br><br>                             Plaintiff,<br><br>    vs.<br><br>HFN, INC., a Delaware Corporation, d/b/a as NANOHEAL BY HFN INC.; KALAARI CAPITAL ADVISORS PRIVATE LIMITED, an Indian Company; SRIDHAR SANTHANAM; KUMAR SHIRALAGI; PAVAN VAISH; and VANI KOLA,<br><br>                           Defendants. | **DEFENDANT HFN, INC.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Case No. 2:23-cv-00733-CMR<br><br>Magistrate Judge Cecilia M. Romero |

164965056v9

# TABLE OF CONTENTS

Page

MOTION.................................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

I.    INTRODUCTION AND SUMMARY OF GROUNDS FOR RELIEF
      PURSUANT TO DUCivR 7-1................................................................... 1

II.   RELEVANT PROCEDURAL HISTORY AND FACTUAL
      ALLEGATIONS....................................................................................... 3

      A.    Procedural History Involving the California Action.................................. 3

      B.    Relevant Factual Allegations in the FAC in This Action ......................... 5

III.  THE COURT SHOULD DISMISS THE FAC AS TO HFN ............................. 7

      A.    Plaintiff Cannot State a Valid Fiduciary Duty Claim Against HFN........... 7

      B.    Plaintiff Cannot State a Valid Conversion Claim Against HFN................. 9

      C.    Plaintiff Cannot Maintain Any Claims on a Derivative Basis................. 10

      D.    Plaintiff Cannot State a Valid Fraudulent Misrepresentation Claim ........ 12

            1.    *Res Judicata* Bars Plaintiff's Fraud Claim.................................... 12

            2.    The Settlement and SPA Bar Plaintiff's Fraud Claim .................. 17

            3.    Plaintiff Has Failed to Plead Sufficient Facts Establishing
                  Fraud ........................................................................................ 20

            4.    Plaintiff's Fraud Claim Is Untimely ........................................... 21

IV.   CONCLUSION........................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Univ. of the Caribbean v. Tien*,
No. 04-20834-CIV-GOLD/TORRES, 2013 U.S. Dist. LEXIS 201122 (S.D.
Fla. Dec. 2, 2013)............................................................................................................11

*Anderson v. Transglobe Energy Corp.*,
35 F. Supp. 2d 1363 (M.D. Fla. 1999)...........................................................................16

*Angel Investors, LLC v. Garrity*,
216 P.3d 944 (Utah 2009)...............................................................................................11

*AVT Cal., L.P. v. Arrow Recycling Sols., Inc.*,
No. 2:19-cv-00939-JNP, 2020 U.S. Dist. LEXIS 171574 (D. Utah Sep. 18,
2020) ("Utah courts [] follow the internal affairs doctrine.")............................................7

*Axar Master Fund, Ltd. v. Bedford*,
806 F. App'x 35 (2d Cir. 2020) .......................................................................................15

*Barnard v. Verizon Communs., Inc.*,
451 Fed. App'x 80 (3d Cir. 2011).....................................................................................15

*Bateman v. JAB Wireless*,
No. 2:14-cv-147-RJS, 2015 U.S. Dist. LEXIS 88094 (D. Utah July 6, 2015) .........................8

*Bluefeld v. Cohen*,
Civil Action No. PX 15-2857, 2017 U.S. Dist. LEXIS 64395 (D. Md. Apr. 27,
2017) *aff'd* 697 Fed. App'x 788 (4th Cir. 2017)...............................................................11

*Bocock v. Innovate Corp.*,
2022 Del. Ch. LEXIS 307 (Oct. 28, 2022) ......................................................................10

*Buttonwood Tree Value Partners, L.P. v. R.l Polk & Co.*,
Civil Action No. 9250-VCG, 2014 Del. Ch. LEXIS 141 (Aug. 7, 2014)..............................8

*Chase Manhattan Mortg. Corp. v. Advanta Corp.*,
Civil Action No. 01-507 (KAJ), 2005 U.S. Dist. LEXIS 19374 (D. Del. Sep.
8, 2005) ...........................................................................................................................16

*Cohen v. Moore*,
Civil Action No. 16-661, 2016 U.S. Dist. LEXIS 179476 (W.D. Pa. Dec. 29,
2016) ...............................................................................................................................11

*Collins v. Sandy City Bd. of Adjustment,*
   52 P.3d 1267 (Utah 2002) .................................................................................15

*Colosimo v. Roman Catholic Bishop,*
   156 P.3d 806 (Utah 2007) .................................................................................21

*Dole Food Co. v. Patrickson,*
   538 U.S. 468 (2003) ...........................................................................................9

*Drobny v. Lanham,*
   680 F. App'x 486 (7th Cir. 2017) .....................................................................11

*duPont v. duPont,*
   42 Del. Ch. 246 (1965) .......................................................................................9

*Facebook, Inc. v. Pac. Nw. Software, Inc.,*
   640 F.3d 1034 (9th Cir. 2011) .....................................................................18, 19

*Fibro Trust, Inc. v. Brahman Fin., Inc.,*
   974 P.2d 288 (Utah 1993) ...................................................................................9

*Frandsen v. Westinghouse,*
   46 F.3d 975 (10th Cir. 1995) ............................................................................13

*Fymbo v. State Farm Fire & Cas. Co.,*
   213 F.3d 1320 (10th Cir. 2000) ........................................................................11

*Gables at Sterling Vill. Homeowners Ass'n v. Castlewood-Sterling Vill. I, LLC,*
   417 P.3d 95 (Utah 2018) .....................................................................................8

*Gaddy v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints,*
   No. 2:19-cv-00554-RJS-DBP, 2023 U.S. Dist. LEXIS 54523 (D. Utah Mar. 28, 2023) ..........................................................................................................20

*Gubricky v. Ellis,*
   255 F. Supp. 3d 1119 (D. Colo. 2017)...............................................................11

*Haik v. Salt Lake City Corp.,*
   393 P.3d 285 (Utah 2017) .................................................................................13

*Haik v. Salt Lake City Corp.,*
   567 Fed. App'x 621 (10th Cir. 2015) ............................................................14, 15

*Hamilton Ptrs., L.P. v. England,*
   11 A.3d 1180 (Del. Ch. 2010)..............................................................................8

HFN, INC.'S MOTION TO DISMISS THE FAC / CASE NO. 2:23-cv-00733-CMR

164965056v9

*IBM v. Simon*,
   376 F. Supp. 3d 292 (S.D.N.Y. 2019)....................................................................19

*Johnson v. King*,
   No. 10-CV-279-S, 2011 U.S. Dist. LEXIS 119998 (D. Wyo. Oct. 17, 2011)........................19

*Kuroda v. SPJS Holdings, L.L.C.*,
   971 A.2d 872 (Del. Ch. 2009)............................................................................9

*LBF Travel Mgmt. Corp. v. DeRosa*,
   No. 20-cv-2404-MMA (AGS), 2021 U.S. Dist. LEXIS 220133 (S.D. Cal.
   Nov. 15, 2021) ..........................................................................................10

*MACTEC, Inc. v. Gorelick*,
   427 F.3d 821 (10th Cir. 2005) ..........................................................................13

*Mason v. Laramie Rivers Co.*,
   490 P.2d 1062 (Utah 1971)...............................................................................22

*In re Multiplan Corp. Stockholders Litig.*,
   268 A.3d 784 (Del. Ch. 2022)............................................................................8

