Anthony C. Kaye (Utah SBN 8611)
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
875 Third Avenue
New York, NY 10022
Telephone: (212) 704-6128
Email: Tony.Kaye@troutman.com

Nathan R. Marigoni (Utah SBN 14885)
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308
Telephone: (470) 832-5575
Email: Nathan.Marigoni@troutman.com

Matthew H. Ladner (*pro hac vice forthcoming*)
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
350 S. Grand Ave., Suite 3400
Los Angeles, CA 90071
Telephone: (213) 928-9816
E-mail: Matthew.Ladner@troutman.com

William M. Taylor (*pro hac vice forthcoming*)
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
125 High St., 19th Floor
Boston, MA 02110
Telephone: (617) 204-5186
Email: William.Taylor@troutman.com

*Attorneys for Defendant*
KUMAR SHIRALAGI

## UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ALLAN MILLER,<br><br>                    Plaintiff,<br><br>    vs.<br><br>HFN, INC., a Delaware Corporation, d/b/a as NANOHEAL BY HFN INC.; KALAARI CAPITAL ADVISORS PRIVATE LIMITED, an Indian Company; SRIDHAR SANTHANAM; KUMAR SHIRALAGI; PAVAN VAISH; and VANI KOLA,<br><br>                    Defendants. | **DEFENDANT KUMAR SHIRALAGI'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FOR: FAILURE TO STATE A CLAIM AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Case No. 2:23-cv-00733-CMR<br><br>Magistrate Judge Cecilia M. Romero |

# TABLE OF CONTENTS

Page

MOTION..................................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

I.  INTRODUCTION AND SUMMARY OF GROUNDS FOR RELIEF
    PURSUANT TO DUCivR 7-1..................................................................... 1

II.  RELEVANT PROCEDURAL HISTORY AND FACTUAL
     ALLEGATIONS.......................................................................................... 3

     A.  Procedural History Involving the California Action.................................. 3

     B.  Relevant Factual Allegations in the FAC in This Action .......................... 4

III.  THE COURT SHOULD DISMISS THE FAC AS TO SHIRALAGI................... 7

     A.  Plaintiff Has Failed to State a Valid Fiduciary Duty Claim Against
         Shiralagi ................................................................................................ 7

         1.  Plaintiff's Claims Are Derivative – Thus, He Cannot
             Maintain Them.............................................................................. 7

         2.  Plaintiff Has Failed to Plead Non-Conclusory Facts .................... 11

     B.  Plaintiff Cannot State a Valid Conversion Claim Against Shiralagi ........ 12

     C.  Plaintiff Cannot State a Valid Fraudulent Misrepresentation Claim ........ 13

         1.  *Res Judicata* Bars Plaintiff's Fraud Claim.................................... 14

         2.  The Settlement and SPA Bar Plaintiff's Fraud Claim .................. 17

         3.  Plaintiff Has Failed to Plead Sufficient Facts Establishing
             Fraud ......................................................................................... 20

         4.  Plaintiff's Fraud Claim Is Untimely ............................................ 21

IV.  CONCLUSION........................................................................................... 22

**Cases**

*Albert v. Alex. Brown Mgmt. Servs.*,
  Nos. 762-N, 763-N, 2005 Del. Ch. LEXIS 133 (Aug. 26, 2005) ............................................8

*Am. Univ. of the Caribbean v. Tien*,
  No. 04-20834-CIV-GOLD/TORRES, 2013 U.S. Dist. LEXIS 201122 (S.D.
  Fla. Dec. 2, 2013)...............................................................................................................10

*Anderson v. Transglobe Energy Corp.*,
  35 F. Supp. 2d 1363 (M.D. Fla. 1999)................................................................................16

*AVT Cal., L.P. v. Arrow Recycling Sols., Inc.*,
  No. 2:19-cv-00939-JNP, 2020 U.S. Dist. LEXIS 171574 (D. Utah Sep. 18,
  2020) ....................................................................................................................................7

*Axar Master Fund, Ltd. v. Bedford*,
  806 F. App'x 35 (2d Cir. 2020) ...........................................................................................16

*Barnard v. Verizon Communs., Inc.*,
  451 Fed. App'x 80 (3d Cir. 2011)........................................................................................16

*Bluefeld v. Cohen*,
  Civil Action No. PX 15-2857, 2017 U.S. Dist. LEXIS 64395 (D. Md. Apr. 27,
  2017) *aff'd* 697 Fed. App'x 788 (4th Cir. 2017)...................................................................10

*Bocock v. Innovate Corp.*,
  2022 Del. Ch. LEXIS 307 (Oct. 28, 2022) .......................................................................8, 11

*Brookfield Asset Mgmt. v. Rosson*,
  261 A.3d 1251 (Del. 2021) ...............................................................................................9, 10

*Canadian Commer. Workers Indus. Pension Plan v. Alden*,
  Civil Action No. 1184-N, 2006 Del. Ch. LEXIS 42 (Ch. Feb. 22, 2006) .............................11

*Chase Manhattan Mortg. Corp. v. Advanta Corp.*,
  Civil Action No. 01-507 (KAJ), 2005 U.S. Dist. LEXIS 19374 (D. Del. Sep.
  8, 2005) ................................................................................................................................16

*CMS Inv. Holdings, LLC v. Castle*,
  No. 9468-VCP, 2015 Del. Ch. LEXIS 169 (June 23, 2015).................................................12

*Cohen v. Moore*,
    Civil Action No. 16-661, 2016 U.S. Dist. LEXIS 179476 (W.D. Pa. Dec. 29,
    2016) ...........................................................................................................10

*Collins v. Sandy City Bd. of Adjustment*,
    52 P.3d 1267 (Utah 2002) .......................................................................16

*Colosimo v. Roman Catholic Bishop*,
    156 P.3d 806 (Utah 2007) .......................................................................21

*Dietrichson v. Knott*,
    No. 11965-VCMR, 2017 Del. Ch. LEXIS 64 (Apr. 19, 2017) ................12

*Dole Food Co. v. Patrickson*,
    538 U.S. 468 (2003) ................................................................................13

*Drobny v. Lanham*,
    680 F. App'x 486 (7th Cir. 2017) ............................................................10

*duPont v. duPont*,
    42 Del. Ch. 246 (1965) ...........................................................................13

*Facebook, Inc. v. Pac. Nw. Software, Inc.*,
    640 F.3d 1034 (9th Cir. 2011) ................................................................19

*Feldman v. Cutaia*,
    956 A.2d 644 (Del. Ch. 2007).................................................................9

*Fibro Trust, Inc. v. Brahman Fin., Inc.*,
    974 P.2d 288 (Utah 1993) .......................................................................13

*Frandsen v. Westinghouse*,
    46 F.3d 975 (10th Cir. 1995) ..................................................................14

*Freedman v. magicJack VocalTec Ltd.*,
    963 F.3d 1125 (11th Cir. 2020) ..............................................................7

*Gaddy v. Corp. of the President of the Church of Jesus Christ of Latter-Day
Saints*,
    No. 2:19-cv-00554-RJS-DBP, 2023 U.S. Dist. LEXIS 54523 (D. Utah Mar.
    28, 2023) ..................................................................................................20

*Gubricky v. Ellis*,
    255 F. Supp. 3d 1119 (D. Colo. 2017)....................................................10

*Haik v. Salt Lake City Corp.*,
   393 P.3d 285 (Utah 2017) ...................................................................................14

*Haik v. Salt Lake City Corp.*,
   567 Fed. App'x 621 (10th Cir. 2015) .............................................................15, 16

*IBM v. Simon*,
   376 F. Supp. 3d 292 (S.D.N.Y. 2019) ..................................................................19

