Execution Copy

## SETTLEMENT AGREEMENT

This **SETTLEMENT AGREEMENT** ("Settlement Agreement") is entered into on the ___ day of August, 2015 (the "Effective Date") by and between Allan Miller, Dennis Callagy, The Chester S. Jakubowski Roth IRA, Richard Gabriel, Victoria Dudin Silioutina, Geoffry Meek, Gene Robinson, Eric Brown, Scott Noone, John Murgo, Max Kupchik, and William Harding (together, "Plaintiffs") on the one hand, and HFN, Inc. ("HFN" or the "Company"), Alessandro Donnini and Sridhar Santhanam (together, "Defendants") on the other hand. The parties hereto are referred to herein from time to time for convenience as the "Parties."

## RECITALS

**WHEREAS**, on or about June 9, 2014, Plaintiffs filed a lawsuit in the United States District Court for the District of Massachusetts against Defendants, styled as *Miller et al. v. Donnini et al.,* C.A. No. 14-12337, seeking damages and other relief (the "Lawsuit"). On March 27, 2015, the United States District Court issued an order which, among other things, dismissed all claims against the Company but permitted certain claims against other Defendants to proceed

**WHEREAS**, the Parties continue to have disputes and disagreements respecting the allegations in the Lawsuit, but have negotiated a compromise and settlement of all claims or causes of action of any kind, known and unknown, that Plaintiffs and Defendants have or may claim to have at any time in the future against one another relating to any of the allegations made the basis of the Lawsuit or any other dealings, transactions, contracts or agreements between Plaintiffs and Defendants as of the date of this Settlement Agreement;

**WHEREAS**, the Parties understand that through the settlement set forth herein the Lawsuit will be dismissed with prejudice, and that if the Parties would not have settled, further litigation were possible between the Parties related to any actions taken to date;

**WHEREAS**, the Parties believe it is in their best interests to resolve all of their disputes and disagreements on the terms and conditions set forth herein;

**WHEREAS**, for purposes of this Settlement Agreement, references to Plaintiffs or Defendants shall include each Party's direct and indirect parents and subsidiaries, officers, directors, employees, shareholders, attorneys, representatives, insurers, affiliates, members, predecessors, successors, agents and assigns;

**NOW, THEREFORE,** in consideration of the mutual covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

## 1. Settlement Payments and Dismissal of Lawsuit.

**1.1** Within seven days of execution of this Settlement Agreement and the exhibits attached hereto, HFN shall pay to Plaintiffs the total sum of one hundred sixty fourt housand two hundred eighty five dollars and seventy one cents (\$ 164,285.71), less the Purchase Price amount as defined in the accompanying Stock Purchase Agreement. Accordingly, simultaneously with the  execution of this Settlement Agreement, the Parties shall also execute a Stock Purchase Agreement attached hereto as Exhibit 1, pursuant to which

Doc ID: 34c5dd684af094fa819f436ffd97120009d08abb

Plaintiffs shall be conveyed the shares as set forth in Exhibit A thereto. The Stock Purchase Agreement also includes a Joinder as Exhibit B thereto.

  **1.2 Dismissal of Lawsuit.** Within two (2) business days after the full execution of the Settlement Agreement, the Stock Transfer Agreement and payment of the amount set forth in Sections 1.1 hereof, counsel for the Parties shall file a joint motion for or stipulation of dismissal of the Lawsuit, with prejudice.

**2.** **Confidentiality.** The Parties agree that they shall keep the terms of this Settlement Agreement and the facts underlying the Lawsuit confidential, and shall not disclose to any third party, either directly or indirectly, the Lawsuit or this Settlement Agreement or such underlying facts, other than to state, in response to any inquiry, that all disputes between the Parties were successfully resolved to the satisfaction of the Parties. The Parties further agree that this confidentiality section is not breached by a Party's disclosure of the Lawsuit or this Settlement Agreement or such underlying facts to (a) that Party's attorneys, accountants, officers and directors, subject to their obligation to keep such information confidential, (b) to a third party in response to a request for due diligence in connection with a proposed transaction with a Party, provided that any such third party is under an obligation to keep such information confidential; (c) pursuant to any order from a court of competent jurisdiction requiring disclosure; or (d) as otherwise required in order to comply with applicable law or regulation, provided that before any disclosure pursuant to (c) or (d), notice is given to the other Party sufficiently in advance of such disclosure so that the Party has the opportunity to seek a protective order or other remedy to prevent or limit such disclosure.

