Anthony C. Kaye (Utah SBN 8611)
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
875 Third Avenue
New York, NY 10022
Telephone: (212) 704-6128
Email: Tony.Kaye@troutman.com

Nathan R. Marigoni (Utah SBN 14885)
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308
Telephone: (470) 832-5575
Email: Nathan.Marigoni@troutman.com

Matthew H. Ladner (*pro hac vice*)
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
350 S. Grand Ave., Suite 3400
Los Angeles, CA 90071
Telephone: (213) 928-9816
E-mail: Matthew.Ladner@troutman.com

William M. Taylor (*pro hac vice*)
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
125 High St., 19th Floor
Boston, MA 02110
Telephone: (617) 204-5186
Email: William.Taylor@troutman.com

*Attorneys for Defendant*
HFN, INC.

# UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ALLAN MILLER,<br><br>                                 Plaintiff,<br>          vs.<br><br>HFN, INC., a Delaware Corporation, d/b/a as NANOHEAL BY HFN INC.; KALAARI CAPITAL ADVISORS PRIVATE LIMITED, an Indian Company; SRIDHAR SANTHANAM; KUMAR SHIRALAGI; PAVAN VAISH; and VANI KOLA,<br><br>                                 Defendants. | **DEFENDANT HFN, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Case No. 2:23-cv-00733-CMR<br><br>Magistrate Judge Cecilia M. Romero |

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION ................................................................................................................1 | |
| II. | PLAINTIFF HAS NOT STATED A FIDUCIARY DUTY CLAIM AGAINST HFN..................................................................................................................................1 | |
| III. | PLAINTIFF HAS NOT STATED A CONVERSION CLAIM .........................................4 | |
| IV. | PLAINTIFF'S FIDUCIARY DUTY AND CONVERSION CLAIMS ARE SUBSTANTIVELY DERIVATIVE – THUS, HE CAN'T MAINTAIN THEM ...............5 | |
| V. | PLAINTIFF'S FRAUD CLAIM ALSO FAILS FOR MULTIPLE REASONS .................6 | |
| | A. Res judicata Requires Dismissal.................................................................................6 | |
| | B. The Settlement and SPA Also Bar This Claim............................................................8 | |
| | C. Plaintiff Has Not Pleaded Sufficient Facts to Show Fraud.......................................9 | |
| | D. Plaintiff's Fraud Claim is Untimely............................................................................9 | |

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Hartsel v. Vanguard Grp., Inc.*,
   2011 Del. Ch. LEXIS 89 (June 15, 2011).................................................................................5

*Bateman v. JAB Wireless*,
   No. 2:14-cv-147-RJS, 2015 U.S. Dist. LEXIS 88094 (D. Utah July 6, 2015) ..........................2

*Buttonwood Tree Value Partners, L.P. v. R.l Polk & Co.*,
   Civil Action No. 9250-VCG, 2014 Del. Ch. LEXIS 141 (Aug. 7, 2014)..................................2

*Colosimo v. Roman Catholic Bishop*,
   156 P.3d 806 (Utah 2007)........................................................................................................10

*Dole Food Co. v. Patrickson*,
   538 U.S. 468 (2003)...................................................................................................................4

*duPont v. duPont*,
   42 Del. Ch. 246 (1965) ..............................................................................................................4

*Gabriel v. Preble*,
   396 F.3d 10 (1st Cir. 2005).......................................................................................................5

*In re Genworth Fin. Consol. Deriv. Litig.*,
   2021 Del. Ch. LEXIS 223 (Sept. 29, 2021) ..............................................................................3

*Int'l Union of Operating Eng'rs-Employers Constr. Indus. Pension, etc. v. Karr*,
   994 F.2d 1426 (9th Cir. 1993) ..................................................................................................7

*In re J.P. Morgan Chase & Co. S'holder Litig.*,
   906 A.2d 808 (Del. Ch. 2005)...................................................................................................5

*Kagan v. Edison Bros. Stores, Inc.*,
   907 F.2d 690 (7th Cir. 1990) ....................................................................................................3

*N.M. ex rel. King v. Capital One Bank United States N.A.*,
   980 F. Supp. 2d 1346 (D.N.M. 2013) .......................................................................................6

*Liberty Prop. Trust v. Republic Props. Corp.*,
   577 F.3d 335 (D.C. Cir. 2009)..................................................................................................3

*Matosantos Commer. Corp. v. Applebee's Int'l, Inc.*,
   245 F.3d 1203 (10th Cir. 2001) ...................................................................................6