*Murphy v. Gallagher*,
   761 F.2d 878 (2d Cir. 1985)............................................................................16

*Nelson v. Nelson*,
   529 P.3d 370 (Utah 2023)...............................................................................14

*Newsome v. Gallacher*,
   722 F.3d 1257 (10th Cir. 2013) .........................................................................7

*Nikols v. Chesnoff*,
   435 Fed. App'x 766 (10th Cir. 2011) (Utah law) ...............................................13

*NM IQ LLC v. McVeigh*,
   2004 U.S. Dist. LEXIS 24775 (S.D.N.Y. Dec. 8, 2004) ......................................16

*In re Orchard Enters., Inc.*,
   88 A.3d 1 (Del. Ch. 2014)..............................................................................8

*Penrod v. Nu Creation Creme*,
   669 P.2d 873 (Utah 1983)...............................................................................13

*Plotner v. AT&T Corp.*,
   224 F.3d 1161 (10th Cir. 2000) .......................................................................14

*Pridgen v. Andresen*,
   113 F.3d 391 (2d Cir. 1997) ...............................................................................11

*Pyott v. La. Mun. Police Emples.' Ret. Sys.*, 74 A.3d 612 (Del. 2013) .........................................11

*Reynolds v. Knox Cnty. Gov't*,
   No. 3:17-cv-79, 2019 U.S. Dist. LEXIS 251378 (E.D. Tenn. May 3, 2019) .........................21

*Ross v. Bernhard*,
   396 U.S. 531 (1970) ..........................................................................................11

*In re Saba Software, Inc. S'holder Litig.*,
   2017 Del. Ch. LEXIS 52 (Mar. 31, 2017) ...........................................................10

*Simon v. Hartford Life & Accident Ins. Co.*,
   546 F.3d 661 (9th Cir. 2008) .............................................................................11

*Slocum v. Corporate Express US Inc.*,
   446 Fed. App'x 957 (10th Cir. 2011) .................................................................15

*Southam v. S. Despain Ditch Co.*,
   337 P.3d 236 (Utah 2014) ...................................................................................9

*Springfield Fin. & Mortg. Co., LLC v. Lilley*,
   No. 2:14-CV-00679-EJF, 2015 WL 12780894 (D. Utah Sept. 29, 2015) ....................10

*Stan Lee Media, Inc. v. Walt Disney Co.*,
   774 F.3d 1292 (10th Cir. 2014) .........................................................................16

*State v. Sommerville*,
   297 P.3d 665 (Utah Ct. App. 2013) ...................................................................16

*Tal v. Hogan*,
   453 F.3d 1244 (10th Cir. 2006) .........................................................................11

*Taylor v. Sturgell*,
   553 U.S. 880 (2008) ..........................................................................................12

*In re Tyson Foods, Inc.*,
   919 A.2d 563 (Del. Ch. 2007) ...........................................................................22

*United Food & Comm. Wrks. Union v. Zuckerberg*,
   262 A.3d 1034 (Del. 2021) ................................................................................12

*United Wholesale Mortg., LLC v. Am.*
   *'s Moneyline, Inc.*, 647 F. Supp. 3d 587 (E.D. Mich. 2022) ................................20

vi

*Warner v. Dmg Color*,
    20 P.3d 868 (Utah 2000) ................................................................................................10

*Wasatch Oil & Gas, LLC v. Reott*,
    263 P.3d 391 (Utah Ct. App. 2011) ...............................................................................7

*Watson v. Mylan Pharms.*,
    795 Fed. App'x 584 (10th Cir. 2019) ............................................................................13

*In re Zoran Corp. Deriv. Litig.*,
    511 F. Supp. 2d 986 (N.D. Cal. 2007) ..........................................................................11

**Statutes**

8 Del. C. § 220 ..............................................................................................................21, 22

Securities Exchange Act ........................................................................................................4

Utah Code Ann. § 78-12-26 ..............................................................................................3, 21

**Other Authorities**

Fed. R. Civ. P. 9 ...................................................................................................1, 4, 20, 21

Fed. R. Civ. P. 12 .......................................................................................................1, 15

Fed. R. Civ. P. 23.1 ............................................................................................1, 3, 11, 12

HFN, INC.'S MOTION TO DISMISS THE FAC / CASE NO. 2:23-cv-00733-CMR

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant HFN, Inc. ("**HFN**") hereby moves the Court for an order dismissing the First Amended Complaint ("**FAC**") filed by *pro se* Plaintiff Allan Miller ("**Plaintiff**") with prejudice, pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(6), and 23.1, as well as applicable case law. This Motion is made on the grounds that Plaintiff has failed to state a claim against HFN upon which relief can be granted, and to the extent Plaintiff has alleged claims that are derivative in nature, he cannot maintain those claims given his *pro se* status, and he has failed to comply with the requirements of Rule 23.1.

The Motion is based upon the following Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice ("**RJN**") and the exhibits thereto, the pleadings and other documents filed in this action, and any other argument or evidence the Court may consider.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.  INTRODUCTION AND SUMMARY OF GROUNDS FOR RELIEF PURSUANT TO DUCivR 7-1**

Plaintiff is a dissatisfied minority shareholder of HFN who is determined to harass the company with serial litigation, despite repeatedly being advised that his alleged claims are devoid of merit. To that end, this action is a regurgitation of the same facially defective claims against HFN and its current and former officers and directors related to the purported mismanagement of the company that Plaintiff already unsuccessfully pursued in federal court in California. Specifically, in February 2023, Plaintiff filed a lawsuit in the U.S. District Court for the Northern District of California (the "**N.D. Cal.**") in which he asserted the same allegations and claims of corporate mismanagement, waste, and fraud that he makes in the operative FAC here (the "**California Action**"). The Defendants named in the California Action and this case are identical.

After giving Plaintiff multiple opportunities to plead his claims, the N.D. Cal. dismissed Plaintiff's state law claims for lack of personal jurisdiction, and dismissed his federal securities fraud claims on the merits and with prejudice. In response to the N.D. Cal.'s dismissal order, Plaintiff filed a 19-Count, 85-page, 483-paragraph FAC in this Court which mirrors, and is an amalgam of, his failed pleadings from the California Action. As summarized below Plaintiff's alleged claims are legally barred on their face and should be dismissed.

**First**, in Counts 3, 7, 11, 13, 14, 16, 17 and 19 of the FAC, Plaintiff claims HFN breached its alleged fiduciary duties by mismanaging the company in a variety of ways, such as entering misguided strategic partnerships, having poor corporate governance, failing to implement HR procedures, failing to monetize intellectual property, and misallocating equity from HFN's employee stock option pool ("**ESOP**"). But, under Delaware law (which governs these Counts pursuant to the "internal affairs doctrine"), a corporation **does not** directly owe its shareholders fiduciary duties. Rather fiduciary duties are only owed by the officers or directors of the corporation, and not the corporation itself. Thus, Plaintiff cannot plead the existence of a fiduciary duty owed by HFN, which is fatal to his fiduciary duty claims against HFN.

**Second**, in Counts 4, 8, 12, and 15 of the FAC, Plaintiff alleges claims for aiding and abetting breach of fiduciary duty. To the extent these Counts are also directed to HFN, they fail because Delaware law is also clear that a corporation cannot aid and abet fiduciary breaches allegedly committed by its own officers and directors.