*Johnson v. King*,
   No. 10-CV-279-S, 2011 U.S. Dist. LEXIS 119998 (D. Wyo. Oct. 17, 2011) .........19

*Kramer v. W. Pac. Inds., Inc.*,
   546 A.2d 348 (Del. 1988) ......................................................................................9

*Kuroda v. SPJS Holdings, L.L.C.*,
   971 A.2d 872 (Del. Ch. 2009) ..............................................................................13

*LBF Travel Mgmt. Corp. v. DeRosa*,
   No. 20-cv-2404-MMA (AGS), 2021 U.S. Dist. LEXIS 220133 (S.D. Cal.
   Nov. 15, 2021) ....................................................................................................13

*Estate of Locket v. Fallin*,
   841 F.3d 1098 (10th Cir. 2016) ............................................................................11

*MACTEC, Inc. v. Gorelick*,
   427 F.3d 821 (10th Cir. 2005) .........................................................................14, 15

*Mason v. Laramie Rivers Co.*,
   490 P.2d 1062 (Utah 1971) ..................................................................................22

*In re McDonald's Corp. Stockholder Deriv. Litig.*,
   No. 2021-0324-JTL, 2023 Del. Ch. LEXIS 23 (Jan. 25, 2023) ..............................8

*Murphy v. Gallagher*,
   761 F.2d 878 (2d Cir. 1985) ................................................................................17

*Nelson v. Nelson*,
   529 P.3d 370 (Utah 2023) ....................................................................................15

*Newsome v. Gallacher*,
   722 F.3d 1257 (10th Cir. 2013) .............................................................................7

*Nikols v. Chesnoff*,
   435 Fed. App'x 766 (10th Cir. 2011) ...................................................................14

*NM IQ LLC v. McVeigh*,
 2004 U.S. Dist. LEXIS 24775 (S.D.N.Y. Dec. 8, 2004) ........................................................17

*Penrod v. Nu Creation Creme*,
 669 P.2d 873 (Utah 1983)........................................................................................................14

*Plotner v. AT&T Corp.*,
 224 F.3d 1161 (10th Cir. 2000) ...............................................................................................15

*Pridgen v. Andresen*,
 113 F.3d 391 (2d Cir. 1997)......................................................................................................10

*Reynolds v. Knox Cnty. Gov't*,
 No. 3:17-cv-79, 2019 U.S. Dist. LEXIS 251378 (E.D. Tenn. May 3, 2019) ..........................21

*Rich Media Club, Ltd. Liab. Co. v. Mentchoukov*,
 No. 2:11-CV-1202 TS, 2012 U.S. Dist. LEXIS 48498 (D. Utah Apr. 3, 2012).....................11

*In re Saba Software, Inc. S'holder Litig.*,
 2017 Del. Ch. LEXIS 52 (Mar. 31, 2017) ................................................................................8

*Seale v. Citizens Sav. & Loan Ass'n*,
 806 F.2d 99 (6th Cir. 1986) ......................................................................................................11

*Simon v. Hartford Life & Accident Ins. Co.*,
 546 F.3d 661 (9th Cir. 2008) ....................................................................................................10

*Slocum v. Corporate Express US Inc.*,
 446 Fed. App'x 957 (10th Cir. 2011).......................................................................................16

*Smith v. Waste Mgmt. Inc.*,
 407 F.3d 381 (5th Cir. 2005) ......................................................................................................7

*Southam v. S. Despain Ditch Co.*,
 337 P.3d 236 (Utah 2014).........................................................................................................13

*Springfield Fin. & Mortg. Co., LLC v. Lilley*,
 No. 2:14-CV-00679-EJF, 2015 WL 12780894 (D. Utah Sept. 29, 2015) ...............................13

*Tal v. Hogan*,
 453 F.3d 1244 (10th Cir. 2006) ...............................................................................................10

*Taylor v. Sturgell*,
 553 U.S. 880 (2008)..................................................................................................................14

*Thornton v. Bernard Techs., Inc.*,
    No. 962-VCN, 2009 Del. Ch. LEXIS 29 (Feb. 20, 2009) ......................................................9

*In re Tyson Foods, Inc.*,
    919 A.2d 563 (Del. Ch. 2007).................................................................................................22

*United Food & Comm. Wrks. Union v. Zuckerberg*,
    262 A.3d 1034 (Del. 2021) .....................................................................................................10

*United Wholesale Mortg., LLC v. Am.*
    *'s Moneyline, Inc.*, 647 F. Supp. 3d 587 (E.D. Mich. 2022) .................................................21

*Warner v. Dmg Color*,
    20 P.3d 868 (Utah 2000)....................................................................................................8, 12

*Wasatch Oil & Gas, LLC v. Reott*,
    263 P.3d 391 (Utah Ct. App. 2011) .........................................................................................7

*Watson v. Mylan Pharms.*,
    795 Fed. App'x 584 (10th Cir. 2019) .....................................................................................15

**Statutes**

8 Del. C. § 220(b)-(c)....................................................................................................................21

Utah Code Ann. § 78-12-26.......................................................................................................3, 21

**Other Authorities**

Fed. R. Civ. P. 9.....................................................................................................................1, 4, 20

Fed. R. Civ. P. 12 ...........................................................................................................................1

Fed. R. Civ. P. 23.1 .........................................................................................................1, 2, 10, 11

# MOTION

## TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that Defendant Kumar Shiralagi ("**Shiralagi**") hereby moves the Court for an order dismissing the First Amended Complaint ("**FAC**") filed by *pro se* Plaintiff Allan Miller ("**Plaintiff**") with prejudice, pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(6), and 23.1, as well as applicable case law. This Motion is made on the grounds that Plaintiff has failed to state a claim against Shiralagi upon which relief can be granted, and that Plaintiff has alleged derivative claims which he cannot legally maintain given his *pro se* status and his failure to comply with the requirements of Rule 23.1.

The Motion is based upon the following Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice ("**RJN**") and the exhibits thereto, the pleadings and other documents filed in this action, and any other argument or evidence the Court may consider.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF GROUNDS FOR RELIEF PURSUANT TO DUCivR 7-1

Plaintiff is a dissatisfied minority shareholder of Defendant HFN, Inc. ("**HFN**") who is determined to harass the company and its current and former officers and directors, including Shiralagi, with serial litigation. In February 2023, Plaintiff filed a lawsuit in the U.S. District Court for the Northern District of California (the "**N.D. Cal.**") in which he asserted the same allegations and claims of corporate mismanagement, waste, and fraud that he makes in the operative FAC here (the "**California Action**"). The Defendants named in the California Action and this case are identical. The N.D. Cal. ultimately dismissed Plaintiff's state law claims for lack of personal jurisdiction, and dismissed his federal securities fraud claims on the merits and with prejudice. In response, Plaintiff filed a 19-Count, 85-page, 483-paragraph FAC in this Court which mirrors, and is an amalgam of, his failed pleadings from the California Action. As summarized below

Plaintiff's alleged claims against Shiralagi are legally barred on their face and should be dismissed.

**First**, in Counts 3, 7, 11, 13, 14, 16, 17 and 19 of the FAC, Plaintiff alleges that all Defendants, including Shiralagi, breached their alleged fiduciary duties by mismanaging HFN in a variety of ways, such as entering misguided partnerships, having poor corporate governance, failing to monetize intellectual property, and misallocating equity from HFN's employee stock option pool ("**ESOP**"). However, under governing Delaware law, these are classically derivative claims. While Plaintiff contends his claims are "direct" rather than "derivative" because HFN is managed by majority shareholders who have purportedly run the company so as to enrich themselves, the Delaware Supreme Court recently held and made clear that this type of allegation from a minority shareholder **does not** convert a case from derivative to direct. Because Plaintiff's fiduciary duty claims – including his related aiding and abetting claims alleged in Counts 4, 8, 12, and 15 of the FAC – are substantively derivative, they must be dismissed since: (i) Plaintiff, as a *pro se* litigant, cannot legally maintain any derivative claims; (ii) Plaintiff has failed to satisfy the requirements of Rule 23.1, including demand futility; and in any event (iii) the FAC is devoid of any non-conclusory facts regarding Shiralagi's purported involvement of any of the fiduciary breaches alleged in the FAC.