**3.** **Releases.**

  **3.1 Plaintiffs' General Release.** Except as to the Parties' respective obligations pursuant to the Settlement Agreement and its Exhibits, each of the Plaintiffs, individually, hereby forever release and discharge on behalf of themselves as defined above and any other person or entity who derives or may derive any right or interest in any Claim (as defined later herein) released or discharged hereunder, Defendants including without limitation each Defendant's officers, directors, shareholders, agents, attorneys, investors, parents, subsidiaries, affiliates, successors, predecessors, assigns, heirs  (the "Releasees") from any and all claims, demands, debts, liens, causes of action, or liabilities, of whatsoever kind and nature, character and description, whether in law or equity, whether as a shareholder, sounding in tort, contract or other applicable law, whether known or unknown, fixed or contingent, concealed or hidden, latent or patent, anticipated or unanticipated, direct or derivative (collectively, "Claims"),  including, but not limited to, any Claims arising out of, in connection with, or in any way related to the Lawsuit and the facts alleged therein. It is understood and agreed that this shall be a full and complete release, and includes all consideration of any kind or character, including any actual, consequential or other damages alleged or which could have been alleged against Defendants in the Lawsuit or as of the date of this Settlement Agreement.

  **3.2 Defendants' General Release.** Except as to the Parties' respective obligations pursuant to the Settlement Agreement and its Exhibits, the Releasees hereby forever release and discharge Plaintiffs as defined above from any and all Claims, including,

Doc ID: 34c5dd684af094fa819f436ffd97120009d08abb

Execution Copy

but not limited to, any Claims arising out of, in connection with, or in any way related to the Lawsuit and the facts alleged therein. It is understood and agreed that this shall be a full and complete release, and includes all consideration of any kind or character, including any actual, consequential or other damages alleged or which could have been alleged against Plaintiffs in the Lawsuit or as of the date of this Settlement Agreement.

4.  **No Admission of Liability.**  This Settlement Agreement and dismissal of the Lawsuit, are the result of a compromise and, accordingly, their execution by the Parties will not be construed as, or constitute an admission of, any liability or the facts alleged in the Lawsuit by any Party.

5.  **No Third Party Beneficiaries.**  Other than as specified herein including under Paragraph 8, this Settlement Agreement shall inure exclusively to the benefit of its signatories, and is not meant to convey any right or benefit to any third party.

6.  **Representation and Warranties.**  The Parties hereto, and each of them, represent and warrant to each other as follows:

    **6.1**  Each of the Parties hereto has been advised to seek independent legal advice from attorneys of its or his own choice, with respect to the advisability of making the settlement and releases provided for herein, and with respect to the advisability of executing the Settlement Agreement;

    **6.2**  Each of the Parties has had an attorney review the Settlement Agreement prior to its execution;

    **6.3**  In negotiating the Settlement Agreement, each of the Parties has made various statements and representations to the other Party. Nevertheless, each of the Parties specifically does not rely upon any statement, representation, legal opinion, or promise of any of the other Parties in executing the Settlement Agreement or in making the settlement provided for herein, except as expressly stated in the instrument;

    **6.4**  Each of the Parties represents to each other that no Claim that would be covered by this Settlement Agreement has been assigned to or is held by any third party;

    **6.5**  Each Party has made such investigation of the law pertaining to this settlement and this Settlement Agreement, and of all the matters pertaining thereto, as it deems necessary;

    **6.6**  This Settlement Agreement has been carefully read by, the contents hereof are known and understood by, and they are signed freely by, each of the parties executing it;

    **6.7**  Plaintiffs warrant and represent that they shall not voluntarily provide assistance or cooperation to any other party that is contemplating, undertaking or otherwise engaging in, any adversarial proceeding against Defendants, including without limitation an adversarial proceeding based on the facts alleged in the Lawsuit. Plaintiffs also covenant that they will not make any suit, claim, or complaint or institute any legal proceeding against any person or entity in connection with or related to the facts and allegations in the Lawsuit

Doc ID: 34c5dd684af094fa819f436ffd97120009d08abb

Execution Copy

or in connection with or related to any other fact or cause of action arising from or related to Plaintiffs' role as shareholders of HandsFree Networks, Inc.