*N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*,
   2006 Del. Ch. LEXIS 164 (Sep. 1, 2006) ...................................................................3

*re Orchard Enters., Inc.*,
   88 A.3d 1 (Del. Ch. 2014)............................................................................................2

*Plotner v. AT&T Corp.*,
   224 F.3d 1161 (10th Cir. 2000) ...................................................................................6

*Saylor v. United States*,
   315 F.3d 664 (6th Cir. 2003) .......................................................................................7

*Slocum v. Corporate Express US Inc.*,
   446 Fed. App'x 957 (10th Cir. 2011) ..........................................................................7

*In re Solera Ins. Coverage Appeals*,
   240 A.3d 1121 (Del. 2020) ..........................................................................................2

*Southam v. S. Despain Ditch Co.*,
   337 P.3d 236 (Utah 2014) ............................................................................................4

*Stan Lee Media, Inc. v. Walt Disney Co.*,
   774 F.3d 1292 (10th Cir. 2014) ...................................................................................7

*State v. Sommerville*,
   297 P.3d 665 (Utah Ct. App. 2013) .............................................................................7

*Torres v. Shalala*,
   48 F.3d 887 (5th Cir. 1995) .........................................................................................7

**STATUTES**

8 Del. C. § 220 ....................................................................................................................9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6).................................................................................................1, 7

I. **INTRODUCTION**

After multiple pleading attempts in the N.D. Cal. and now this Court, Plaintiff's Opposition confirms that he has no legitimate basis for pursuing his claims against HFN. Plaintiff does not engage with, much less refute, HFN's points and dispositive legal authorities. Instead, Plaintiff principally relies on unpled and irrelevant "alter ego" allegations, as well as various extrinsic documents which, even if they could be considered by the Court, do nothing to move the needle in Plaintiff's favor. For the reasons set forth in the Motion, and again in this Reply, the Court should dismiss the FAC without leave to amend, and dismiss this action with prejudice as to HFN.

II. **PLAINTIFF HAS NOT STATED A FIDUCIARY DUTY CLAIM AGAINST HFN**

Plaintiff cannot state a valid claim for breach of fiduciary duty against HFN because, under governing Delaware law, a corporation does not owe any fiduciary duties to its stockholders – rather, fiduciary duties are owed by the corporation's officers and directors only. (Mot. at 7-9). Unable to dispute this bedrock legal principle, Plaintiff tries to avoid it through red-herring arguments which do not withstand scrutiny.

**First**, Plaintiff contends that Utah rather than Delaware law governs his claims because "the status of HFN as a Delaware corporation" is supposedly "in question" and "may be voidable" due to purported irregularities at the company. (Opp. at 9-11). In this vein, Plaintiff points to an unauthenticated "Notice of Ratification of Defective Corporate Acts" which reflects actions HFN took in October 2023 under Delaware law to ratify certain prior acts of the company. (Opp., Ex. 2). Leaving aside the fact that the Court should not consider this extrinsic document in ruling on a Rule 12(b)(6) motion, Plaintiff's assertion is unavailing. Plaintiff judicially admits in the FAC that HFN "**is a Delaware corporation**," and he further concedes that HFN's corporate obligations are prescribed by Delaware law. (FAC ¶¶ 7  17, 41 (emphasis added)). Plaintiff cannot reverse course now that he believes it is convenient, nor is there any basis for Plaintiff to do so. The documents attached to the Opposition show that HFN acted in accordance with, and pursuant to,

Delaware corporate law, and HFN remains a Delaware corporation in good standing. (Supplemental Request for Judicial Notice ("**Supp. RJN**"), Ex. 12). And, in any event, Delaware and Utah courts agree that a claim for breach of fiduciary duty does not lie against a corporation itself. This now-unrefuted rule mandates the dismissal of Plaintiff's fiduciary duty counts.[1]

**Second**, Plaintiff argues that HFN is "acting as an alter ego" of its CEO Sridhar Santhanam and the other Defendants, and "[a]s an alter ego" of these individuals, "HFN has a fiduciary duty to the Plaintiff through Santhanam and the other Defendants." (Opp. at 3, 11). This professed theory does not add up. The alter ego doctrine is typically used to shift liability **from** a corporation **to** its controlling shareholder. In marked contrast, Plaintiff is inviting the Court to hold HFN responsible for the alleged fiduciary obligations of its owners and managers. Plaintiff has not cited, nor have Defendants located, **any** case allowing a shareholder to use the alter ego doctrine to pursue a corporation and hold it directly liable for the alleged mismanagement, self-dealing, or waste of its officers, directors, or other shareholders. Nor is there any legal or logical legitimacy to any such rule.