**Third**, in Counts 1, 5, 9, and 10, Plaintiff alleges HFN fraudulently converted corporate assets, such as payments to third-party vendors, company cash, and employee salaries and travel budgets. However, an essential element of conversion is the plaintiff's personal entitlement to immediately possess the converted property. It is black-letter law that Plaintiff – a shareholder of HFN – has no right to immediately possess the **corporation's** assets. Accordingly, Plaintiff cannot maintain a conversion claim with respect to HFN's property, nor pursue the tag-along claims for

aiding and abetting conversion alleged in Counts 2 and 6.

**Fourth**, and as set forth more fully in the Motion to Dismiss of Defendant Kumar Shiralagi ("**Shiralagi**"), it is clear that, in substance, Plaintiff's fiduciary duty and conversion claims are derivative in nature because they are predicated on the purported misuse of HFN's resources to the detriment of the company. As such, these claims are barred for the additional reasons that: (1) *pro se* litigants cannot maintain derivative claims; and (2) Plaintiff has failed to comply with the requirements for derivative actions prescribed by Rule 23.1.

**Finally**, in Count 18 of the FAC, Plaintiff asserts that HFN falsely represented during 2015 settlement talks that the company's ESOP would be used in the future to attract employees. This fraud claim must be dismissed for at least four reasons: (1) it is barred by *res judicata* in light of the N.D. Cal.'s dismissal with prejudice of Plaintiff's substantively identical securities fraud claims; (2) it is barred by the releases contained in Plaintiff's 2015 written settlement ("**Settlement**") and related stock purchase agreement ("**SPA**") with HFN; (3) Plaintiff has failed to plead facts stating a valid fraud claim; and in any event (4) the claim is untimely under the 3-year statute of limitations prescribed by Utah Code Ann. § 78-12-26.

## II.    RELEVANT PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS

### A.    Procedural History Involving the California Action

On February 6, 2023, Plaintiff filed his Complaint in the California Action, asserting claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, federal securities fraud, and inspection of records, and seeking damages for the purported mismanagement of HFN, which, according to Plaintiff, deprived him of his *pro rata* share of the company's resources and impaired the value of his shares. (RJN, Ex. 1). HFN moved to dismiss for lack of jurisdiction, improper venue, and failure to state a claim, and the N.D. Cal. granted the motion with leave to amend on May 10, 2023. (RJN, Exs. 2-3). In its order, the N.D. Cal. found Plaintiff did "not come close to satisfying the minimum contacts test for specific personal jurisdiction." Furthermore, the N.D.

Cal. concluded that although the Securities Exchange Act can "confer[] personal jurisdiction over a defendant in any federal district court[,]" Plaintiff had "come[] well short of adequately pleading a securities fraud claim" based on his allegations that HFN had entered a misguided strategic partnership with a company named Seed Group, and that HFN had wrongfully issued equity to its officers and directors.  (RJN, Ex. 3 at pp. 1-2; *see also* RJN, Ex. 1 at ¶¶ 112-123).

On May 31, 2023, Plaintiff filed his First Amended Complaint in the California Action, which largely tracked the claims and allegations from the original Complaint, with certain exceptions (RJN, Ex. 4).  For example, Plaintiff abandoned his initial theory of securities fraud related to Seed Group and replaced it with a new theory.  Specifically, Plaintiff alleged he was induced to settle then-pending litigation with HFN in 2015 based on representations by HFN's counsel during settlement talks that the company's ESOP would be used in the future to attract talented employees.  (RJN, Ex. 4 at ¶¶ 24-36, 119-126).  According to Plaintiff, this purported statement – which is not reflected in the parties' resulting Settlement and SPA – later proved false because, sometime after 2015, HFN allegedly began using the ESOP to issue equity to certain insiders, including its CEO Sridhar Santhanam.  (*Id.*).

HFN and Shiralagi subsequently moved to dismiss Plaintiff's amended pleading, (RJN, Exs. 5-6), and on August 16, 2023, the N.D. Cal. granted their motions and dismissed the California Action without leave to amend.  With respect to Plaintiffs' state law claims, the N.D. Cal found Plaintiff still "came nowhere close to alleging HFN's minimum contacts with California" and "contain[ed] no allegations whatsoever regarding Shiralagi's California connections."  Next, "[a]s for the securities fraud claim," the N.D. Cal. held "the new allegations regarding defendants' purported misrepresentations during settlement discussions in 2015 still f[e]ll well short of the heightened pleading requirements of Rule 9," because "[e]ven if [Plaintiff's] claim were not barred by the settlement agreement . . , and it probably is, these allegations are not made with sufficient particularity, nor do they come close to supporting an inference of scienter

given the length separation in time" between the Settlement and alleged misuse of HFN's ESOP. (RJN, Ex. 7 at pp. 1-2).

Consistent with these conclusions, and "[b]ecause any further amendment would be futile, the securities fraud claim [was] dismissed with prejudice, and the state law claims [were] dismissed for lack of jurisdiction without leave to amend[,]" following which the N.D. Cal. entered judgment against Plaintiff. (*Id.* at p. 2; RJN, Ex. 8).[1]  In response, Plaintiff filed a notice of appeal, but later abandoned and dismissed his appeal. (RJN, Exs. 9-10).

## B.     Relevant Factual Allegations in the FAC in This Action

Plaintiff's FAC in this case recycles (and often quotes *verbatim*) the allegations and claims in the California Action. Plaintiff, a minority shareholder of HFN, alleges he was contacted by "anonymous informants" in 2022 regarding concerns "about the manner in which HFN was being run and the negative consequences that might result[,]" including that "key resources" of the company "were not being utilized to advance the interests of HFN but were instead" being used to benefit HFN's officers and directors. (FAC ¶¶ 2, 20).  In July 2022, Plaintiff asked for a shareholder meeting and to review corporate records, but nothing came of his request because Plaintiff declined to execute a confidentiality agreement governing his use of HFN's information. (*Id.* ¶¶ 21-29).  Against this backdrop, the FAC lists various ways HFN is supposedly mismanaged.

**First**, Plaintiff alleges Defendants have diverted corporate profits to themselves by issuing "fraudulent invoices" to HFN's customer support vendor, Zen Support Force ("**Zen**"). (*Id*. ¶¶ 31-34 (the "**Zen Allegations**")).  **Second**, Plaintiff asserts HFN has entered an ill-advised partnership with Dubai-based Seed Group ("**Seed Partnership**"), which Plaintiff speculates is designed to transfer HFN's assets to a separate entity where they can be controlled "on demand by

---

[1] Although Plaintiff only served HFN and Shiralagi, the N.D. Cal. also dismissed the case as to the unserved Defendants located in India, because it was "obvious that [Plaintiff] [could not] obtain relief even as to those defendants who have not yet appeared." (RJN, Ex. 7 at p. 2).

the Board outside the reach" of Plaintiff.  (*Id.* 35-38 (the "**Seed Allegations**")).  __Third__, Plaintiff claims HFN has misused its ESOP by issuing equity to insiders.  (*Id.* ¶¶ 39-50) (the "**ESOP Allegations**").  __Fourth__, Plaintiff contends Mr. Santhanam and Ruby Jha have misused their time and HFN travel budgets to engage in non-HFN activities which are interfering with their duties at HFN (*Id.* ¶¶ 51-58 (the "**Distraction Allegations**")).  __Fifth__, Plaintiff alleges HFN's corporate governance is "in a state of disarray," including because its website contains outdated information, it has elected unqualified directors to "back-date" unspecified "Board decisions[,]" and the company does not keep Board minutes.  (*Id.* ¶¶ 59-65 (the "**Governance Allegations**")).  __Sixth__, Plaintiff alleges HFN "lacks basic corporate oversight and controls" because it does not have an "effective" human resources ("**HR**") department or procedures, which may expose HFN to liability.  (*Id.* ¶¶ 66-69 (the "**HR Allegations**")).  __Seventh__, Plaintiff asserts HFN has failed to protect and monetize its patent portfolio and has pledged patents as collateral in a transaction with entities Plaintiff speculates are a "side venture" of Defendants.  (*Id.* ¶¶ 70-81 (the "**Patent Allegations**")).  __Eighth__, Plaintiff alleges HFN fails to maintain and update its software, purportedly leaving HFN and its customers vulnerable to data breaches.  (*Id.* ¶¶ 82-95 (the "**Software Allegations**")).  __Ninth__, Plaintiff asserts HFN's website is poorly designed.  (*Id.* ¶¶ 96-99 (the "**Webpage Allegations**")).