**Second**, in Counts 1, 5, 9, and 10, Plaintiff alleges Defendants converted corporate assets, such as payments to third-party vendors, company cash, and employee salaries and travel budgets. Relatedly, in Counts 2 and 6, Plaintiff alleges that Shiralagi and others aided and abetted conversion. To begin, these alleged conversion claims are derivative in nature and cannot be maintained by Plaintiff for the reasons identified above. In addition, an essential element of conversion is the plaintiff's personal entitlement to immediately possess the converted property. It is black-letter law that Plaintiff – a shareholder of HFN – has no right to immediately possess the **corporation's** assets. Accordingly, Plaintiff cannot maintain a conversion claim with respect to HFN's property, nor pursue his tag-along claims for aiding and abetting conversion.

**Third**, in Count 18 of the FAC, Plaintiff asserts Defendants falsely represented during 2015 settlement talks that HFN's ESOP would be used in the future to attract employees. This fraud claim must be dismissed for at least four reasons: (1) it is barred by *res judicata* in light of the N.D. Cal.'s dismissal with prejudice of Plaintiff's substantively identical securities fraud claims; (2) it is barred by the releases contained in Plaintiff's 2015 written settlement ("**Settlement**") and related stock purchase agreement ("**SPA**") with HFN; (3) Plaintiff has failed to plead facts stating a valid fraud claim as to Shiralagi specifically; and (4) the claim is also untimely under the 3-year statute of limitations prescribed by Utah Code Ann. § 78-12-26.

## II.     RELEVANT PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS[1]

### A.     Procedural History Involving the California Action

Plaintiff's Complaint in the California Action asserted claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, securities fraud, and inspection of records, and sought damages for the purported mismanagement of HFN. (RJN, Ex. 1). HFN moved to dismiss (RJN, Exs. 2-3), and the N.D. Cal. granted its motion, finding that: (1) Plaintiff did "not come close to satisfying the minimum contacts test for specific personal jurisdiction"; and (2) Plaintiff had "come[] well short of adequately pleading a securities fraud claim" as well. (RJN, Ex. 3 at pp. 1-2; *see also* RJN, Ex. 1 at ¶¶ 112-123)

Plaintiff subsequently filed and served HFN and Shiralagi with a First Amended Complaint in the California Action. (RJN, Ex. 4). In that pleading, Plaintiff asserted a new theory of securities fraud – namely, that Defendants (including Shiralagi) induced him to settle then-pending litigation with HFN in 2015 based on representations that the company's ESOP would be used in the future to attract talented employees. (RJN, Ex. 4 at ¶¶ 24-36, 119-126). According to Plaintiff,

---

[1] For a more detailed discussion of the relevant procedural history and factual allegations in this case, Shiralagi respectfully refers the Court to HFN's concurrently filed Motion.

this statement later proved false because, sometime after 2015, HFN allegedly began using the ESOP to issue equity to certain insiders, including its CEO Sridhar Santhanam. (*Id.*).

HFN and Shiralagi filed motions to dismiss, (RJN, Exs. 5-6), which the N.D. Cal. granted without leave to amend on August 16, 2023. With respect to Plaintiffs' state law claims, the N.D. Cal found Plaintiff still "came nowhere close to alleging HFN's minimum contacts with California" and "contain[ed] no allegations whatsoever regarding Shiralagi's California connections." "As for the securities fraud claim," the N.D. Cal. held "the new allegations regarding defendants' purported misrepresentations during settlement discussions in 2015 still f[e]ll well short of the heightened pleading requirements of Rule 9 . . . ." (RJN, Ex. 7 at pp. 1-2). "Because any further amendment would have been futile," Plaintiff's "securities fraud claim [was] dismissed with prejudice, and the state law claims [were] dismissed for lack of jurisdiction without leave to amend[,]" following which the N.D. Cal. entered judgment against Plaintiff. (*Id.* at p. 2; RJN, Ex. 8). In response, Plaintiff filed a notice of appeal, but later abandoned and dismissed his appeal. (RJN, Exs. 9-10).

**B.     Relevant Factual Allegations in the FAC in This Action**

The FAC in this case mostly recycles the allegations and claims in the California Action concerning various ways in which HFN is supposedly being mismanaged with respect to: (1) Defendants purportedly diverting corporate profits by issuing "fraudulent" invoices to HFN's customer support vendor, Zen Support Force ("**Zen**") (FAC ¶¶ 31-34 (the "**Zen Allegations**")); (2) HFN entering a partnership with Seed Group (the "**Seed Partnership**") which Plaintiff speculates is designed to transfer corporate assets to a new entity outside of his reach (*Id.*¶¶ 35-38 (the "**Seed Allegations**")); (3) HFN's alleged use of its ESOP to issue equity to insiders (*Id.* ¶¶ 39-50 (the "**ESOP Allegations**")); (4) Mr. Santhanam and Ruby Jha supposedly devoting their time and travel budgets to non-HFN activities (*Id.* ¶¶ 51-58 (the "**Distraction Allegations**")); (5) HFN's allegedly deficient corporate governance (*Id.* ¶¶ 59-65 (the "**Governance**

Allegations")); (6) HFN's lack of an "effective" human resources ("**HR**") department (*Id.* ¶¶ 66-69 (the "**HR Allegations**")); (7) HFN's failure to protect/monetize its patent portfolio (*Id.* ¶¶ 70-81 (the "**Patent Allegations**")); (8) the purported risk of customer data breaches due to outdated HFN software (*Id.* ¶¶ 82-95 (the "**Software Allegations**")); and (9) HFN's poorly designed website (*Id.* ¶¶ 96-99 (the "**Webpage Allegations**")).

Finally – just as in the California Action – Plaintiff alleges he was induced to enter a Settlement with HFN in 2015 based on representations during settlement negotiations that the company's ESOP would be used in the future to attract talented employees. Plaintiff claims that after he entered the Settlement, HFN began using the ESOP to provide equity to insiders, including its CEO, Mr. Santhanam. (*Id.* ¶¶ 39-50, 392-446). Plaintiff's fraud allegations in this case omit or gloss over various facts he included and admitted in the California Action, including that Plaintiff's 2015 Settlement with HFN attaches and incorporates the SPA under which Plaintiff acquired additional stock in the company, and the Settlement and SPA contain broad release, no-prior-representation, no-reliance, and integration provisions. (RJN, Ex. 1 at ¶¶ 90-92; *see also* RJN, Exs. 4, 11).[2]

As to Shiralagi, the FAC only mentions him a few times while referencing an alleged "scheme" from "ten years ago" that is not the subject of this lawsuit, and describing how HFN's website supposedly continued to list Shiralagi after he left the company. (*Id.* ¶¶ 19, 24-27, 60). Based on these minimal allegations, the FAC: (a) asserts a series of formulaic and conclusory accusations about Shiralagi's purported failure to prevent the supposed misuse of HFN's resources; but (b) omits any meaningful details regarding how Shiralagi – as opposed to any other Defendant – was purportedly involved in/responsible for the purported misconduct alleged in the