7.  **Notices.** All notices, requests, consents and other communications under this Agreement shall be in writing and shall be delivered by hand, or nationally recognized overnight courier or mailed by first class certified or registered mail, return receipt requested, postage prepaid:

If to Defendants:

HFN, Inc.                            and        Robert B. Lovett
2099 Gateway Place, #350                        Cooley LLP
San Jose, CA 95110                              500 Boylston Street
                                                Boston, MA 02116
                                                Telephone: 617-937-2313

If to Plaintiffs:

Allan Miller                                    Patrick J. Dolan
3395 Birch Street                               Perry, Krumsiek & Dolan, LLP
Palo Alto, CA 94306                             210 Union Wharf
                                                Boston, MA 02109
                                                Telephone: 617-720-4300

8.  **Successors; Assigns.** This Settlement Agreement is binding upon and shall inure to the benefit of the Parties hereto, their respective successors, predecessors, assigns, directors, officers, employees, attorneys, insurers, agents, partners, members, stockholders, affiliates, subsidiaries, parents, trustees and/or administrators.

9.  **Section Headings.** The section and paragraph headings contained in this Settlement Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this instrument.

10. **Construction of Agreement.** This Settlement Agreement and dismissal of the Lawsuit are the products of negotiation and preparation by and among the parties and their respective attorneys. The Parties expressly acknowledge and agree that the Settlement Agreement will not be deemed prepared or drafted by one Party or its attorneys alone, and will be construed accordingly.

11. **Integration.** This Settlement Agreement and its referenced Exhibits constitute a single, integrated written contract expressing the entire agreement of the Parties hereto relative to the subject matters hereof. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as specifically set forth herein. All prior understanding, discussions and negotiations have been and are merged and integrated into, and are superseded by, the Settlement Agreement, which may not be amended, modified, waived or assigned (including any provision thereof) without a written instrument executed by the Parties.

12. **Severability.** The Parties hereto intend all provisions of this Settlement Agreement to be enforced to the fullest extent permitted by law. Accordingly, should a court of competent

4

Execution Copy

jurisdiction determine that the scope of any provision is too broad to be enforced as written, the Parties intend that the court should reform the provision to such narrower scope as it determines to be enforceable. If, however, any provision is held to be illegal, invalid, or unenforceable, such provision shall be fully severable; the Settlement Agreement shall be construed and enforced as if such illegal, invalid, or unenforceable provision were never a part thereof; and the remaining provisions shall remain in full force and effect.

13. **Non-Disparagement.**  Each Party hereto agrees that it will not make statements to third parties that disparage the other party (including its products and services) or cast that party in a negative light for any act or omission that is alleged to have occurred as of the date of execution of this Settlement Agreement.

14. **Governing Law; Consent To Jurisdiction.**  The Settlement Agreement will be deemed to have been entered into and will be construed and enforced in accordance with the laws of the Commonwealth of Massachusetts without reference to any conflict of law provision thereof. The Parties consent and agree that any suit, action or proceeding arising out of or relating to the Settlement Agreement shall only be brought in state or federal courts sitting in the Commonwealth of Massachusetts, and that each Party consents to such exclusive jurisdiction and hereby waives any and all defenses to jurisdiction, including personal jurisdiction.

15. **Costs and Attorneys' Fees.**  The Parties shall each bear their own costs, attorneys' fees, and expenses in connection with the underlying dispute and the negotiation, execution and performance of the Settlement Agreement.

16. **Execution of Counterparts.**  This Settlement Agreement may be executed and delivered in two or more counterparts, each of which, when so executed and delivered, will be an original, but such counterparts together will constitute but one and the same instrument and binding upon all Parties, notwithstanding that the signatures of all Parties' designated representatives do not appear on the same page. The Parties agree that facsimile or PDF signatures shall be binding.

17. **Brown Assignment.**  Plaintiff Eric Brown represents and warrants that, in conjunction with the settlement set forth herein, he has agreed to assign to Allan Miller all right, title and interest Brown has in the HFN, Inc. shares he was to receive as part of the settlement.  In doing so Brown understands that he will not be a shareholder in HFN, Inc. as a result of this settlement, that he has read and understands the within Settlement Agreement and its Exhibits, and agrees that any and all claims he has against Sridhar Santhanam, Alessandro Donnini and HFN, Inc., individually and collectively, are forever released and discharged.