To begin, this approach would operate as an impermissible end-run around the fundamental principle that a corporation does not directly owe, and therefore cannot breach, any fiduciary duties to its shareholders. The Court should not invent a gaping exception that would swallow this well-

---

[1] *See Buttonwood Tree Value Partners, L.P. v. R.l Polk & Co.,* Civil Action No. 9250-VCG, 2014 Del. Ch. LEXIS 141, at *11-12 (Aug. 7, 2014); *n re Orchard Enters., Inc.,* 88 A.3d 1, 54 (Del. Ch. 2014); *Bateman v. JAB Wireless,* No. 2:14-cv-147-RJS, 2015 U.S. Dist. LEXIS 88094, at *13 (D. Utah July 6, 2015). Plaintiff suggests the Court should disregard the Delaware Chancery Court's decision in *Buttonwood* because the notes for that decision indicate it was subject to revision or withdrawal. However, it does not appear that case has been revised or withdrawn in the decade since it was entered. Furthermore, *Buttonwood* is not an outlier – rather, it is the undeniable rule in Delaware that "the corporation itself does not owe fiduciary duties" to shareholders. *In re Solera Ins. Coverage Appeals*, 240 A.3d 1121, 1135 and n. 93 (Del. 2020) (collecting cases). Separately, Plaintiff also contends, without citation, that his fiduciary duty claims should be governed by "Federal patent law, not Delaware law," because the FAC asserts that Defendants have mismanaged HFN intellectual property, including its patent portfolio. (Opp. at 11). This is a non-sequitur that appears to erroneously conflate patent jurisdiction under 28 U.SC. § 1338 (which is not present here), with the substantive law governing the FAC's alleged fiduciary duty claims.

established rule of law.

In addition, Plaintiff's position ignores and violates the principle that, when a shareholder alleges breach of fiduciary duty based on corporate mismanagement, self-dealing, or waste, the victim of this purported misconduct is **the corporation itself**, and any recovery must flow **to the corporation**. (Mot. at 10-11). *See also In re Genworth Fin. Consol. Deriv. Litig.*, 2021 Del. Ch. LEXIS 223, at *27 (Sept. 29, 2021) ("Plaintiffs' claim against all Defendants for breach of fiduciary duty alleges harm suffered by Genworth [the corporation] itself, and any recovery for that harm would flow to Genworth."); *N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 2006 Del. Ch. LEXIS 164, at *67 n.127 (Sep. 1, 2006) (same). Plaintiff does not explain how he can recover personally from HFN for alleged harm done to HFN itself.

Finally, Plaintiff's alter ego gambit also ignores the fact that his fiduciary duty claims are predicated upon and presume the separate corporate existence of HFN. Plaintiff should not be permitted to simultaneously invoke and seek to benefit from the corporate form, while at the same time disavowing its separate existence. *See Liberty Prop. Trust v. Republic Props. Corp.*, 577 F.3d 335, 340 (D.C. Cir. 2009) (a party should not be allowed to "take[] advantage of the corporate form" and then "disregard the form" when convenient); *Kagan v. Edison Bros. Stores, Inc.*, 907 F.2d 690, 693 (7th Cir. 1990) (shareholders are not entitled to "the best of both words: limited liability for debts incurred in the corporate name, and direct compensation for its losses" – this "cushy position is not one the law affords[,]" and "[i]nvestors who created the corporate form cannot rend the veil they wove").

In sum, Plaintiff asks the Court to turn the law on its head by allowing him to pursue HFN directly for breach of fiduciary duty even though: (a) HFN does not owe him any such duty; and (b) any alleged breach by the other Defendants would have, in the main, injured HFN itself. There

is no reason for the Court to create and adopt such a counterintuitive and unprecedented rule.[2]

## III. PLAINTIFF HAS NOT STATED A CONVERSION CLAIM

Plaintiff has asserted claims for conversion of corporate assets belonging to HFN, such as payments to a third-party vendor, company cash, and employee travel budgets. In addition, Plaintiff now contends he is seeking recovery of certain HFN employee stock options under a conversion theory, despite the absence of any such cause of action in the FAC. (Opp. at 10). Because Plaintiff does not have an immediate or personal possessory or ownership interest in any of the above-listed company assets – and because such an interest is a necessary prerequisite to a cognizable conversion claim – Plaintiff's claims must fail. (Mot. at 9-10).