Finally – just as in the California Action – Plaintiff alleges he was induced to enter a Settlement with HFN in 2015 based on representations during settlement negotiations that the company's ESOP would be used in the future to attract talented employees.  Plaintiff claims that after he entered the Settlement, HFN began using the ESOP to provide equity to insiders, including its CEO, Mr. Santhanam.  (*Id.* ¶¶ 39-50, 392-446).  Plaintiff's fraud allegations in this case omit or gloss over various facts he included and admitted in the California Action, including that: (i) during settlement negotiations, Plaintiff was represented by sophisticated litigation counsel; (ii) Plaintiff's 2015 Settlement with HFN attaches and incorporates the SPA under which Plaintiff

acquired additional stock in the company; and (iii) the Settlement and SPA not only lack any mention of the future use of the ESOP, but also contain broad release, no-prior-representation, no-reliance, and integration provisions. (*Compare with* RJN, Ex. 4 at ¶¶ 24-29 and Exs. 4 and 7 thereto; *see also* RJN, Ex. 11).[2]

## III. THE COURT SHOULD DISMISS THE FAC AS TO HFN

### A. Plaintiff Cannot State a Valid Fiduciary Duty Claim Against HFN

In Counts 3, 7, 11, 13, 14, 16, 17, and 19 of the FAC, Plaintiff alleges HFN owed to him, and breached, fiduciary duties of "care" and "disclosure" based upon the Zen, Seed, Corporate Governance, HR, Patent, Software, Website, and ESOP Allegations, all of which effectively claim HFN is being mismanaged and its resources wasted or diverted for purposes other than the benefit of the company and its shareholders. (FAC ¶¶ 138-164, 210-236, 284-314, 320-368, 374-391, 447-483). Assuming, for argument's sake, that Plaintiff is proceeding on a "direct" rather than "derivative" basis as he asserts in the FAC (*id.* ¶ 100) – which, as explained below, he is not – these claims fail because HFN does not owe its shareholders, including Plaintiff, a fiduciary duty.

HFN is incorporated in Delaware, (*id.* ¶ 7), and it is well-established under the "internal affairs" doctrine that breach of fiduciary duty claims involving corporations are governed by the law of the state of incorporation. *Newsome v. Gallacher*, 722 F.3d 1257, 1272 (10th Cir. 2013) (it was "undisputed that Delaware law govern[ed] the breach of fiduciary duty claims" concerning a Delaware corporation); *Wasatch Oil & Gas, LLC v. Reott*, 263 P.3d 391, 393 (Utah Ct. App. 2011) ("because Mission was organized under the laws of Colorado, those laws should govern Mission's 'organizational and internal affairs'"); *AVT Cal., L.P. v. Arrow Recycling Sols., Inc.*, No. 2:19-cv-

---

[2] The Court may take judicial notice of and consider the Settlement and SPA since the FAC expressly references, and predicates its fraud claim on, the Settlement. *See concurrently filed Request for Judicial Notice.*

00939-JNP, 2020 U.S. Dist. LEXIS 171574, at *21 (D. Utah Sep. 18, 2020) ("Utah courts [] follow the internal affairs doctrine.").[3]

Applying the doctrine here, "Delaware law" is "settled" that "[f]iduciary duties are owed by the directors and officers to the corporation and its shareholders. **In other words, a corporation _does not_ owe fiduciary duties to its stockholders**." *Buttonwood Tree Value Partners, L.P. v. R.l Polk & Co.*, Civil Action No. 9250-VCG, 2014 Del. Ch. LEXIS 141, at *11-12 (Aug. 7, 2014) (emphasis added). Thus, to "the extent the Plaintiff[] allege[s] that [HFN] as a corporate entity breached its fiduciary duties in connection with" the various matters described in the FAC, that claim "must fail." *Id.*; *see also In re Orchard Enters., Inc.*, 88 A.3d 1, 54 (Del. Ch. 2014) ("The fiduciaries who serve the entity owe fiduciary duties; the entity that is served does not.").[4] Because a fiduciary relationship is an essential element of a fiduciary duty claim[5] – and because Plaintiff cannot establish that HFN owed him any fiduciary duty – FAC's fiduciary duty Counts must be dismissed.

Furthermore, in Counts 4, 8, 12, and 15, Plaintiff alleges claims for aiding and abetting breach of fiduciary duty with respect to: (a) the alleged misallocation of payments to Zen; (b) the Seed Partnership; (c) HFN's alleged corporate governance deficiencies; and (d) the inadequate monetization of HFN's patents. (FAC ¶¶ 165-173, 237-245, 315-319, 369-373). It does not appear HFN is the target of these Counts, nor could it be since a corporation cannot "aid and abet the fiduciary breaches of those who direct its operations." *Buttonwood Tree Value Ptrs., L.P.*, 2014 Del. Ch. LEXIS 141, at *1; *see also Hamilton Ptrs., L.P. v. England*, 11 A.3d 1180, 1211-1212

---

[3] All citations using the "Fed. App'x", "LEXIS", or "WL" format are unpublished decisions.

[4] Utah law is in accord. *Bateman v. JAB Wireless*, No. 2:14-cv-147-RJS, 2015 U.S. Dist. LEXIS 88094, at *13 (D. Utah July 6, 2015) (granting motion to dismiss fiduciary duty claim against corporation).

[5] *In re Multiplan Corp. Stockholders Litig.*, 268 A.3d 784, 818 (Del. Ch. 2022); *Gables at Sterling Vill. Homeowners Ass'n v. Castlewood-Sterling Vill. I, LLC*, 417 P.3d 95, 109 (Utah 2018).

(Del. Ch. 2010) ("Under the internal affairs doctrine, Delaware law . . . also governs the aiding and abetting claim predicated on the underlying fiduciary breach.").

**B.** **Plaintiff Cannot State a Valid Conversion Claim Against HFN**

In Counts 1, 5, 9, and 10, Plaintiff asserts claims for conversion of HFN's assets – namely: (a) payments from HFN to Zen; (b) HFN cash that was supposedly transferred to Seed; and (c) employee salaries and travel budgets that were purportedly devoted to non-HFN activities. (FAC ¶¶ 102-120, 174-192, 246-283). Under Utah and Delaware law an essential element of conversion is the plaintiff's ownership or possessory interest in the converted property. *Fibro Trust, Inc. v. Brahman Fin., Inc.*, 974 P.2d 288, 296 (Utah 1993) ("a party alleging conversion must show that he or she is entitled to *immediate* possession of the property at the time of the alleged conversion[,]" – "[a]n interest in the property which does not carry with it a right to possession is not sufficient; the right to maintain the action may not be based upon a right to possession at a future time."); *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 889 (Del. Ch. 2009) (same).