---

[2] The Court may take judicial notice of and consider the Settlement and SPA since the FAC expressly references, and predicates its fraud claim on, the Settlement. *See concurrently filed Request for Judicial Notice.*

FAC. (*See id.* ¶¶ 122-123, 151-155 (asserting Shiralagi "had the responsibility of regularly reviewing the financials of HFN[,]" and he "knowingly and intentionally assisted HFN and Santhanam" in their alleged diversion of HFN's payments to Zen, and "breached his fiduciary duty of care" and "disclosure" to Plaintiff, by "being aware of the discrepancy and not taking action to resolve it"), ¶¶ 194-195, 223-227 (asserting Shiralagi "had the responsibility of regularly reviewing the binding contracts of HFN" and was "aware, or was negligently unaware, of the contract with Seed and its effect of transferring HFN assets" into another entity, and that Shiralagi "knowingly and intentionally assisted HFN and Santhanam" with respect to the Seed Partnership, and "breached his fiduciary duty of care" and "disclosure" to Plaintiff by not "taking action to correct" and not "disclosing" the Seed Partnership), ¶¶ 297-300 (asserting Shiralagi was responsible for "regularly participating in Board meetings" and he "breached his fiduciary duty of care" by "not providing adequate oversight of HFN" on various issues), ¶ 349 (asserting Shiralagi was responsible for "regularly reviewing the IP strategy of HFN" and "breached his fiduciary duty of care" by "failing to prevent" the company's misuse of its patents), ¶¶ 411-413 (asserting Shiralagi knowingly "made" a "false statement" regarding the ESOP's intended future use, and that he "intended" for Plaintiff to "rely on that statement," but omitting any detail about when and how the statement was supposedly communicated, or what Shiralagi specifically stated), ¶¶ 460-463 (asserting Shiralagi was responsible for "reviewing and managing the share allocation of HFN," and that he "breached his fiduciary duty" to Plaintiff by "not managing the ESOP to maximize its benefit" and "by not disclosing" the ESOP's alleged misuse).

**Tellingly, Plaintiff repeats these *same* conclusory assertions *verbatim* as to the other Defendants**, in confirmation that he is attempting to state his claims through undifferentiated group pleading that fails to distinguish between HFN's various officers and directors. (*See also id.* ¶¶ 126-136; 139-150, 155-163; 198-208, 211-222, 230-236; 285-296, 303-314; 393-410, 420-446; 448-459, 466-483).

## III.    THE COURT SHOULD DISMISS THE FAC AS TO SHIRALAGI[3]

### A.    Plaintiff Has Failed to State a Valid Fiduciary Duty Claim Against Shiralagi

#### 1.    Plaintiff's Claims Are Derivative – Thus, He Cannot Maintain Them

HFN is incorporated in Delaware, (*id.* at ¶ 7), and breach of fiduciary duty claims involving corporations are governed by the law of the state of incorporation. *Newsome v. Gallacher*, 722 F.3d 1257, 1272 (10th Cir. 2013); *Wasatch Oil & Gas, LLC v. Reott*, 263 P.3d 391, 393 (Utah Ct. App. 2011); *AVT Cal., L.P. v. Arrow Recycling Sols., Inc.*, No. 2:19-cv-00939-JNP, 2020 U.S. Dist. LEXIS 171574, at *21 (D. Utah Sep. 18, 2020).[4]  Accordingly, Delaware governs whether Plaintiff's fiduciary duty claims are direct or derivative. *Freedman v. magicJack VocalTec. Ltd.*, 963 F.3d 1125, 1131-1133 (11th Cir. 2020) (collecting cases from the Second, Sixth, Seventh, Eighth, and Ninth Circuits holding that "courts must look to the law of the state of incorporation to determine whether an action is direct or derivative[,]" and adopting the same rule); *Smith v. Waste Mgmt. Inc.*, 407 F.3d 381, 384 n.1 (5th Cir. 2005) (same; applying Delaware law).

Despite professing this is not a derivative suit, (FAC ¶ 100), the gravamen of the FAC is that: (1) HFN's affairs are allegedly being mismanaged in a variety of ways involving waste, the misallocation of company resources, and self-dealing; and (2) Plaintiff has been injured by virtue of his minority stake in HFN.[5]  Labels aside, Plaintiff's fiduciary duty Counts are classically

---

[3] To avoid providing the Court with needlessly duplicative briefing, this Motion omits certain parentheticals and citations that are already set forth in more detail in HFN's Motion.

[4] All citations using the "Fed. App'x", "LEXIS", or "WL" format are unpublished decisions.

[5] FAC ¶ 2 (Defendants have "use[d] HFN resources for their own personal benefit"), ¶ 20 (alleging concern "about the manner in which HFN was being run and the negative consequences that might result[,]" with the "greatest concern" being "that key resources" of the company "were not being utilized to advance the interests of HFN"), ¶ 33 (alleging misallocation of HFN payments), ¶¶ 36-37 (the Seed Partnership will "add almost no value to HFN's activities" and HFN is paying "a significant amount of money to Seed with no return"), ¶ 49 (HFN is not "using the ESOP as incentive options to improve the talent and development at HFN"), ¶¶ 56-57 (Mr. Santhanam and Ms. Jha are "using HFN resources for their own personal gain at the expense of HFN"), ¶¶ 59 and 65 (the "corporate governance of HFN is in a state of disarray"), ¶¶ 66-67 ("HFN lacks basic

derivative. *In re Saba Software, Inc. S'holder Litig.*, 2017 Del. Ch. LEXIS 52, at *47 & n.106 (Mar. 31, 2017) ("Claims of corporate mismanagement are classically derivative claims"); *Bocock v. Innovate Corp.*, 2022 Del. Ch. LEXIS 307, at *42-43 (Oct. 28, 2022) (allegations of "looting [of] [a corporation's] assets and forc[ing] [the corporation] into unfavorable agreements that negatively impact [its] financial position [describe] harm [that] is derivative[,]" and claims of "[m]ismanagement which depresses the value of stock" are "to be enforced by a derivative action").[6] More specifically:

- The **Governance, HR, Patent, Software, and Webpage Allegations** concern Defendants' supposed failure to exercise proper oversight over HFN and their negligent operation of the business, which are quintessential derivative claims. *In re McDonald's Corp. Stockholder Deriv. Litig.,* No. 2021-0324-JTL, 2023 Del. Ch. LEXIS 23, at *48 (Jan. 25, 2023) ("oversight claims are derivative"); *Albert v. Alex. Brown Mgmt. Servs.,* Nos. 762-N, 763-N, 2005 Del. Ch. LEXIS 133, at *46 (Aug. 26, 2005) ("claims for gross negligence and failure to provide competent and active management are clearly derivative.").

- The **Seed Allegations** concern "harm that is derivative" since they relate to an allegedly "unfavorable agreement[] that negatively impact[s]" HFN's "financial position." *Bocock*, 2022 Del. Ch. LEXIS 307, at *42.

- The **Zen, ESOP, Seed, and Distraction Allegations** also concern purported self-dealing by Defendants and the waste/misappropriation of HFN's resources, which are classic

---

corporate oversight and controls" and "has no effective" HR department, which creates liability risk), ¶¶ 78-80 (HFN's Board has "been diverting HFN resources . . . rather than maintaining and protecting" the company's "key" patent "assets," thereby "fail[ing] to use company resources correctly"), ¶ 86 (HFN has failed to update software and "put the company" at risk), ¶¶ 91 and 94 (Defendants are "investing HFN resources for personal benefit rather than the benefit of HFN" and "use HFN resources for their own gain at the expense of HFN"), ¶ 98 (Defendants do not "use company resources to keep the website accurate and timely," and have "diverted those resources" to improper uses).