18. **18. Santhanam Notice.**  For so long as Sridhar Santhanam is an officer or director of HFN, Inc., and has actual knowledge that HFN, Inc. has entered into a definitive agreement that will result in a change of control ("Change of Control Event"), Santhanam agrees to inform Allan Miller of the Change of Control Event so long as doing so will not (a) result in a breach of any confidentiality or non-disclosure agreement; or (b) cause Santhanam to breach his contractual, fiduciary or other legal obligations to HFN, Inc. For purposes of this Settlement Agreement a Change of Control Event shall mean (a) a sale, lease or other transfer of all or substantially all of the assets of the Company, (b) a reorganization, merger

Doc ID: 34c5dd684af094fa819f436ffd97120009d08abb

Execution Copy

or consolidation of the Company with or into any other corporation or entity, or an acquisition of the Company effected by an exchange of outstanding securities of the Company, in which transaction the Company's stockholders immediately prior to such transaction own immediately after such transaction less than fifty percent (50%) of the equity securities of the surviving entity, or (c) liquidation, dissolution, shut down, cessation of business, whether voluntary or involuntary or other winding up of the Company. Notice shall be made to: Allan Miller, 3395 Birch St., Palo Alto, CA 94306

**IN WITNESS WHEREOF**, the undersigned have executed this Settlement Agreement on the Effective Date.

ALESSANDRO DONNINI

_____

SRIDHAR SANTHANAM

_____

HFN, INC.

By: _____

Name:  Sridhar Santhanam
Title    CEO

Execution Copy

or consolidation of the Company with or into any other corporation or entity, or an acquisition of the Company effected by an exchange of outstanding securities of the Company, in which transaction the Company's stockholders immediately prior to such transaction own immediately after such transaction less than fifty percent (50%) of the equity securities of the surviving entity, or (c) liquidation, dissolution, shut down, cessation of business, whether voluntary or involuntary or other winding up of the Company. Notice shall be made to: Allan Miller, 3395 Birch St., Palo Alto, CA 94306

**IN WITNESS WHEREOF**, the undersigned have executed this Settlement Agreement on the Effective Date.

ALESSANDRO DONNINI

SRIDHAR SANTHANAM

HFN, INC.

By:

Name:  Sridhar Santhanam
Title     CEO

6

Execution Copy

or consolidation of the Company with or into any other corporation or entity, or an acquisition of the Company effected by an exchange of outstanding securities of the Company, in which transaction the Company's stockholders immediately prior to such transaction own immediately after such transaction less than fifty percent (50%) of the equity securities of the surviving entity, or (c) liquidation, dissolution, shut down, cessation of business, whether voluntary or involuntary or other winding up of the Company. Notice shall be made to: Allan Miller, 3395 Birch St., Palo Alto, CA 94306

**IN WITNESS WHEREOF**, the undersigned have executed this Settlement Agreement on the Effective Date.

ALESSANDRO DONNINI

_____

SRIDHAR SANTHANAM

_____

HFN, INC.

By: _____

Name:  Sridhar Santhanam
Title    CEO

Execution Copy

**IN WITNESS WHEREOF**, the undersigned have executed this Settlement Agreement on the Effective Date.

**ALLAN MILLER**

_____

08 / 26 / 2015

**DENNIS CALLAGY**

_____

08 / 26 / 2015

**THE CHESTER S. JAKUBOWSKI ROTH IRA**

By: _____

Name:   Wayne D. Wetzel, Jr.

Title     RIA of CS Jakubowski ROTH IRA

08 / 27 / 2015

**RICHARD GABRIEL**

_____

08 / 26 / 2015

**VICTORIA DUDIN SILIOUTINA**

_____

08 / 27 / 2015

7

Doc ID: 34c5dd684af094fa819f436ffd97120009d08abb

Execution Copy

**GEOFFRY MEEK**

_____
08 / 26 / 2015

**GENE ROBINSON**

*Gene Robinson*

_____
08 / 27 / 2015

**ERIC BROWN**

*Eric W Brown*

_____
08 / 26 / 2015

**SCOTT NOONE**

*Scott Noone*

_____
08 / 26 / 2015

**JOHN MURGO**

_____
08 / 27 / 2015

**MAX KUPCHIK**

*Max Kupchik*

_____
08 / 26 / 2015

8

Doc ID: 34c5dd684af094fa819f436ffd97120009d08abb

Execution Copy

**WILLIAM HARDING**

08 / 26 / 2015

120621005 v1

9

Doc ID: 34c5dd684af094fa819f436ffd97120009d08abb

# EXHIBIT 1
# TO SETTLEMENT
# AGREEMENT

Execution Copy

## STOCK PURCHASE AGREEMENT

This Stock Purchase Agreement (the "**Agreement**") is made as of the day of August, 2015, by and among (i) the purchasers listed on Exhibit A attached to this Agreement (each a "**Purchaser**" and together the "**Purchasers**"), (ii) the seller listed on Exhibit A attached to this Agreement (the "**Seller**") and, (iii) for purposes of Sections 1.2 only, HFN, Inc., a Delaware corporation (the "**Company**").