Plaintiff does not dispute these controlling legal principles. Rather, he once again tries to circumvent them by arguing, without citation, that "HFN is not acting as a corporation, but is instead acting as an alter ego for the Defendants . . . ." (Opp. at 10). Yet, no law supports the notion that a shareholder can maintain a conversion claim for corporate assets by: (i) piercing the veil of his own corporation for his own benefit; and then (ii) deeming all corporate assets his own personal property. In essence, Plaintiff asks the Court to treat HFN – an existing corporation in good standing under Delaware law (Supp. RJN, Ex. 12) – as though it were a dissolved entity whose assets have been liquidated and distributed to all shareholders. This proposed approach is contrary to well-established precedent, and it should not be condoned here. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 474-475 (2003) ("An individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets"); *Southam v. S. Despain Ditch Co.*, 337 P.3d 236, 241 n. 7 (Utah 2014) (same); *duPont v. duPont*, 42 Del. Ch. 246, 251 (1965) (same).[3]

---

[2] Plaintiff's Opposition clarifies that the FAC's counts for aiding and abetting breach of fiduciary duty are **not** directed to HFN. (Opp. at 11).

[3] Even if HFN were deemed an alter ego of the other Defendants – which it is not – it would not save Plaintiff's conversion claims. A hypothetical unity of interest between HFN and, for example, Mr. Santhanam, would not change the fact that **Plaintiff himself** does not personally own, or have

## IV. PLAINTIFF'S FIDUCIARY DUTY AND CONVERSION CLAIMS ARE SUBSTANTIVELY DERIVATIVE – THUS, HE CAN'T MAINTAIN THEM

Plaintiff's allegations and claims for breach of fiduciary duty and conversion are classically derivative because they seek redress for alleged corporate mismanagement, self-dealing, waste, and misuse of corporate assets . (Mot. at 10-11). Plaintiff makes no real effort to dispute this fact, nor the law holding that he cannot maintain derivative claims as a *pro se* litigant. Instead, Plaintiff argues in conclusory fashion that his claims are not derivative because he says they're not. (Opp. at 14). But, "**[t]he manner in which a plaintiff labels its claims and the form of words used in the complaint are not dispositive; rather, the court must look to the nature of the wrong alleged, taking into account all of the facts alleged in the complaint, and determine for itself whether a direct claim exists**." *Hartsel v. Vanguard Grp., Inc.*, 2011 Del. Ch. LEXIS 89, at *65 (June 15, 2011) (emphasis added); *see also In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 817 (Del. Ch. 2005) (same). Here, it is readily apparent that Plaintiff is, in substance, seeking recovery for purported misconduct by HFN's officers and directors that supposedly harmed the corporation and, in turn, reduced the value of Plaintiff's pro rata stake in HFN. (FAC ¶¶ 2, 20, 33, 36-37, 49, 56, 59, 65-67, 78-80, 86, 91, 84, 98). Thus, self-serving labels aside, Plaintiff's fiduciary duty and conversion counts are derivative in nature, and they must be dismissed.[4]

---

any immediate possessory interest in, the assets of HFN, such as company cash, travel budgets, and employee stock options. In other words, an alter ego finding between HFN and the other Defendants would not transmute corporate assets into the assets of **Plaintiff**.

[4] Plaintiff further contends that his claims "cannot be a derivative suit" because "[t]here cannot be a derivative suit against individuals." (Opp. at 14). This is incorrect. *See Gabriel v. Preble*, 396 F.3d 10, 15 (1st Cir. 2005) (recognizing that "the directors and ranking officers" of a corporation are generally the "real defendants in a derivative suit").

## V.     PLAINTIFF'S FRAUD CLAIM ALSO FAILS FOR MULTIPLE REASONS

### A.     <u>Res judicata Requires Dismissal</u>

As established in the Motion, both claim and issue preclusion prohibit Plaintiff from maintaining a fraudulent misrepresentation claim related to (i) his acquisition of additional HFN shares pursuant to a 2015 Settlement and SPA with the company, and (ii) the company's subsequent use of the ESOP to grant certain officers and directors stock options.  That is because Plaintiff brought a substantively identical securities fraud claim in the California Action which the N.D. Cal. dismissed "**with prejudice**" after Plaintiff repeatedly failed to plead facts showing any hint of fraud.  (Mot. at 12-16; RJN, Ex. 7 (emphasis added)).  Plaintiff makes several arguments against res judicata, but none pass muster.