In violation of this requirement, Plaintiff alleges the conversion of **corporate** assets belonging to **HFN**, such as **corporate** profits, cash, and employee time and expense budgets. However, it is a "basic tenet of American corporate law" that "the corporation and its shareholders are distinct entities" – thus **"[a]n individual shareholder, by virtue of his ownership of shares, *does not* own the corporation's assets** . . . ." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474-75 (2003) (emphasis added); *see also Southam v. S. Despain Ditch Co.*, 337 P.3d 236, 241 n.7 (Utah 2014) ("an interest in a corporation is distinct from an interest in the assets owned by a corporation[,]" and "[t]he shareholders of a corporation have no ownership right to the real property of the corporation but only a right to ownership of the shares" that the shareholders actually own); *duPont v. duPont*, 42 Del. Ch. 246, 251 (1965) (same).

Because Plaintiff cannot establish a right to immediate possession or ownership of the HFN assets he claims were converted, his conversion Counts must be dismissed. *Springfield Fin. & Mortg. Co., LLC v. Lilley*, No. 2:14-CV-00679-EJF, 2015 WL 12780894, at *5 (D. Utah Sept. 29, 2015) (dismissing conversion claim where plaintiff could not establish a right to possess the allegedly converted money); *LBF Travel Mgmt. Corp. v. DeRosa*, No. 20-cv-2404-MMA (AGS), 2021 U.S. Dist. LEXIS 220133, at *24-25 (S.D. Cal. Nov. 15, 2021) (dismissing conversion claim for misappropriated corporate assets and dividends because "shareholders do not possess ownership rights over a corporation's assets."). To the extent Plaintiff's tag-along Counts for aiding and abetting conversion are directed to HFN, they must also be dismissed for these reasons. (FAC ¶¶ 121-137, 193-209).

### C.   Plaintiff Cannot Maintain Any Claims on a Derivative Basis

Despite professing this is not a derivative suit, the gravamen of the FAC is that HFN has been mismanaged in a variety of ways that have allegedly injured Plaintiff as a minority shareholder of the company.[6] Thus, labels aside, Plaintiffs' fiduciary duty and conversion Counts are classically derivative. *In re Saba Software, Inc. S'holder Litig.*, 2017 Del. Ch. LEXIS 52, at *47 & n.106 (Mar. 31, 2017) ("Claims of corporate mismanagement are classically derivative claims"); *Bocock v. Innovate Corp.*, 2022 Del. Ch. LEXIS 307, at *42-43 (Oct. 28, 2022) (allegations of "looting [of] [a corporation's] assets and forc[ing] [the corporation] into unfavorable agreements that negatively impact [its] financial position [describe] harm [that] is derivative[,]" and claims for "[m]ismanagement which depresses the value of stock" are "to be enforced by a derivative action"); *Warner v. Dmg Color*, 20 P.3d 868, 872 (Utah 2000) (claims for "conversion of corporate assets" and "misappropriation of corporate assets" are derivative where

---

[6] FAC ¶¶ 2, 20, 33, 36-37, 49 56, 59, 65, 66-67, 78-80, 86, 91, 94, 98.

HFN, INC.'S MOTION TO DISMISS THE FAC / CASE NO. 2:23-cv-00733-CMR

164965056v9

a complaint "contain[s] no allegations of harm specific to plaintiff, as opposed to harms affecting other shareholders or creditors of the corporation.").

To the extent Plaintiff is attempting to proceed derivatively, his fiduciary duty and conversion Counts must be dismissed for three additional reasons:

    1)    Plaintiff, as a *pro se* litigant, cannot maintain derivative claims. *Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997) ("appearance pro se denotes (in law latin) appearance for one's self . . . . Thus it is well established that a layperson may not represent a corporation . . . and may not appear pro se to pursue a shareholder's derivative suit[.]"); *Tal v. Hogan*, 453 F.3d 1244, 1254 (10th Cir. 2006) ("It has been [the] long-standing rule that a corporation must be represented by an attorney to appear in federal court"); DUCivR 83-1.3(c).).[7]

    2)    A plaintiff asserting derivative claims must plead demand futility "with particularity[,]" Fed. R. Civ. P. 23.1(b)(3)(A)-(B), and Delaware law governs the demand futility analysis here. *See Gubricky v. Ellis*, 255 F. Supp. 3d 1119, 1128 (D. Colo. 2017) ("Whether a demand would have been futile is a matter of the incorporating state's substantive law."). Plaintiff has not attempted to plead demand futility because he believes this is not a derivative case. Thus, the FAC lacks particularized facts making the required futility showing – i.e., that at least half of

---

[7] In a derivative case, the corporation, although a nominal defendant, is the "real" party in interest/plaintiff. *Ross v. Bernhard*, 396 U.S. 531, 538 (1970); *Pyott v. La. Mun. Police Emples.' Ret. Sys.*, 74 A.3d 612, 617 (Del. 2013). Indeed, it is "inherent in the nature of the derivative action" that a shareholder "stands in the stead of the corporation, which is the real party in interest," and "must be able to fairly and adequately represent the real party's interests[.]" *Angel Investors, LLC v. Garrity*, 216 P.3d 944, 951-952 (Utah 2009); *see also In re Zoran Corp. Deriv. Litig.*, 511 F. Supp. 2d 986, 1011 (N.D. Cal. 2007). However, "[a] litigant may bring his own claims to federal court without counsel, but not the claims of others." *Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000). Thus, a *pro se* plaintiff cannot maintain claims on a derivative basis. *See also, e.g., Drobny v. Lanham*, 680 F. App'x 486, 488 (7th Cir. 2017); *Simon v. Hartford Life & Accident Ins. Co.*, 546 F.3d 661, 664-665 (9th Cir. 2008); *Bluefeld v. Cohen*, Civil Action No. PX 15-2857, 2017 U.S. Dist. LEXIS 64395, at *9 (D. Md. Apr. 27, 2017) *aff'd* 697 Fed. App'x 788 (4th Cir. 2017); *Cohen v. Moore*, Civil Action No. 16-661, 2016 U.S. Dist. LEXIS 179476, at *4 (W.D. Pa. Dec. 29, 2016); *Am. Univ. of the Caribbean v. Tien*, No. 04-20834-CIV-GOLD/TORRES, 2013 U.S. Dist. LEXIS 201122, at *11 (S.D. Fla. Dec. 2, 2013).

HFN's directors received a material personal benefit from the alleged misconduct, face a substantial likelihood of liability, or lack independence from another interested director. *United Food & Comm. Wrks. Union v. Zuckerberg*, 262 A.3d 1034, 1049, 1059 (Del. 2021) (describing Delaware's 3-part demand futility testing which "is not excused lightly").

      3)     A complaint asserting derivative claims must be verified. Fed. R. Civ. P. 23.1(b). The FAC here is not.