[6] Utah law is in accord. *Warner v. Dmg Color*, 20 P.3d 868, 872 (Utah 2000).

derivative claims. *Thornton v. Bernard Techs., Inc.*, No. 962-VCN, 2009 Del. Ch. LEXIS 29, at *9 (Feb. 20, 2009) ("our case law finds allegations of waste and self-dealing transactions generally to be derivative instead of direct").

- To the extent Plaintiff alleges Shiralagi **aided and abetted** any purported fiduciary breaches, those too are derivative claims. *Feldman v. Cutaia*, 956 A.2d 644, 662 (Del. Ch. 2007) (recognizing the "unsurprising proposition that an aiding and abetting claim premised on a derivative cause of action is necessarily derivative itself.").

Consistent with this law, Plaintiff's fiduciary duty Counts are derivative, especially where Plaintiff also claims Defendants have injured him by diminishing the value of his shares.[7] *Kramer v. W. Pac. Inds., Inc.*, 546 A.2d 348, 353 (Del. 1988) (a claim is "derivative in nature" when a shareholder "claims that the value of his stock [has] deteriorated and that the value of his proportionate share of the stock [has] decreased").

Apparently recognizing these issues, Plaintiff asserts this is not a derivative case because it would be a "miscarriage of justice" if he were to obtain damages that "would mostly go straight back into the pockets of Defendants" who themselves are shareholders of HFN. (FAC ¶ 100). **However, under Delaware law, Plaintiff cannot transform obviously derivative claims into direct ones simply because he is a minority shareholder complaining about the conduct of HFN's controlling owners**.

In *Brookfield Asset Mgmt. v. Rosson*, 261 A.3d 1251 (Del. 2021), the Delaware Supreme Court: (1) explained that a shareholder can **only** maintain a direct claim if "he or she can prevail

---

[7] FAC ¶ 2 (Defendants have "implemented a long running scheme" to "defraud him of the value of his shares" in HFN), ¶¶ 107, 116, 124, 128, 132, 136, 141, 143, 147, 149, 154, 156, 161, 163, 168, 172, (Plaintiff "los[t] access to the value" of the Zen "invoices either as a dividend or as increased value of the company"), ¶¶ 251, 254, 260, 263 (Plaintiff "los[t] access to" employee salaries, as well as "money and the value of services provided to other companies unrelated to HFN"), ¶¶ 397, 406, 415, 424, 433, 442, 450, 452, 456, 458, 462, 464, 468, 470, 474, 476, 480, 482 (Plaintiff "los[t] the value of the options taken out of the" ESOP).

without showing an injury to the corporation"; and (2) held that minority shareholders had only stated a **<u>derivative</u>** claim where they alleged the majority shareholder had improperly caused the corporation to sell it additional stock at a depressed price, which in turn increased the majority's control by "diluting both the financial and voting interest of the minority stockholders." *Id.* at 1259-1280. Because "the economic and voting power dilution that allegedly harmed the [minority] stockholders flowed directly to them in proportion to, and via, their shares" in the corporation, their claims fell "neatly into [] the derivative category." *Id.* at 1266-1268. In so ruling, the Delaware Supreme Court held that, when classifying claims as derivative versus direct, the "focus[]" is **<u>not</u>** "on whether one group of stockholders (a controller) was impacted different from another group (the public or minority holders)," **<u>nor</u>** is it permissible to "focus on the [identity of] the alleged wrongdoer." *Id.* at 1273-1274. These principles preclude Plaintiff's attempt to characterize his "minority shareholder" fiduciary Counts as direct.

Because Plaintiff's claims are derivative, they are barred for three reasons. **<u>First</u>**, Plaintiff, as a *pro se* litigant, cannot maintain derivative claims. *Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997); *Tal v. Hogan*, 453 F.3d 1244, 1254 (10th Cir. 2006); DUCivR 83-1.3(c).).[8] **<u>Second</u>**, a plaintiff asserting derivative claims must plead demand futility "with particularity[,]" Fed. R. Civ. P. 23.1(b)(3)(A)-(B), and Delaware law governs the demand futility analysis here. *See Gubricky v. Ellis*, 255 F. Supp. 3d 1119, 1128 (D. Colo. 2017). Plaintiff has not even attempted to plead demand futility because he believes this is not a derivative case. Thus, the FAC lacks particularized facts making the required futility showing. *United Food & Comm. Wrks. Union v. Zuckerberg*, 262 A.3d 1034, 1049, 1059 (Del. 2021) (describing Delaware's 3-part demand futility

---

[8] *See also, e.g., Drobny v. Lanham*, 680 F. App'x 486, 488 (7th Cir. 2017); *Simon v. Hartford Life & Accident Ins. Co.*, 546 F.3d 661, 664-665 (9th Cir. 2008); *Bluefeld v. Cohen*, Civil Action No. PX 15-2857, 2017 U.S. Dist. LEXIS 64395, at *9 (D. Md. Apr. 27, 2017) *aff'd* 697 Fed. App'x 788 (4th Cir. 2017); *Cohen v. Moore*, Civil Action No. 16-661, 2016 U.S. Dist. LEXIS 179476, at *4 (W.D. Pa. Dec. 29, 2016); *Am. Univ. of the Caribbean v. Tien*, No. 04-20834-CIV-GOLD/TORRES, 2013 U.S. Dist. LEXIS 201122, at *11 (S.D. Fla. Dec. 2, 2013).

testing which "is not excused lightly"). **Third**, a derivative complaint must be verified. Fed. R. Civ. P. 23.1(b). The FAC is not.

### 2. Plaintiff Has Failed to Plead Non-Conclusory Facts

"A plaintiff must adequately plead a breach of fiduciary duty claim against each individual director or officer" because "[e]ach director [or officer] has a right to be considered individually[.]" *Bocock*, 2022 Del. Ch. LEXIS 307, at *39 (quotations and citations omitted). In addition, "[a] conclusory allegation[,] at the end of a general description of self-dealing transactions[,] that Defendants were aware of, or consciously ignored, their duties" as fiduciaries by "failing to be aware of the challenged transactions or to stop them[,] is not sufficient" to support a fiduciary duty claim under Delaware law. *Canadian Commer. Workers Indus. Pension Plan v. Alden*, Civil Action No. 1184-N, 2006 Del. Ch. LEXIS 42, at *25 (Ch. Feb. 22, 2006). These principles align with federal law. *Estate of Locket v. Fallin*, 841 F.3d 1098, 1107 (10th Cir. 2016) ("Mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' are insufficient."); *Rich Media Club, Ltd. Liab. Co. v. Mentchoukov*, No. 2:11-CV-1202 TS, 2012 U.S. Dist. LEXIS 48498, at *10 (D. Utah Apr. 3, 2012) (dismissing conclusory fiduciary duty claim).

In violation of these standards – and as described above in Section II.B – Plaintiff: (1) alleges in conclusory fashion that Shiralagi was "responsible" for, and was aware of, HFN's corporate governance issues, financial information, and third-party business relationships; and then (2) baldly extrapolates that Shiralagi somehow facilitated the purported fiduciary breaches set out in the FAC, principally through his alleged inaction. (FAC ¶¶ 151-156; 223-229; 297-302; 348-354). **However, Plaintiff alleges these *same* boilerplate "facts" as to each of the other officer and director Defendants named in the FAC**. (*Id.* ¶¶ 139-150, 158-164; 210-222, 230-236; 285-296, 303-314; 334-347, 355-368). This is nothing more than impermissible "group pleading" by another name. *Bocock*, 2022 Del. Ch. LEXIS,at *39 ("When it comes to fiduciary duty claims . . . so-called 'group pleading' will not suffice."); *Seale v. Citizens Sav. & Loan Ass'n*,

806 F.2d 99, 106 (6th Cir. 1986) ("a director or officer of a corporation is not liable, merely because of his official character, for the fraud or false representations of the other officers or agents of the corporation . . . if such director or officer is not personally connected with the wrong and does not participate in it." (quotation and citation omitted)).