WHEREAS, the Seller desires to sell to the Purchasers, and the Purchasers desire to purchase from the Seller, three hundred seven thousand one hundred fifty four (307,154) shares of Common Stock of the Company, $0.0001 par value (the "**Shares**"), all in accordance with the terms and conditions hereof.

NOW THEREFORE, in exchange for the purchase price set forth below and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1. Purchase and Sale of Shares.

1.1   Purchase and Sale.   The Seller hereby sells, conveys, transfers and assigns, absolutely, to the Purchasers listed on Exhibit A the Shares at a purchase price of $14,285.71 (the "**Purchase Price**"). The Purchasers hereby purchase from the Sellers that number of Shares set forth opposite each Purchaser's name on Exhibit A under the heading "**Number of Shares to be Purchased at Closing**" at the Purchase Price. The sale and transfer of the Shares shall take place remotely via the exchange of documents and signatures on the date hereof (which time and place are designated as the "**Closing**").

1.2   Stock Certificates. At the Closing, against payment of the Purchase Price pursuant to that certain Settlement Agreement, dated as of the date hereof, by and among the Purchasers, the Seller and the other parties named therein (the "**Settlement Agreement**"), the Seller shall surrender all certificates representing the Shares being purchased at the Closing to the Company together with executed stock transfer powers, whereupon the Company will issue new certificates to each Purchaser representing the number of Shares purchased by such Purchaser at the Closing. The Seller does hereby irrevocably constitute and appoint the Secretary of the Company as attorney-in-fact to transfer the Shares on the books of the Company to each Purchaser in accordance with this Agreement.

1.3   Ancillary Agreements. The parties acknowledge and agree that the Shares shall be subject to the provisions of the Voting Agreement, dated as of February 29, 2012 by and among the Company and the stockholders named

Doc ID: f9fdf9aaa71211661913b214aa727f5b3e0f8720

therein (the "**Voting Agreement**") as if the Purchasers were Founders (as defined therein), the Right of First Refusal and Co-Sale Agreement, dated as of February 29, 2012 by and among the Company and the stockholders named therein (the "**ROFR Agreement**") as if the Purchasers were Founders (as defined therein), and the Investors' Rights Agreement, dated as of February 29, 2012 by and between the Company and the Investor (the "**IRA**") as if the Purchasers were Founders (as the term is used therein) and Purchasers and the Company shall execute a Joinder Agreement in substantially the form attached hereto as Exhibit B (the "**Joinder**") pursuant to which the Purchasers shall become parties to the Voting Agreement and the ROFR Agreement and shall acknowledge their obligations pursuant to the IRA.

2.      Representations and Warranties of the Seller.   Seller hereby represents and warrants to each Purchaser that:

2.1      Authorization.  The Seller has full power and authority to enter into, and perform his obligations under, this Agreement, including his obligation to sell, assign, transfer and deliver the Shares set forth opposite the Seller's name on Exhibit A, and has taken all action necessary to authorize the transactions effected hereby.  This Agreement, when executed and delivered by the Seller, will constitute a valid and legally binding obligation of the Seller, enforceable in accordance with its terms, except as limited by applicable bankruptcy, insolvency, reorganization, moratorium, fraudulent conveyance, and any other laws of general application affecting enforcement of creditors' rights generally, and as limited by laws relating to the availability of a specific performance, injunctive relief, or other equitable remedies.  The execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby (i) will not contravene, conflict or violate any rule, regulation, judgment, decree or order by which Seller may be bound, and (ii) will not require on the part of the Seller any filing with, or any permit, authorization, consent or approval of, any court, arbitrational tribunal, administrative agency or commission or other governmental or regulatory authority or agency, except for the filing of such notices as may be required under the Exchange Act (as defined below), and such filings as may be required under applicable state securities laws.