<u>First</u>, Plaintiff contends that the N.D. Cal.'s ruling was based only on the absence of "scienter" and the "technicalities of . . . pleading [] a securities tort[,]" whereas his allegation of "ESOP abuse in front of this Court is one of conversion, not securities fraud."  (Opp. at 11-12).  As an initial matter, the FAC does not include a "conversion" cause of action involving the ESOP; rather, it asserts a claim for "negligent misrepresentation" based on the same nucleus of facts at the heart of Plaintiff's securities fraud count in the California Action.  (FAC at p. 71 and ¶¶ 392-483).  Furthermore, the law is clear that Plaintiff cannot side-step res judicata by recasting his claim under a different legal theory, regardless of whether that theory is common law fraud, conversion, or something else.  *Plotner v. AT&T Corp.*, 224 F.3d 1161, 1170 (10th Cir. 2000); *see also Matosantos Commer. Corp. v. Applebee's Int'l, Inc.*, 245 F.3d 1203, 1209 (10th Cir. 2001) (a party cannot "relitigate the same issue previously decided in [a prior case] under the guise of new claims for relief"); *N.M. ex rel. King v. Capital One Bank United States N.A.*, 980 F. Supp. 2d 1346, 1354 (D.N.M. 2013) ("It is well settled that parties cannot avoid the preclusive effects of res judicata by dressing up claims already litigated in new legal theories.").  This rule is dispositive here, especially because courts have repeatedly held that: (a) securities fraud and common law

fraud embody effectively identical elements, including scienter/intent; and thus (b) the dismissal of one type of fraud claim will preclude a plaintiff from reasserting a differently labeled fraud claim in a second lawsuit that arises from the same facts. (Mot. at 15-16 and n. 8 (collecting cases)).

**Second**, Plaintiff argues that the prior dismissal of his securities fraud cause of action was "not based on the merits" but rather "based on the details of pleading" the claim. (Opp. at 15). The distinction Plaintiff attempts to draw is a false one. The law is clear that a Rule 12(b)(6) dismissal with prejudice is "on the merits" for the purpose of res judicata. *Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1298 (10th Cir. 2014); *Slocum v. Corporate Express US Inc.*, 446 Fed. App'x 957, 960 (10th Cir. 2011); *State v. Sommerville*, 297 P.3d 665, 675 (Utah Ct. App. 2013).

**Third**, Plaintiff contends that res judicata is inapplicable because of HFN corporate ratification documents attached to his Opposition. (Opp. at 12, citing Ex. 2). Even if the Court could properly consider this new "evidence" at the pleading stage, it is unavailing. The documents cited by Plaintiff refer to the issuance of certain shares of common stock to Defendant Pavan Vaish in July 2022 and October 2023, which is temporally and logically irrelevant to Plaintiff's accusation that Defendants fraudulently misrepresented the purpose of HFN's ESOP during Settlement talks many years earlier in 2015. Furthermore, even if "new evidence might change the outcome of [a] case" – **which is clearly not the situation here** – this "does not affect the application of" res judicata. *Saylor v. United States*, 315 F.3d 664, 668 (6th Cir. 2003); *see also Torres v. Shalala*, 48 F.3d 887, 894 (5th Cir. 1995) ("If simply submitting new evidence rendered a prior decision factually distinct, res judicata would cease to exist"); *Int'l Union of Operating Eng'rs-Employers Constr. Indus. Pension, etc. v. Karr*, 994 F.2d 1426, 1430 (9th Cir. 1993) ("The fact that some different evidence may be presented in this action . . . does not defeat the bar of res judicata.").

**Fourth**, Plaintiff badly asserts that the N.D. Cal.'s ruling was "irregular and prejudicial," thereby implying that this Court should not give it any credence. (Opp. at 5). However, if the Plaintiff had an issue with the N.D. Cal.'s decision, his avenue for challenging that ruling was an appeal before the Ninth Circuit, not a collateral attack in this Court. By his own admission, Plaintiff "voluntarily and explicitly dismissed" his appeal before the Ninth Circuit, and he cannot use the current action as a substitute for a proper appeal. (*Id.*)