### D.    Plaintiff Cannot State a Valid Fraudulent Misrepresentation Claim

      In Count 18, Plaintiff alleges: (i) HFN misrepresented the intended purpose of the company's ESOP during 2015 settlement negotiations by claiming the equity pool would be used to attract talented employees in the future; (ii) Plaintiff relied on that representation by entering the Settlement; and (iii) HFN subsequently used the ESOP to award equity to insiders. (FAC ¶¶ 39-49, 392-446). This claim, although alleged under the common law, is effectively a carbon-copy of the federal securities fraud claims Plaintiff alleged – and the N.D. Cal. dismissed with prejudice – in the California Action. (*See and compare with* RJN, Ex. 1 at ¶¶ 107-123; Ex. 4 at ¶¶ 119-126; Ex. 7 at pp. 1-2). As explained below, *res judicata* bars Plaintiff's fraud claim in this case, and even if it did not, the claim is still barred by the Settlement and SPA, inadequately alleged, and untimely.

### 1.    *Res Judicata* Bars Plaintiff's Fraud Claim

      "The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.' Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. Issue preclusion, in contrast, bars successive litigation of an issue or fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (cleaned up). Utah also recognizes these "two branches" of

res judicata, *Penrod v. Nu Creation Creme*, 669 P.2d 873, 874 (Utah 1983), and the elements of res judicata under federal and Utah law are "virtually identical." *Haik v. Salt Lake City Corp.*, 393 P.3d 285, 288 (Utah 2017); *see also Frandsen v. Westinghouse*, 46 F.3d 975, 978 (10th Cir. 1995) (the outcome "is the same whether we apply federal law or Utah law"). Here, claim and issue preclusion bar Plaintiff's fraud claim.

**First**, claim preclusion applies when: (i) "the current and original suit [] involve the same parties or their privies"; (ii) "the claim that is alleged to be barred must have been presented in the first suit or must be one that could and should have been raised in the first action"; and (iii) "the first suit must have resulted in a final judgment on the merits." In addition, a court considers whether "the parties [] had a full and fair opportunity to litigate the claim in the first suit." *Nikols v. Chesnoff*, 435 Fed. App'x 766, 769 (10th Cir. 2011) (Utah law); *see also MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005). These elements are satisfied here:

A)      **Same Parties**: This case and the California Action involve the same parties – in both cases, Plaintiff sued HFN, Kumar Shiralagi, Sridhar Santhanam, Pavan Vaish, Vani Kola, and Kalaari Capital Advisors Private Limited. (FAC ¶¶ 7-12; RJN, Ex. 4 at ¶¶ 5-10).

B)      **Same Cause of Action**: "To determine what constitutes a 'cause of action' for preclusion purposes, [the Tenth Circuit] has adopted the 'transactional approach' . . . [u]nder [which] a cause of action includes all claims or legal theories of recovery that arise from the same transaction." *MACTEC, Inc.*, 427 F.3d at 832. "Under the transactional approach" – which Utah as also adopted – "[a]ll claims arising out of the transaction must therefore be presented in one suit or barred from subsequent litigation. Thus, claim preclusion[] will prevent a party from relitigating a legal claim that was or could have been the subject of a previously issued final judgment." *Watson v. Mylan Pharms.*, 795 Fed. App'x 584, 588 (10th Cir. 2019) (quotations omitted). "In general, a transaction connotes a natural grouping or common nucleus of operative facts[,]" and "[u]nder the transactional test [] a new claim can go forward" only if "it is based on new and

independent facts not part of the previous transaction." *Haik v. Salt Lake City Corp.*, 567 Fed. App'x 621, 631 (10th Cir. 2015) (quotations omitted); *see also Nelson v. Nelson*, 529 P.3d 370, 380-381 (Utah 2023).

Applying these principles, Plaintiff's securities fraud claims in the California Action and his fraud Count in this case are clearly the same "cause of action" because they both arise from, and seek redress for, the same alleged wrongdoing. In both cases, Plaintiff alleges:

- Defendants misrepresented the future purpose of HFN's ESOP during 2015 settlement discussions (FAC ¶¶ 39-49, 392-446; RJN, Ex. 4 at ¶¶ 24-36, 119-126);

- Plaintiff relied on that representation in entering the Settlement (FAC ¶¶ 393, 396-397, 405, 414, 423, 432, 441; RJN, Ex. 4 at ¶¶ 24-36, 119-126);

- Defendants' representation proved false because, post-Settlement, HFN used the ESOP to issue equity to corporate insiders rather than attract new talent (FAC ¶¶ 40, 42, 49, 393, 402, 411, 420, 429, 438, 449, 455, 461, 467, 473, 479; RJN, Ex. 4 at ¶¶ 34, 120);

- Plaintiff realized Defendants' supposed fraud when he saw HFN's capitalization table in 2022 (FAC ¶¶ 41, 42; RJN, Ex. 4 at ¶¶ 30-32); and

- Plaintiff was purportedly damaged by Defendants' failure to utilize the ESOP in the manner represented in 2015 (FAC ¶¶ 50, 406, 450; RJN, Ex. 4 at ¶¶ 33-36, 121, 125).

Because Plaintiff's fraud claims are substantively identical, he cannot avoid the N.D. Cal.'s dismissal order by strategically recasting his claim under the common law in this case. *Plotner v. AT&T Corp.*, 224 F.3d 1161, 1170 (10th Cir. 2000) ("The fact that Plotner now presents some of her claims under the rubric of slightly different legal theories . . . does not obscure the fact that they all arise out of a single transaction.").

**C)** **Final Judgment and Full/Fair Opportunity to Litigate**: The N.D. Cal. dismissed Plaintiff's securities fraud claims "with prejudice" for failure to state a claim and judgment was entered in accordance with that order. (RJN, Exs. 3, 7-8). The "final judgment" element of claim

preclusion is met. *Slocum v. Corporate Express US Inc.*, 446 Fed. App'x 957, 960 (10th Cir. 2011) ("a Rule 12(b)(6) dismissal is still an adjudication on the merits" that triggers res judicata).

Finally, there is no legitimate question Plaintiff had a full and fair opportunity to litigate his securities fraud claims before the N.D. Cal., especially where he was granted leave to amend those claims and subsequently fell "well short" of stating a valid claim in his amended pleading. (RJN, Ex. 7 at p. 1). Accordingly, claim preclusion applies.

**<u>Second</u>**, issue preclusion also prohibits Plaintiff from re-litigating whether HFN fraudulently misrepresented the ESOP's future purpose during 2015 settlement talks. Issue preclusion has four requirements: "(1) [t]he issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issues in the prior action." *Haik*, 567 Fed. App'x at 628 n.2; *see also Collins v. Sandy City Bd. of Adjustment*, 52 P.3d 1267, 1269-1270 (Utah 2002).

To begin, the "identical" issue requirement is met. In both the California Action and this case, Plaintiff alleges Defendants intended to defraud him by falsely representing the future purpose of HFN's ESOP during settlement talks, (FAC ¶¶ 39-49, 392-446; RJN, Ex. 4 at ¶¶ 24-36, 119-126), and courts have repeatedly held that the elements of securities fraud and common law fraud are substantially identical. *Axar Master Fund, Ltd. v. Bedford*, 806 F. App'x 35, 38 n.2 (2d Cir. 2020) ("Because the elements of claims for federal securities fraud and New York common law fraud are nearly identical, we also affirm the district court's dismissal of plaintiffs' common law fraud claims after concluding that plaintiffs failed to state a claim for federal securities fraud.").[8] Thus, when – as here – a plaintiff suffers an adverse ruling on one type of

---

[8] *See also Barnard v. Verizon Communs., Inc.*, 451 Fed. App'x 80, 86 (3d Cir. 2011) (affirming dismissal of securities fraud and common law fraud claims because the elements are "substantially

fraud allegation, he cannot repackage the claim under a different theory and pursue it in a later action. *Murphy v. Gallagher*, 761 F.2d 878, 882-883, 885 (2d Cir. 1985) (holding that issue preclusion required the dismissal of a securities fraud claim based on the adjudication of common law fraud claim in a prior action, and explaining "[t]here generally will be a fairly precise overlap between [] state and federal claims" for fraud with respect to issues of "intent, scienter, fraud, [and] deceit"); *NM IQ LLC v. McVeigh*, 2004 U.S. Dist. LEXIS 24775, at *21-33 (S.D.N.Y. Dec. 8, 2004) (state court order dismissing common law fraud claims precluded plaintiff from relitigating issues implicated by subsequent securities fraud claims in federal court).