Finally, the FAC's Counts for aiding and abetting breach of fiduciary duty must also be dismissed because: (a) Plaintiff has not established, and cannot maintain, a claim for an underlying breach of fiduciary duty; (b) Plaintiff has not alleged non-conclusory facts showing that Shiralagi facilitated any breach of fiduciary duty; and more fundamentally (c) **an aiding and abetting claim can only be pursued against a *non-fiduciary* – it *cannot* be alleged against an officer or director who, like Shiralagi, directly owed fiduciary duties to the company and shareholders**. *CMS Inv. Holdings, LLC v. Castle*, No. 9468-VCP, 2015 Del. Ch. LEXIS 169, at *72 (June 23, 2015) ("as a matter of law, aiding and abetting liability generally cannot attach to defendants who themselves owe fiduciary duties to the relevant entity and plaintiff.").

### B. Plaintiff Cannot State a Valid Conversion Claim Against Shiralagi

In Counts 1, 5, 9, and 10, Plaintiff asserts claims for conversion of HFN's assets such as payments to Zen, cash supposedly transferred to Seed, and employee salaries and travel budgets. (FAC ¶¶ 102-120, 174-192, 246-283). These claims – and Plaintiff's related aiding and abetting claims in Counts 2 and 6– must be dismissed.

**First**, these Counts are disguised derivative claims regarding the alleged misuse/waste of corporate assets through self-dealing. As described above, Plaintiff cannot legally maintain such claims. *Dietrichson v. Knott*, No. 11965-VCMR, 2017 Del. Ch. LEXIS 64, at *10 (Apr. 19, 2017) (claims were derivative where plaintiff alleged director wrongfully transferred sale proceeds to himself); *Warner*, 20 P.3d at 872 (claims for "conversion of corporate assets" and "misappropriation of corporate assets" are derivative where a complaint "contain[s] no allegations

of harm specific to plaintiff, as opposed to harms affecting other shareholders or creditors of the corporation.").

**Second**, an essential element of conversion is the plaintiff's immediate possessory interest in the converted property. *Fibro Trust, Inc. v. Brahman Fin., Inc.*, 974 P.2d 288, 296 (Utah 1993); *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 889 (Del. Ch. 2009). In violation of this requirement, Plaintiff alleges the conversion of **corporate** assets belonging to **HFN**. However, it is a "basic tenet of American corporate law" that "the corporation and its shareholders are distinct entities" – **thus "[a]n individual shareholder, by virtue of his ownership of shares, *does not* own the corporation's assets** . . . ." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474-75 (2003) (emphasis added); *see also Southam v. S. Despain Ditch Co.*, 337 P.3d 236, 241 n.7 (Utah 2014) (same); *duPont v. duPont*, 42 Del. Ch. 246, 251 (1965) (same). Because Plaintiff cannot establish a right to immediate possession or ownership of the assets he claims were converted, his conversion-based Counts fail. *Springfield Fin. & Mortg. Co., LLC v. Lilley*, No. 2:14-CV-00679-EJF, 2015 WL 12780894, at *5 (D. Utah Sept. 29, 2015); *LBF Travel Mgmt. Corp. v. DeRosa*, No. 20-cv-2404-MMA (AGS), 2021 U.S. Dist. LEXIS 220133, at *24-25 (S.D. Cal. Nov. 15, 2021).[9]

### C. **Plaintiff Cannot State a Valid Fraudulent Misrepresentation Claim**

In Count 18, Plaintiff alleges: (i) all Defendants misrepresented the intended purpose of the company's ESOP during 2015 settlement negotiations; (ii) Plaintiff relied on that representation by entering the Settlement; and (iii) HFN subsequently used the ESOP to award equity to insiders. (FAC ¶¶ 39-49, 392-446). Plaintiff also alleges, in vague and conclusory fashion, that Shiralagi and all other Defendants somehow facilitated the misrepresentation by "fraudulently accounting for the shares as an ESOP but never actually using them as an ESOP." (*Id.* ¶ 417; *see also* ¶¶ 399, 408, 426, 435, 444). This claim, although alleged under the common

---

[9] Just as with his fiduciary duty claims, Plaintiff also fails to plead non-conclusory facts showing that Shiralagi personally took, or abetted, any action constituting conversion.

law, is a carbon-copy of the federal securities fraud claims the N.D. Cal. dismissed with prejudice. (*See and compare with* RJN, Ex. 1 at ¶¶ 107-123; Ex. 4 at ¶¶ 119-126; Ex. 7 at pp. 1-2). Thus, *res judicata* bars Plaintiff's fraud claim. Even if it did not, the claim is still barred by the Settlement and SPA, inadequately alleged, and untimely.

### 1. *Res Judicata* Bars Plaintiff's Fraud Claim

"Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. Issue preclusion, in contrast, bars successive litigation of an issue or fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Utah also recognizes these "two branches" of *res judicata*, *Penrod v. Nu Creation Creme*, 669 P.2d 873, 874 (Utah 1983), and federal and Utah law are "virtually identical" on these issues. *Haik v. Salt Lake City Corp.*, 393 P.3d 285, 288 (Utah 2017); *see also Frandsen v. Westinghouse*, 46 F.3d 975, 978 (10th Cir. 1995). Both claim and issue preclusion bar Plaintiff's fraud claim.

**First**, claim preclusion applies when: (i) "the current and original suit [] involve the same parties or their privies"; (ii) "the claim that is alleged to be barred must have been presented in the first suit or must be one that could and should have been raised in the first action"; and (iii) "the first suit must have resulted in a final judgment on the merits." Additionally, courts consider whether "the parties [] had a full and fair opportunity to litigate the claim in the first suit." *Nikols v. Chesnoff*, 435 Fed. App'x 766, 769 (10th Cir. 2011); *see also MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005). These elements are satisfied here:

**A)** **Same Parties**: This case and the California Action involve the same parties. (FAC ¶¶ 7-12; RJN, Ex. 4 at ¶¶ 5-10).

**B)** **Same Cause of Action**: The Tenth Circuit, like Utah, has "adopted the 'transactional approach' . . . [u]nder [which] a cause of action includes all claims or legal theories

of recovery that arise from the same transaction." *MACTEC, Inc.*, 427 F.3d at 832. "All claims arising out of the transaction must therefore be presented in one suit or barred from subsequent litigation. Thus, claim preclusion[] will prevent a party from relitigating a legal claim that was or could have been the subject of a previously issued final judgment." *Watson v. Mylan Pharms.*, 795 Fed. App'x 584, 588 (10th Cir. 2019) (quotations omitted). "In general, a transaction connotes a natural grouping or common nucleus of operative facts[,]" and "a new claim can go forward" only if "it is based on new and independent facts not part of the previous transaction." *Haik v. Salt Lake City Corp.*, 567 Fed. App'x 621, 631 (10th Cir. 2015) (quotations omitted); *see also Nelson v. Nelson*, 529 P.3d 370, 380-381 (Utah 2023).