2.2      Title.   Except for the restrictions set forth in the IRA, the ROFR Agreement and the Voting Agreement, the Seller has good and marketable title to and unrestricted power to vote and sell the Shares set forth opposite the Seller's name on Exhibit A free and clear of any mortgages, pledges, liens, encumbrances or other restrictions, and (b) upon purchase and payment therefor and delivery to the Purchasers in accordance with the terms of this Agreement, the Purchasers will obtain good and marketable title to such Shares free and clear of any mortgages, pledges, liens, encumbrances or other restrictions or security

Doc ID: f9fdf9aaa71211661913b214aa727f5b3e0f8720

Execution Copy

interest pertaining to the Seller's property, claim or equitable interest, including any liability for estate or inheritance taxes, or any liability to or claims of any creditor, devisee, legatee or beneficiary of the Seller. All such Shares have been duly authorized and validly issued and are fully paid and non-assessable. All such Shares are registered in the name of the Seller.

2.3    Actions or Proceedings. There is no action, suit, proceeding or investigation pending or, to the Seller's knowledge, currently threatened against the Seller that questions the validity of this Agreement, or the right of the Seller to enter into this Agreement, or to consummate the transactions contemplated hereby.

2.4    No Conflicts. The performance of this Agreement and the consummation of the transactions contemplated hereby will not result in a breach or violation by the Seller of any of the terms or provisions of, or constitute a default by the Seller under, any indenture, mortgage, deed of trust, trust (constructive or other), loan agreement, lease, franchise, permit, authorization, license or other agreement or instrument to which the Seller is a party or by which Seller or any of its properties may be bound, or any judgment, decree, order, rule or regulation of any court of governmental agency or body applicable to the Seller or any of his properties.

2.5    Voluntary Sale. The Seller is entering into this Agreement voluntarily and is not under any form of duress or coercion and has such knowledge and experience in financial and business matters that Seller is capable of evaluating the merits and risks of selling the Shares set forth opposite the Seller's name on Exhibit A to the Purchasers.

2.6    No Legal, Tax, or Investment Advice. The Seller has had an opportunity to review the federal, state, local, and foreign tax consequences of its sale of the Shares set forth opposite the Seller's name on Exhibit A to the Purchasers. The Seller understands that nothing in this Agreement or any other materials presented to the Seller in connection with the sale and purchase of such Shares constitutes legal, tax, or investment advice. The Seller has consulted such legal, tax, and investment advisors as the Seller, in its sole discretion, has deemed necessary or appropriate in connection with the sale of such Shares hereunder. The Seller acknowledges that it shall be responsible for its own tax liability that may arise as a result of its sale of such Shares to the Purchasers or the transactions contemplated by this Agreement.

2.7    No General Solicitation. The Seller has not, either directly or indirectly, including through a broker or finder, engaged in any general solicitation, or published any advertisement in connection with the offer and sale of the Shares set forth opposite the Seller's name on Exhibit A.

Doc ID: f9fdf9aaa71211661913b214aa727f5b3e0f8720

Execution Copy

3.    Representations and Warranties of the Purchasers. Each Purchaser hereby represents and warrants to the Sellers, severally and not jointly, that:

3.1    Authorization.  The Purchaser has full power and authority to enter into this Agreement and the Joinder, and this Agreement and the Joinder will constitute the valid and legally binding obligation of the Purchaser, enforceable in accordance with their respective terms, except as limited by applicable bankruptcy, insolvency, reorganization, moratorium, fraudulent conveyance, and any other laws of general application affecting enforcement of creditors' rights generally, and as limited by laws relating to the availability of a specific performance, injunctive relief, or other equitable remedies.

3.2    Purchase Entirely for Own Account.  The Purchaser hereby confirms, that the Shares to be acquired by the Purchaser will be acquired for investment for the Purchaser's own account, not as a nominee or agent, and not with a view to the resale or distribution of any part thereof, and that the Purchaser has no present intention of selling, granting any participation in, or otherwise distributing the same.  By executing this Agreement, the Purchaser further represents that the Purchaser does not presently have any contract, undertaking, agreement or arrangement with any person to sell, transfer or grant participations to such person or to any third person, with respect to any of the Shares. The Purchaser has not been formed for the specific purpose of acquiring the Shares.

3.3    Restricted Securities.  The Purchaser understands that the Shares have not been, and will not be, registered under the Securities Act of 1933, as amended (the "Securities Act"), by reason of a specific exemption from the registration provisions of the Securities Act. The Purchaser understands that the Shares are "restricted securities" under applicable U.S. federal and state securities laws and that, pursuant to these laws, the Purchaser must hold the Shares indefinitely unless they are registered with the Securities and Exchange Commission and qualified by state authorities, or an exemption from such registration and qualification requirements is available.

3.4    No Public Market.  The Purchaser understands that no public market now exists for the Shares, and that the Company has made no assurances that a public market will ever exist for the Shares.