### B. The Settlement and SPA Also Bar This Claim

Plaintiff argues his fraud claim is not covered by the Settlement and SPA because HFN did not begin to use its ESOP improperly until several years after those documents were executed in 2015. (Opp. at 12). Plaintiff neglects to acknowledge that he has pled a **misrepresentation** claim, and the **only** alleged misrepresentation occurred **in 2015** during Settlement talks with HFN. (FAC ¶¶ 39-50, 392-446). Indeed, the FAC expressly alleges that: (1) the ESOP "was a significant component of the 2015 settlement negotiations"; (2) Plaintiff was "very concerned" during negotiations about the ESOP being used in the future "as a mechanism for self-dealing" rather than "to attract talent" to HFN; (3) a "compromise was reached" regarding the treatment of the ESOP for the purpose of the Settlement; and (4) all Defendants "made a false statement" during Settlement talks "by falsely representing that the pool of 2,616,500 shares allocated but not issued in 2015 was an ESOP that would be used to attract talent to HFN . . . ." (*Id.* ¶¶ 39-40, 393, 402, 411, 420, 429, 438).

The plain language of the releases in the Settlement and SPA clearly encompass, resolve, and bar any claim that HFN fraudulently misrepresented the purpose of the ESOP before the settlement documents were executed, particularly where: (i) the Settlement and SPA were the product of adversarial negotiations in the context of pending litigation in which Plaintiff was represented by counsel; (ii) those documents omit any reference to, much less limitations on, the use of the ESOP; (iii) the Settlement and SPA also contain broad no-other-representation, no-

reliance, and integration-clause provisions; and (iv) federal courts have repeatedly found that comparable releases bar claims arising from the settlement negotiation process. (Mot. at 17-19). The result should be the same here.

### C. Plaintiff Has Not Pleaded Sufficient Facts to Show Fraud

The N.D. Cal. previously ruled that in addition to "probably" being barred by the Settlement and SPA, Plaintiff's ESOP-related allegations did not "come close to supporting an inference of scienter" to commit fraud. (RJN, Ex. 7 at p. 1-2). Nothing has changed. Plaintiff once again alleges that years after the parties' 2015 Settlement, HFN used the ESOP to issue stock options to certain insiders. (FAC ¶¶ 39-50, 392-446). While Plaintiff may believe that HFN ultimately used the ESOP improperly, that is not sufficient to plead a valid fraud claim because, *inter alia*, it does not establish that HFN intended to misrepresent the ESOP years earlier. Without more, an alleged broken promise does not suffice to state the elements of a fraud claim. (Mot. at 20-21).

### D. Plaintiff's Fraud Claim is Untimely

Plaintiff argues that his fraud claim is not barred by the three-year statute of limitations because he speculates that, if he had requested HFN's capitalization table in 2019 or earlier, the company would have "stonewalled" or otherwise refused to comply. (Opp. at 13-14). Yet, Plaintiff never tried at all – there are no facts in the FAC indicating that Plaintiff asked for HFN's capitalization table in 2019 or earlier, let alone that he invoked and tried to avail himself of his ability to procure such records under 8 Del. C. § 220. Because Plaintiff could have obtained the HFN capitalization table in 2019 and discovered the purported misuse of the ESOP at that time – and because Plaintiff made no effort to do so, despite his professed and long-standing concerns about the use of the ESOP – his claim is untimely under well-established Utah and

Delaware law and must be dismissed.  (Mot. at 21-22).[5]

Dated:  February 23, 2024

TROUTMAN PEPPER HAMILTON SANDERS LLP

By: /s/ Nathan R. Marigoni
   Anthony C. Kaye (Utah SBN 8611)
   Nathan R. Marigoni (Utah SBN 14885)
   Matthew H. Ladner (*pro hac vice*)
   William M. Taylor (*pro hac vice*)
   Attorneys for Defendant HFN, INC.

---

[5] Plaintiff takes issue with HFN's citation to *Colosimo v. Roman Catholic Bishop*, 156 P.3d 806 (Utah 2007) for the general rule that a claim accrues when a plaintiff could have discovered the relevant facts through reasonable diligence and inquiry.  According to Plaintiff, this case is inapposite because it involved egregious facts of sexual abuse of children.  In that case, even with extreme facts, the Utah Supreme Court held that the victims' claims were time-barred because the pertinent facts were known or available to them earlier, and the egregious circumstances did not justify an exception to the statute of limitations.  It is remarkable (and wrong) that Plaintiff here argues the statute of limitations should not apply to his shareholder-based claims given the Utah Supreme Court found that the statute of limitations applies to victims of childhood sexual abuse.