The remaining requirements of issue preclusion are also clearly satisfied. The N.D. Cal. dismissed Plaintiffs' securities fraud claims with prejudice and on the merits. *See Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1298 (10th Cir. 2014) ("dismissal for failure to plead a viable cause of action is a decision on the merits" for the purpose of issue preclusion); *State v. Sommerville*, 297 P.3d 665, 675 (Utah Ct. App. 2013). The N.D. Cal.'s adjudication of Plaintiff's securities fraud claims on the merits was essential to its judgment of dismissal because if Plaintiff stated a viable securities fraud claim then he may have been entitled to maintain his state law claims in the N.D. Cal. (RJN, Ex. 3 at pp. 1-2; Ex. 7 at pp. 1-2). In addition, the party against whom issue preclusion is being invoked now – Plaintiff – is the same party on the receiving end of the adverse ruling in the California Action. Finally, as stated above, Plaintiff had a full and fair opportunity to litigate his securities fraud claims.

Given the foregoing, Plaintiff cannot relitigate the issue of HFN's allegedly fraudulent conduct involving the ESOP during 2015 settlement talks.

---

similar"); *Anderson v. Transglobe Energy Corp.*, 35 F. Supp. 2d 1363, 1370 (M.D. Fla. 1999) (because the elements of securities fraud and common law fraud "are identical," there was "no need to analyze each element again" when evaluating the plaintiff's common law claim); *Chase Manhattan Mortg. Corp. v. Advanta Corp.*, Civil Action No. 01-507 (KAJ), 2005 U.S. Dist. LEXIS 19374, at *60-74 (D. Del. Sep. 8, 2005) (analyzing common law fraud and securities fraud claims together because their elements "overlap substantially," and dismissing both on the same grounds).

HFN, INC.'S MOTION TO DISMISS THE FAC / CASE NO. 2:23-cv-00733-CMR

### 2. The Settlement and SPA Bar Plaintiff's Fraud Claim

Plaintiff alleges HFN committed fraud during the 2015 settlement negotiations but fails to mention that his resulting Settlement and SPA with HFN – which he negotiated through counsel – contain broad releases encompassing and prohibiting Plaintiff from maintaining **any** claims against HFN that existed when he executed those documents, including fraud claims. Specifically, Plaintiff agreed in the Settlement to:

> **[F]orever release and discharge** . . . Defendants . . . from **any and all claims, demands, debts, liens, causes of action, or liabilities, of whatsoever kind and nature**, character and description, whether in law or equity, whether as a shareholder, sounding in tort, contract or other applicable law, **whether known or unknown**, fixed or contingent, concealed or hidden, latent or patent, anticipated or unanticipated, direct or derivative (collectively, 'Claims'), including, **but not limited to**, any Claims arising out of, in connection with, or in any way related to the [Massachusetts] Lawsuit and the facts alleged therein in any way related to the [parties' prior] Lawsuit and the facts alleged therein. **It is understood and agreed that this shall be a full and complete release**, and includes all consideration of any kind or character, including any actual, consequential or other damages alleged or which could have been alleged as against Defendants in the [Massachusetts] Lawsuit **or as of the date of this Settlement Agreement**." (RJN, Ex. 11 (Settlement) at § 3.1 (emphasis added)).[9]

Plaintiff further agreed in the SPA – which is attached to and part of the Settlement[10] – that:

> **Purchaser has independently and without reliance upon the Seller or the Company**, and based on such information and the advice of such advisors as Purchaser has deemed appropriate, made its own independent analysis and decision to enter into this Agreement and to purchase the Shares it is purchasing hereunder. **Such Purchaser acknowledges that the Seller may now possess**

---

[9] The Settlement defines HFN as the "Company" and further includes HFN within the definition of "Defendants."

[10] RJN, Ex. 11 (Settlement) at §§ 1.1, 11.

**or may hereafter possess nonpublic information concerning the Company not known to such Purchaser (the 'Seller Excluded Information') . . . [which] may or may not be material, may or may not have been disclosed by or on behalf of the Company, and may or may not be available to such Purchaser from sources other than the Company or the Seller.**

**Such Purchaser . . . hereby: (a) agrees that none of the Seller Released Parties [] or Company Released Parties shall have any liability to such Purchaser . . . . with respect to, based upon, arising from, resulting from, or relating directly or indirectly to the existence, substance possession, disclosure, or nondisclosure of any Seller Excluded Information whatsoever . . . ; (b) waives any right, claim or cause of action at law or in equity with respect to, arising from, based upon, resulting from or relating to directly or indirectly the existence, substance, possession, disclosure or nondisclosure of any Seller Excluded Information**, including, without limitation . . . **and relinquishes all rights and remedies** accorded by applicable law to a purchaser of securities to the maximum extent permitted by law . . . ; and **(c) hereby and forever releases and discharges the Seller . . . and Company Released Parties of and from any and all suits, demands, obligations, liabilities, claims and causes of action, contingent or otherwise, of every kind and nature, at law and in equity, whether asserted, unasserted, absolute, contingent, known or unknown, which such Purchaser . . . may have against any of the Seller Released Parties or Company Released Parties, to the extent arising from the transactions contemplated by this Agreement**, except for claims arising under, and subject to the limitations contained in, the express terms of this Agreement." (*Id.* (SPA) at § 3.6 (emphasis added)).[11]

These expansive release provisions encompass and preclude Plaintiff's alleged fraud claim. For example, in *Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034, 1038-1041 (9th Cir. 2011), the Ninth Circuit rejected the plaintiffs' argument that they were fraudulently induced to enter a settlement resolving pending litigation based on the defendant's alleged misrepresentations regarding the value of the stock plaintiffs would receive under the settlement. The Ninth Circuit

---

[11] The SPA defines Plaintiff as "Purchaser," Mr. Santhanam as "Seller," and HFN as "Company."

explained: (1) "[p]arties involved in litigation know that they are locked in combat with an adversary and thus have every reason to be skeptical of each other's claims and representations[,]" and "[s]uch parties stand on very different footing from those who enter into an investment relationship in the open market[,]" particularly when "the two sides have counsel"; and (2) a settlement resolving litigation between represented parties "cannot reasonably be interpreted as leaving open the door to litigation about the settlement negotiation process[,]" since "[a] release in such an agreement would be useless to end litigation if it couldn't include claims arising from the settlement negotiations[,]" including claims that fraud "took place in connection with the settlement itself."). *Id*. Other courts have reached similar conclusions.[12]