Applying these principles, Plaintiff's securities fraud claims in the California Action and his fraud Count in this case are the same "cause of action" because they both arise from, and seek redress for, the same alleged wrongdoing. In both cases, Plaintiff alleges:

- Defendants misrepresented the future purpose of HFN's ESOP during 2015 settlement discussions (FAC ¶¶ 39-49, 392-446; RJN, Ex. 4 at ¶¶ 24-36, 119-126);

- Plaintiff relied on that representation in entering the Settlement FAC ¶¶ 393, 396-397, 405, 414, 423, 432, 441; RJN, Ex. 4 at ¶¶ 24-36, 119-126);

- Defendants' representation proved false because, post-Settlement, HFN used the ESOP to issue equity to corporate insiders rather than attract new talent (FAC ¶¶ 40, 42, 49, 393, 402, 411, 420, 429, 438, 449, 455, 461, 467, 473, 479; RJN, Ex. 4 at ¶¶ 34, 120);

- Plaintiff realized Defendants' supposed fraud when he saw HFN's capitalization table in 2022 (FAC ¶¶ 41, 42; RJN, Ex. 4 at ¶¶ 30-32); and

- Plaintiff was purportedly damaged by Defendants' failure to utilize the ESOP in the manner represented in 2015 (FAC ¶¶ 50, 406, 450; RJN, Ex. 4 at ¶¶ 33-36, 121, 125).

Because Plaintiff's fraud claims are substantively identical, he cannot avoid the N.D. Cal.'s dismissal order. *Plotner v. AT&T Corp.*, 224 F.3d 1161, 1170 (10th Cir. 2000) ("The fact that

Plotner now presents some of her claims under the rubric of slightly different legal theories . . . does not obscure the fact that they all arise out of a single transaction.").

**C)** **Final Judgment and Full/Fair Opportunity to Litigate**: The N.D. Cal. dismissed Plaintiff's securities fraud claims "with prejudice" for failure to state a claim and judgment was entered in accordance with that order. (RJN, Exs. 3, 7-8). The "final judgment" element of claim preclusion is met. *Slocum v. Corporate Express US Inc.*, 446 Fed. App'x 957, 960 (10th Cir. 2011). Finally, Plaintiff had a full and fair opportunity to litigate his securities fraud claims before the N.D. Cal., especially where he was granted leave to amend those claims and then failed to state a valid claim in his amended pleading. (RJN, Ex. 7 at pp. 1-2).

**Second**, issue preclusion also prohibits Plaintiff from relitigating whether Defendants fraudulently misrepresented the ESOP's future purpose during 2015 settlement talks. Issue preclusion has four requirements: "(1) [t]he issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issues in the prior action." *Haik*, 567 Fed. App'x at 628 n.2; *see also Collins v. Sandy City Bd. of Adjustment*, 52 P.3d 1267, 1269-1270 (Utah 2002).

The "identical" issue requirement is met. In both the California Action and this case, Plaintiff alleges Defendants intended to defraud him by falsely representing the future purpose of HFN's ESOP, (FAC ¶¶ 39-49, 392-446; RJN, Ex. 4 at ¶¶ 24-36, 119-126), and courts have repeatedly held that the elements of securities fraud and common law fraud are substantially identical. *Axar Master Fund, Ltd. v. Bedford*, 806 F. App'x 35, 38 n.2 (2d Cir. 2020).[10] Thus,

---

[10] *See also Barnard v. Verizon Communs., Inc.*, 451 Fed. App'x 80, 86 (3d Cir. 2011); *Anderson v. Transglobe Energy Corp.*, 35 F. Supp. 2d 1363, 1370 (M.D. Fla. 1999); *Chase Manhattan Mortg. Corp. v. Advanta Corp.*, Civil Action No. 01-507 (KAJ), 2005 U.S. Dist. LEXIS 19374, at *60-74 (D. Del. Sep. 8, 2005).

when – as here – a plaintiff suffers an adverse ruling on one type of fraud allegation, he cannot repackage the claim under a different theory and pursue it in a later action. *Murphy v. Gallagher*, 761 F.2d 878, 882-883, 885 (2d Cir. 1985) (issue preclusion required dismissal of a securities fraud claim based on the adjudication of common law fraud claim in a prior action given the "fairly precise overlap" with respect to issues of "intent, scienter, fraud, [and] deceit"); *NM IQ LLC v. McVeigh*, 2004 U.S. Dist. LEXIS 24775, at *21-33 (S.D.N.Y. Dec. 8, 2004) (order dismissing common law fraud claims precluded relitigation of issues in subsequent securities fraud action).

The remaining requirements of issue preclusion are also satisfied. The N.D. Cal. dismissed Plaintiffs' securities fraud claims with prejudice and on the merits, as explained above. The N.D. Cal.'s adjudication of Plaintiff's securities fraud claims on the merits was essential to its judgment of dismissal because if Plaintiff stated a viable securities fraud claim then he may have been entitled to maintain his state law claims in the N.D. Cal. (RJN, Ex. 3 at pp. 1-2; Ex. 7 at pp. 1-2). In addition, the party against whom issue preclusion is being invoked now – Plaintiff – was a party to the California Action. Finally, Plaintiff had a full/fair opportunity to litigate his securities fraud claims.

Given the foregoing, Plaintiff cannot relitigate the issue of Defendants' (including Shiralagi's) supposedly fraudulent conduct involving the ESOP during 2015 settlement talks.

## 2. The Settlement and SPA Bar Plaintiff's Fraud Claim

Plaintiff alleges Defendants committed fraud during the 2015 settlement negotiations but fails to mention the broad releases in the resulting Settlement and SPA that bar Plaintiff from maintaining his fraud claim. Specifically, Plaintiff agreed in the Settlement to:

> **[F]orever release and discharge** . . . **Defendants including without limitation each Defendant's** officers, **directors**, shareholders, **agents**, attorneys, investors, parents, subsidiaries, affiliates, successors, predecessors, assigns, heirs (the 'Releasees') from **any and all claims, demands, debts, liens, causes of action, or liabilities, of whatsoever kind and nature**, character and description, whether in law or equity, whether as a shareholder,

sounding in tort, contract or other applicable law, **whether known or unknown**, fixed or contingent, concealed or hidden, latent or patent, anticipated or unanticipated, direct or derivative (collectively, 'Claims'), including, **but not limited to**, any Claims arising out of, in connection with, or in any way related to the [Massachusetts] Lawsuit and the facts alleged therein in any way related to the [parties' prior] Lawsuit and the facts alleged therein. **It is understood and agreed that this shall be a full and complete release**, and includes all consideration of any kind or character, including any actual, consequential or other damages alleged or which could have been alleged as against Defendants in the [Massachusetts] Lawsuit **or as of the date of this Settlement Agreement**." (RJN, Ex. 11 (Settlement) at § 3.1 (emphasis added)).

Plaintiff further agreed in the SPA – which is attached to and part of the Settlement [11] – that:

> **Purchaser has independently and without reliance upon the Seller or the Company**, and based on such information and the advice of such advisors as Purchaser has deemed appropriate, made its own independent analysis and decision to enter into this Agreement and to purchase the Shares it is purchasing hereunder. **Such Purchaser acknowledges that the Seller may now possess or may hereafter possess nonpublic information concerning the Company not known to such Purchaser (the 'Seller Excluded Information') . . . [which] may or may not be material, may or may not have been disclosed by or on behalf of the Company, and may or may not be available to such Purchaser from sources other than the Company or the Seller.**
>
> **Such Purchaser . . . hereby: (a) agrees that none of the Seller Released Parties [] or Company Released Parties shall have any liability to such Purchaser . . . . with respect to, based upon, arising from, resulting from, or relating directly or indirectly to the existence, substance possession, disclosure, or nondisclosure of any Seller Excluded Information whatsoever . . . ; (b) waives any right, claim or cause of action at law or in equity with respect to, arising from, based upon, resulting from or relating to directly or indirectly the existence, substance, possession, disclosure or nondisclosure of any Seller Excluded Information, including, without limitation . . . and relinquishes all rights and**

---

[11] RJN, Ex. 11 (Settlement) at §§ 1.1, 11.