3.5    No General Solicitation.  Neither the Purchaser, nor any of its officers, directors, employees, agents, stockholders or partners has either directly or indirectly, including through a broker or finder engaged in any general solicitation, or published any advertisement in connection with the offer and sale of the Shares.

-4-

Execution Copy

3.6    Sale Decision and Information. Such Purchaser has independently and without reliance upon the Seller or the Company, and based on such information and the advice of such advisors as such Purchaser has deemed appropriate, made its own independent analysis and decision to enter into this Agreement and to purchase the Shares it is purchasing hereunder. Such Purchaser acknowledges that the Seller may now possess or may hereafter possess nonpublic information concerning the Company not known to such Purchaser (the "**Seller Excluded Information**") including, without limitation, information that the Seller or its affiliates may have received from the Company on a confidential basis (including information received by any affiliate of the Seller who serves on, or is an observer of, the Board of Directors of the Company) or information received from other sources. The Seller Excluded Information may or may not be material, may or may not have been disclosed by or on behalf of the Company, and may or may not be available to such Purchaser from sources other than the Company or the Seller. Such Purchaser, on behalf of itself and its managers, directors, officers, shareholders, members, employees, attorneys, agents, representatives, partners, limited partners, investors, affiliates, successors and assigns, hereby: (a) agrees that none of the Seller Released Parties (as defined below) or Company Released Parties shall have any liability to such Purchaser or its current or former directors, managers, officers, shareholders, members, employees, attorneys, agents, representatives, partners, limited partners, investors, shareholders, affiliates, successors or assigns with respect to, based upon, arising from, resulting from, or relating to directly or indirectly the existence, substance, possession, disclosure, or nondisclosure of any Seller Excluded Information whatsoever, whether arising directly or indirectly, primarily or secondarily, by contract or operation of law or otherwise, including, without limitation, as a matter of contribution, indemnification, set-off, rescission, or reimbursement; (b) waives any right, claim or cause of action at law or in equity with respect to, arising from, based upon, resulting from or relating to directly or indirectly the existence, substance, possession, disclosure or nondisclosure of any Seller Excluded Information, including, without limitation, pursuant to Sections 10(b) and 20A of the Exchange Act, or the rules and regulations promulgated by the Securities and Exchange Commission under the Exchange Act, or of any state statute or regulation, and relinquishes all rights and remedies accorded by applicable law to a purchaser of securities to the maximum extent permitted by law, as well as all rights to participate in any claim, action or remedy others may now or hereafter have with respect to the foregoing; and (c) hereby and forever fully releases and discharges the Seller and its directors, officers, shareholders, employees, attorneys, agents, representatives, investors, affiliates, successors and assigns (collectively, the "**Seller Released Parties**") and Company Released Parties of and from any and all suits, demands, obligations, liabilities, claims and causes of action, contingent or otherwise, of every kind and nature, at law and in equity, whether asserted, unasserted,

Doc ID: f9fdf9aaa71211661913b214aa727f5b3e0f8720

Execution Copy

absolute, contingent, known or unknown, which such Purchaser or its directors, managers, officers, shareholders, employees, attorneys, agents, representatives, partners, limited partners, investors, affiliates, successors and/or assigns may have against any of the Seller Released Parties or Company Released Parties, to the extent arising from the transactions contemplated by this Agreement, except for claims arising under, and subject to the limitations contained in, the express terms of this Agreement.

4.    Miscellaneous.

4.1    Transfer; Successors and Assigns.  The terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective successors and assigns of the parties.  Nothing in this Agreement, express or implied, is intended to confer upon any party other than the parties hereto or their respective successors and assigns any rights, remedies, obligations, or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement.

4.2    Governing Law.    This Agreement and any controversy arising out of or relating to this Agreement shall be governed by and construed in accordance with the General Corporation Law of the State of Delaware as to matters within the scope thereof, and as to all other matters shall be governed by and construed in accordance with the internal laws of the Commonwealth of Massachusetts, without regard to conflict of law principles that would result in the application of any law other than the law of the Commonwealth of Massachusetts.

4.3    Counterparts.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  This Agreement may also be executed and delivered by facsimile signature and in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

4.4    Titles and Subtitles.  The titles and subtitles used in this Agreement are used for convenience only and are not to be considered in construing or interpreting this Agreement.

4.5    Amendments and Waivers.  Any term of this Agreement may be amended, terminated or waived only with the written consent of the Seller, the Purchasers and the Company. Any amendment or waiver effected in accordance with this Section 4.5 shall be binding upon all parties to this Agreement.