Consistent with this law and the plain language of the relevant documents, Plaintiff has released the claim that HFN committed fraud while negotiating the Settlement and SPA. And, enforcing these releases is particularly warranted where: (i) Plaintiff was represented by counsel in the during settlement negotiations and in the underlying litigation which the Settlement resolved;[13] (ii) the Settlement and SPA also contain broad no-other-representation, no-reliance, and integration-clause provisions, and omit any mention of, let alone restriction on, HFN's ESOP;[14] and (iii) Plaintiff admits his attorney negotiated a "compromise" to account for any uncertainty/concern he had about HFN's use of its ESOP, and Plaintiff should not be permitted to renege on that compromise now.[15]

---

[12] *See also Johnson v. King*, No. 10-CV-279-S, 2011 U.S. Dist. LEXIS 119998, at *47-50 (D. Wyo. Oct. 17, 2011) (rejecting claim that settlement and release were fraudulently induced, and citing *Facebook* with approval); *IBM v. Simon*, 376 F. Supp. 3d 292, 301-302 (S.D.N.Y. 2019) (rejecting argument IBM "fraudulently induc[ed]" and "tricked" the other side "into entering into the Settlement" that "release[d] IBM from all then-existing claims" related to [the parties' software] agreement, whether known or unknown . . , hidden or concealed[,]" because this language encompassed the "claim that IBM misrepresented its method of calculating Sales Revenue during the course of negotiating the Settlement").

[13] RJN, Ex. 4 at ¶ 25; Ex. 11 (Settlement) at §§ 6.1-6.2 and 7.

[14] RJN, Ex. 11 (Settlement) at §§ 6.3, 6.5, 11 and (SPA) at § 4.9.

[15] FAC ¶ 40.

### 3. Plaintiff Has Failed to Plead Sufficient Facts Establishing Fraud

"When fraud is alleged, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard" under which "a party must state with particularity the circumstances constituting [the] fraud[,]" including by identifying "the time, place, and content of each allegedly fraudulent representation or omission," the "particular defendant responsible for it," and "the consequence thereof." *Gaddy v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*, No. 2:19-cv-00554-RJS-DBP, 2023 U.S. Dist. LEXIS 54523, at *30 (D. Utah Mar. 28, 2023). Plaintiff's fraud claim falls well-short. (FAC ¶¶ 39-50, 392-446). There is no allegation HFN made any definitive representation that the ESOP would exclusively, or even mostly, be used to attract future employees. Rather, the FAC generically alleges Plaintiff was "aware that an ESOP is a key component to attract talent to a high-tech company[,]" and HFN "falsely represented" in 2015" that its "pool" of unissued stock "was an ESOP that would be used to attract talent to HFN" in general. (FAC ¶¶ 40, 393).

Likewise, there are no facts showing HFN intended Plaintiff to rely on any such representation – indeed, the Settlement and SPA do not even mention, much less impose limitations on, the ESOP's future, and those documents further contain no-other-representation, no-reliance, and integration-clause provisions disclaiming all earlier representations.

In addition, there are no facts alleged showing HFN acted in 2015 with any fraudulent or deceptive intent. **To the contrary, Plaintiff admits that as of December 2019 – more than 4-years after the Settlement and SPA were executed – Mr. Santhanam <u>still</u> had <u>not</u> received <u>any</u> HFN stock from the ESOP, which is fundamentally inconsistent with any fraud or fraudulent intent years earlier in 2015 during settlement talks**. (FAC ¶ 43). Thus, Plaintiff has alleged nothing more than HFN's purported failure to utilize the ESOP in the manner supposedly represented in 2015. Yet, "[w]ithout more, 'evidence of a broken promise is not evidence of fraud.'" *United Wholesale Mortg., LLC v. Am.'s Moneyline, Inc.*, 647 F. Supp. 3d

164965056v9

587, 599 (E.D. Mich. 2022); *see also Reynolds v. Knox Cnty. Gov't*, No. 3:17-cv-79, 2019 U.S. Dist. LEXIS 251378, at \*23 (E.D. Tenn. May 3, 2019) (to satisfy Rule 9(b), "a claimant has to allege more than that a promise was made and later broken.").

### 4. Plaintiff's Fraud Claim Is Untimely

In Utah, fraud claims are subject to a 3-year statute of limitations. Utah Code Ann. § 78-12-26(3). Although a claim "does not accrue until the discovery by the aggrieved party of the facts constituting the fraud[,]" the "plaintiff is deemed to have discovered his action when . . . by reasonable diligence and inquiry [he] should know [] the relevant facts of the fraud." *Colosimo v. Roman Catholic Bishop*, 156 P.3d 806, 811 (Utah 2007). Utah law "particularly emphasize[s] the importance of the diligence requirement" – therefore, "[a] party who has opportunity of knowing the facts constituting the alleged fraud cannot be inactive and afterwards allege a want of knowledge[,]" and "[a] party is required to make inquiry if his findings would prompt further investigation." *Id.*

Plaintiff claims he realized HFN's misuse of the ESOP in 2022 when he "was able to see" the 2019 capitalization table through unspecified "means," which showed certain options had been issued to Defendant Pavan Vaish and Ganesh Krishnan. (FAC ¶¶ 41-43). But, as a shareholder, Plaintiff could have requested and obtained the capitalization table in 2019 or earlier through a formal request under Delaware law, and, if HFN denied the request, then through a books and records action in Delaware Chancery Court. *See* 8 Del. C. § 220(b)-(c). Plaintiff does not plead facts showing he diligently pursued these avenues, even though, by his own admission, Plaintiff was "very concerned" and "feared" Defendants would "treat the option pool as a mechanism for self-dealing" as early as 2015. (FAC ¶¶ 39, 42).

Under these circumstances, Plaintiff's alleged fraud claim accrued no later than **2019**, since Plaintiff contends that the capitalization table for that year showed Defendants had allegedly "use[d] the ESOP for their own personal gain and self dealing, rather than . . . to attract talent to

the company." (FAC ¶¶ 41-42).  Because Plaintiff did not file the California Action until more than three years later in **2023** (RJN, Ex. 1), his fraud claim is time-barred.  *Mason v. Laramie Rivers Co.*, 490 P.2d 1062, 1064-1065 (Utah 1971) (claim challenging fraudulent stock sale was time-barred because, among other things, "the facts were open and appeared upon the records of the corporation, subject to inspection by the stockholders[,]" and "[i]f the stockholders failed to examine the corporate records, they must have been negligent and careless of their own interests."); *In re Tyson Foods, Inc.*, 919 A.2d 563, 594 (Del. Ch. 2007) (claims were time-barred because "[s]hareholders in the course of ordinary diligence, particularly through demands for records under § 220, should have been able to discover their harm[.]").[16]

## IV.  CONCLUSION

Because Plaintiff has now made clear – both in the California Action and in this case – that he cannot state any viable claims against HFN, the FAC and this action should be dismissed with prejudice as to HFN.


Dated:  December 8, 2023          TROUTMAN PEPPER HAMILTON SANDERS LLP

By: /s/ Nathan R. Marigoni
    Anthony C. Kaye (Utah SBN 8611)
    Nathan R. Marigoni (Utah SBN 14885)
    Matthew H. Ladner (*pro hac vice forthcoming*)
    William M. Taylor (*pro hac vice forthcoming*)
    Attorneys for Defendant HFN, INC.

---

[16] HFN assumes, without conceding, that Plaintiff's fraud claim in this case relates back to the filing of his identical securities fraud claim in the California Action.

HFN, INC.'S MOTION TO DISMISS THE FAC / CASE NO. 2:23-cv-00733-CMR
164965056v9