**remedies** accorded by applicable law to a purchaser of securities to the maximum extent permitted by law . . . ; and **(c) hereby and forever releases and discharges the Seller . . . and Company Released Parties of and from any and all suits, demands, obligations, liabilities, claims and causes of action, contingent or otherwise, of every kind and nature, at law and in equity, whether asserted, unasserted, absolute, contingent, known or unknown, which such Purchaser . . . may have against any of the Seller Released Parties or Company Released Parties, to the extent arising from the transactions contemplated by this Agreement**, except for claims arising under, and subject to the limitations contained in, the express terms of this Agreement." (*Id.* (SPA) at § 3.6 (emphasis added)).

These release provisions encompass/preclude Plaintiff's alleged fraud claim. *See Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034, 1038-1041 (9th Cir. 2011) (rejecting plaintiffs' argument that they were fraudulently induced to enter a settlement resolving pending litigation based on the defendant's alleged misrepresentations regarding the value of the stock plaintiffs would receive under the settlement, because, *inter alia*, a settlement resolving litigation between represented parties "cannot reasonably be interpreted as leaving open the door to litigation about the settlement negotiation process[,]"including claims that fraud "took place in connection with the settlement itself.").[12]   And, enforcing these releases is particularly warranted where: (i) Plaintiff was represented by counsel in the during settlement negotiations and in the underlying litigation which the Settlement resolved;[13] (ii) the Settlement and SPA also contain broad no-other-representation, no-reliance, and integration-clause provisions, and omit any mention of, let alone restriction on, HFN's ESOP;[14] and (iii) Plaintiff admits his attorney negotiated a "compromise" to

---

[12] *See also Johnson v. King*, No. 10-CV-279-S, 2011 U.S. Dist. LEXIS 119998, at *47-50 (D. Wyo. Oct. 17, 2011); *IBM v. Simon*, 376 F. Supp. 3d 292, 301-302 (S.D.N.Y. 2019).

[13] RJN, Ex. 4 at ¶ 25; Ex. 11 (Settlement) at §§ 6.1-6.2 and 7.

[14] RJN, Ex. 11 (Settlement) at §§ 6.3, 6.5, 11 and (SPA) at § 4.9.

account for any uncertainty/concern he had about HFN's use of its ESOP, and Plaintiff should not be permitted to renege on that compromise now.[15]

### 3. Plaintiff Has Failed to Plead Sufficient Facts Establishing Fraud

"When fraud is alleged, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard" under which "a party must state with particularity the circumstances constituting [the] fraud[,]" including by identifying "the time, place, and content of each allegedly fraudulent representation or omission," the "particular defendant responsible for it," and "the consequence thereof." *Gaddy v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*, No. 2:19-cv-00554-RJS-DBP, 2023 U.S. Dist. LEXIS 54523, at *30 (D. Utah Mar. 28, 2023). Plaintiff's fraud claim falls well-short. (FAC ¶¶ 39-50, 392-446). The FAC generically alleges Plaintiff was "aware that an ESOP is a key component to attract talent to a high-tech company[,]" and Shiralagi "falsely represented" in 2015" that HFN's "pool" of unissued stock "was an ESOP that would be used to attract talent to HFN" in general. (FAC ¶¶ 40, 411). But, the conclusory/boilerplate nature of this allegation is confirmed by the fact that **Plaintiff has interposed the *identical* allegation as to all other Defendants as well**. (*Id.* ¶¶ 393, 402, 420, 429, 438). Plaintiff asks the Court to believe that all Defendants made the same unspecified representations regarding the ESOP during settlement talks in 2015, even though both Plaintiff and HFN were represented by counsel during negotiations. This is implausible on its face.

Likewise, there are no facts showing Shiralagi intended Plaintiff to rely on any representation – indeed, the Settlement and SPA do not mention, much less impose limitations on, the ESOP's future, and those documents contain no-other-representation, no-reliance, and integration-clause provisions disclaiming all earlier representations.

In addition, there are no facts alleged showing Shiralagi acted in 2015 with any fraudulent or deceptive intent. **Plaintiff admits that as of December 2019 – more than 4-years after the**

---

[15] FAC ¶ 40.

Settlement and SPA were executed – Mr. Santhanam **still** had **not** received **any** HFN stock from the ESOP, which is fundamentally inconsistent with any fraud or fraudulent intent years earlier in 2015 during settlement talks. (FAC ¶ 43). Thus, Plaintiff has alleged nothing more than HFN's purported failure to utilize the ESOP in the manner supposedly represented in 2015. Yet, "[w]ithout more, 'evidence of a broken promise is not evidence of fraud.'" *United Wholesale Mortg., LLC v. Am.'s Moneyline, Inc.*, 647 F. Supp. 3d 587, 599 (E.D. Mich. 2022); *see also Reynolds v. Knox Cnty. Gov't*, No. 3:17-cv-79, 2019 U.S. Dist. LEXIS 251378, at *23 (E.D. Tenn. May 3, 2019).

### 4. Plaintiff's Fraud Claim Is Untimely

Fraud claims are subject to a 3-year statute of limitations. Utah Code Ann. § 78-12-26(3). The "plaintiff is deemed to have discovered his action when . . . by reasonable diligence and inquiry [he] should know [] the relevant facts of the fraud." *Colosimo v. Roman Catholic Bishop*, 156 P.3d 806, 811 (Utah 2007). Utah law "particularly emphasize[s] the importance of the diligence requirement" – therefore, "[a] party who has opportunity of knowing the facts constituting the alleged fraud cannot be inactive and afterwards allege a want of knowledge[,]" and "[a] party is required to make inquiry if his findings would prompt further investigation." *Id.*

Plaintiff claims he realized HFN's misuse of the ESOP in 2022 when he "was able to see" the 2019 capitalization table through unspecified "means," which showed certain options had been issued to Defendant Pavan Vaish and Ganesh Krishnan. (FAC ¶¶ 41-43). But, Plaintiff could have requested and obtained the capitalization table in 2019 or earlier through a formal request under Delaware law, or if needed, through a books and records action. *See* 8 Del. C. § 220(b)-(c). Plaintiff does not plead facts showing he diligently pursued these avenues, even though, by his own admission, Plaintiff was "very concerned" about and "feared" Defendants use of the ESOP. (FAC ¶¶ 39, 42).

Under these circumstances, Plaintiff's fraud claim accrued no later than **2019**, since Plaintiff contends that the capitalization table for that year showed Defendants alleged misuse of the ESOP. (FAC ¶¶ 41-42). Because Plaintiff did not file the California Action until more than three years later in **2023** (RJN, Ex. 1), his fraud claim is time-barred. *Mason v. Laramie Rivers Co.*, 490 P.2d 1062, 1064-1065 (Utah 1971); *In re Tyson Foods, Inc.*, 919 A.2d 563, 594 (Del. Ch. 2007).[16]

## IV. CONCLUSION

Because Plaintiff has now made clear – both in the California Action and in this case – that he cannot state any viable claims against Shiralagi, the FAC and this action should be dismissed with prejudice as to Shiralagi.

Dated: December 8, 2023

TROUTMAN PEPPER HAMILTON SANDERS LLP

By: /s/ Nathan R. Marigoni
    Anthony C. Kaye (Utah SBN 8611)
    Nathan R. Marigoni (Utah SBN 14885)
    Matthew H. Ladner (*pro hac vice forthcoming*)
    William M. Taylor (*pro hac vice forthcoming*)
    Attorneys for Defendant KUMAR SHIRALAGI

---

[16] Shiralagi assumes, without conceding, that Plaintiff's fraud claim in this case relates back to the filing of his identical securities fraud claim in the California Action.