Doc ID: f9fdf9aaa71211661913b214aa727f5b3e0f8720

    **4.6**   Notices.  All notices and other communications given or made pursuant to this Agreement shall be in writing and shall be deemed effectively given: (a) upon personal delivery to the party to be notified, (b) when sent by confirmed electronic mail or facsimile if sent during normal business hours of the recipient, and if not so confirmed, then on the next business day, (c) five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one (1) day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt. All communications shall be sent to the respective parties at their address as set forth on Exhibit A, or to such e-mail address, facsimile number or address as subsequently modified by written notice given in accordance with this Section 4.6.

    **4.7**   Severability.  The invalidity of unenforceability of any provision hereof shall in no way affect the validity or enforceability of any other provision.

    **4.8**   Survival of Warranties.  Unless otherwise set forth in this Agreement, the representations and warrants of the Seller and the Purchasers contained in or made pursuant to this Agreement shall survive the execution and delivery of this Agreement and the Closing and shall in no way be affected by any investigation of the subject matter thereof made by or on behalf of the Purchasers, the Seller or the Company.

    **4.9**   Entire Agreement.  This Agreement (including the Exhibits hereto, if any) and the Settlement Agreement constitutes the full and entire understanding and agreement between the parties with respect to the subject matter hereof, and any other written or oral agreement relating to the subject matter hereof existing between the parties are expressly canceled. The representations and warranties made by the Seller and the Purchasers in Sections 2 and 3 hereof are in lieu of and are exclusive of all other representations and warranties, including any implied warranties, made by the parties with respect to subject matter of this Agreement and the transactions contemplated hereby. Each party hereby disclaims any such other or implied representations or warranties, and acknowledges and agrees that it has not relied on any such other or implied representations or warranties of the Seller, the Purchasers, the Company or any of their respective officers, directors, managers, employees, partners or other agents in connection with entering into this Agreement and the transactions contemplated hereby.

[Remainder of Page Intentionally Left Blank]

Execution Copy

The parties have executed this Stock Purchase Agreement as of the date first written above.

**COMPANY:**

HFN, INC.

By:

Name:  Sridhar Santhanam
Title:    CEO

**SELLER:**

**Sridhar Santhanam**

-8-

Execution Copy

The parties have executed this Stock Purchase Agreement as of the date first written above.

**PURCHASERS:**

_____

Allan Miller    08 / 26 / 2015

_____

Dennis Callagy 08 / 26 / 2015

_____

Richard Gabriel    08 / 26 / 2015

_____

Victoria Dudin Silioutina    08 / 27 / 2015

_____

Geoffry Meek    08 / 26 / 2015

_____

Gene Robinson

_____

Scott Noone    08 / 26 / 2015

-9-

Doc ID: f9fdf9aaa71211661913b214aa727f5b3e0f8720

Execution Copy

The parties have executed this Stock Purchase Agreement as of the date first written above.

**PURCHASERS:**

_____
Allan Miller

_____
Dennis Callagy

_____
Richard Gabriel

_____
Victoria Dudin Silioutina

_____
Geoffry Meek

_____
Gene Robinson

_____
Scott Noone

Execution Copy

The parties have executed this Stock Purchase Agreement as of the date first written above.

John Murgo   08 / 27 / 2015

Max Kupchik   08 / 26 / 2015

William Harding   08 / 26 / 2015

The Chester S. Jakubowski Roth IRA

By: _____

Name: Wayne D. Wetzel,Jr.
Title: RIA of CS Jakubowski ROTH IRA

08 / 27 / 2015

-10-

Execution Copy

## Exhibit A

### Sellers

| Name of Seller | Number of Shares to be Sold at Closing |
|---|---|
| Sridhar Santhanam | 307,154 |
| | |

### Purchasers

| Name of Purchaser | Number of Shares to be Purchased at Closing |
|---|---|
| Allan Miller | 230,247 |
| Dennis Callagy | 9,602 |
| Richard Gabriel | 6,842 |
| Victoria Dudin Silioutina | 2,463 |
| Geoffry Meek | 365 |
| Gene Robinson | 4,105 |
| Eric Brown | Assigned to Allan Miller |
| Scott Noone | 5,748 |
| John Murgo | 4,105 |
| Max Kupchik | 17,425 |
| William Harding | 16,901 |
| The Chester S. Jakubowski Roth IRA | 9,351 |