IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ALLAN MILLER,<br><br>                    Plaintiff,<br><br>v.<br><br>HFN, INC., KALAARI CAPITAL ADVISORS PRIVATE LIMITED, SRIDHAR SANTHANAM, KUMAR SHIRALAGI, PAVAN VAISH, and VANI KOLA,<br><br>                    Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' [15] & [16] MOTIONS TO DISMISS<br><br>Case No. 2:23-cv-00733-CMR<br><br>Magistrate Judge Cecilia M. Romero |

All parties in this case have consented to the undersigned conducting all proceedings, including entry of final judgment (ECF 41). *See* 28 U.S.C. § 636(c); *see also* Fed. R. Civ. P. 73. Before the court are two Motions: Defendant HFN, Inc.'s (HFN) Motion to Dismiss (HFN's Motion) (ECF 15) and Defendant Kumar Shiralagi's (Shiralagi) Motion to Dismiss (Shiralagi's Motion) (ECF 16) (collectively, the Motions). The court also considers each of the Motions' respective Oppositions (ECF 26; ECF 27) and Reply Memoranda (ECF 30; ECF 31). Having carefully considered the relevant filings, the court finds that oral argument is not necessary and decides this matter on the written memoranda. *See* DUCivR 7-1(g). For the reasons set forth below, the court GRANTS the Motions.

## I.      BACKGROUND

Plaintiff's Amended Complaint is the operative complaint and asserts nineteen causes of action against HFN and various HFN board members, including Shiralagi, Kalaari Capital Advisors Private Limited (Kalaari), Sridhar Santhanam (Santhanam), Pavan Vaish (Vaish), and

Vani Kola (Kola)[1] (collectively, Defendants) (ECF 13 ¶¶ 7–12). As a minority shareholder of HFN, Plaintiff believes that Defendants have "fraudulently converted" company assets, breached their fiduciary duties, and "defraud[ed] him of the value of his shares" (*id.* ¶ 2). Below is a summary of the relevant alleged facts in the Amended Complaint.

The numerous issues that Plaintiff has with Defendants begin with what he refers to as "[t]he 2012 fraud" (*id.* ¶ 18). According to Plaintiff, the 2012 fraud led to a suit brought by minority shareholders of HFN against Defendants that eventually resulted in a settlement agreement (the 2015 Settlement) (*id.*). One component of that settlement was "HFN's Employee Stock Option Plan" (ESOP), which Plaintiff asserts was meant to "attract talent" to the company (*id.* ¶¶ 39–40). But rather than using the ESOP for its intended purposes, Plaintiff contends that Defendants have been using it "for outright grants to themselves," thereby converting "the ESOP pool into shares for their own personal benefit" (*id.* ¶¶ 39–49).

In 2022, Plaintiff also began to suspect Defendants of further wrongdoing when he was "approached by several anonymous informants" with information about HFN and in particular, with concerns that "key resources were not being utilized to advance the interests of HFN" (*id.* ¶ 20). Because there "had not been a single shareholder meeting since 2012," Plaintiff attempted to request that a meeting take place, and in response, the CEO and Chairman of the Board of HFN, Santhanam, indicated that a meeting would be scheduled but requested that Plaintiff submit a formal request to examine the company's records and that Plaintiff execute a "confidentiality agreement" (*id.* ¶¶ 9, 20–23). Plaintiff refused, and based on his allegations, it appears that a shareholder meeting never took place (*id.* ¶¶ 24–30).

---

[1] While Plaintiff does not allege that Kola is a board member of HFN, he does maintain that Kola is the "lead Managing Director at Kalaari" and that Kalaari has held a board seat at HFN "[a]t all relevant times" (ECF 13 ¶¶ 8, 12).

Even without a shareholder meeting, Plaintiff asserts he received further information that HFN had an arrangement with an entity known as "Zen," wherein "HFN asked Zen to provide fraudulent invoices," but the funds that were intended to satisfy those invoices in reality went "directly into the pockets of the Defendants" (*id.* ¶¶ 30–33). Plaintiff believes another fraudulent partnership also began between HFN and an organization known as "the Seed Group" (Seed) (*id.* ¶ 35). Through this arrangement, HFN purportedly would pay "a significant amount of money to Seed with no return in the form of sales or support" with the alleged purpose of transferring HFN assets into a separate entity that could "be controlled on demand by the [HFN] Board" without notifying Plaintiff (*id.* ¶ 37).

Furthermore, Plaintiff maintains that, while Santhanam, the "CEO and Chairman of the Board," is "paid a full time salary by HFN," he has "involvement in numerous other companies" that "take a significant amount of time and energy" and that Santhanam "use[s] HFN travel budget" to benefit these other companies (*id.* ¶¶ 9, 51–58). According to Plaintiff, this amounts to a "fraudulent conversion of HFN salaries and travel budget" (*id.* ¶ 58).

Overall, Plaintiff asserts that the "corporate governance of HFN is in a state of disarray" (*id.* ¶ 59). The lack of corporate governance has purportedly led to HFN having "no effective" human resource (HR) management, which Plaintiff believes exposes HFN to "significant" risk (*id.* ¶¶ 66–68). Plaintiff also maintains that HFN's website is significantly lacking, with Defendants failing "to maintain and update the online marketing channel," which Plaintiff states is detrimental to "a company involved in networking or user service" (*id.* ¶¶ 96–99).

Finally, Plaintiff alleges that Defendants have failed to protect HFN's intellectual property on two fronts (*id.* ¶¶ 70–95). First, Plaintiff states that HFN possesses certain patents that have "significant value," and Defendants have allowed the patents to expire without making efforts "to

monetize the patents," thereby failing to maintain and protect HFN's "innovation" which is one of the company's "key assets" (*id.* ¶¶ 70–80). Second, Plaintiff asserts Defendants have failed to update and maintain HFN's software, which led to a security breach, and that Defendants' mismanagement of HFN's software has put the company and its customers "at considerable risk" (*id.* ¶¶ 82–95).

In October 2023, Plaintiff initiated the present suit, (ECF 1) and later filed the Amended Complaint, incorporating the foregoing allegations and asserting the following nineteen causes of action: (1) Fraudulent conversion of HFN revenue through Zen payments; (2) Aiding and abetting fraudulent conversion of HFN revenue through Zen payments; (3) Breach of fiduciary duty with respect to Zen payments; (4) Aiding and abetting breach of fiduciary duty with respect to Zen payments; (5) Fraudulent conversion of HFN cash through Seed payments; (6) Aiding and abetting fraudulent conversion of HFN cash through Seed payments; (7) Breach of fiduciary duty with respect to Seed payments; (8) Aiding and abetting breach of fiduciary duty with respect to Seed payments; (9) Fraudulent conversion of HFN employee salaries for labor for unrelated companies; (10) Fraudulent conversion of HFN travel expenses for travel to unrelated companies; (11) Breach of fiduciary duty in corporate governance; (12) Aiding and abetting breach of fiduciary duty in corporate governance; (13) Breach of fiduciary duty through inadequate HR management; (14) Breach of fiduciary duty through lack of patent monetization; (15) Aiding and abetting breach of fiduciary duty through lack of patent monetization; (16) Breach of fiduciary duty in maintaining software product; (17) Breach of fiduciary duty in maintaining marketing site; (18) Fraudulent misrepresentation of the ESOP; and (19) Breach of fiduciary duty in misuse of the ESOP (ECF 13 at 26–83). Plaintiff asserts these claims against various combinations of Defendants (*see id.*). For ease of reference, the court has divided these claims into three categories: (1) the Fiduciary Duty

Claims (Claims 3–4, 7–8, 11–17, and 19), (2) the Conversion Claims (Claims 1–2, 5–6, and 9–10), and (3) the Fraudulent Misrepresentation Claim (Claim 18).

This is not, however, the first time that Plaintiff has attempted to litigate these claims. Prior to filing the present action, in February 2023, Plaintiff filed similar claims against Defendants, based on the same fact patterns, in the United States District Court for the Northern District of California in a case entitled *Miller v. HFN, Inc., et al.*, Case No. 23-cv-00533-VC (the California Case) (ECF 19; ECF 19-1 at 2; ECF 19-4).[2] After dismissing Plaintiff's initial complaint, the court in the California Case again dismissed Plaintiff's claims in his First Amended Complaint, primarily for lack of jurisdiction (ECF 19-7 at 2). But there was one claim of particular note, which the California court referred to as the "securities fraud claim," the dismissal of which is relevant to the present Motions (*id.*). The California court described the underlying facts for the securities fraud claim as allegations that Defendants made "misrepresentations during settlement discussions in 2015," then "years after the settlement was entered," Defendants purportedly "allocated shares from the [ESOP] in ways they had promised not to at the time of settlement" (*id.* at 2–3). The court then determined that the claim did not satisfy "the heightened pleading requirements of Rule 9," and it failed to even "come close to supporting an inference of scienter given the lengthy separation in time" (*id.*). Finding that there were "[n]o other allegations in [Plaintiff's] complaint" to support

---

[2] HFN and Shiralagi request that the court take judicial notice of the proceedings in the California Case, particularly the filings in Exhibit 1 (ECF 19-1), Exhibit 4 (ECF 19-4), and Exhibit 7 (ECF 19-7) attached to HFN's Motion (ECF 15) and Shiralagi's Motion (ECF 16). The court finds that the proceedings in the California Case relate directly to the current matter and therefore grants HFN's and Shiralagi's request. *See Garcia-Rodriguez v. Gomm*, 169 F. Supp. 3d 1221, 1227 (D. Utah 2016) ("[A]lthough not obliged to do so, a court in its discretion may 'take judicial notice of publicly-filed records in [federal] court and certain other courts concerning matters that bear directly upon the disposition of the case at hand'" (quoting *United States v. Ahidley*, 486 F.3d 1184, 1192, n.5 (10th Cir.2007))). The court further notes that consideration of those earlier proceedings is appropriate in resolving the Motions before it. *See Hodgson v. Farmington City*, 675 F. App'x 838, 840–41 (10th Cir. 2017) ("[F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment." (quoting *Tal v. Hogan*, 453 F.3d 1244, 1264–65 n.24 (10th Cir. 2006))).

his securities fraud claim, and "[b]ecause any further amendment would be futile," the court dismissed that claim "with prejudice" (*id.* at 3).

In response to the Amended Complaint filed in this court, HFN and Shiralagi submitted the present Motions (ECF 15; ECF 16). HFN's Motion and Shiralagi's Motion each request an order dismissing the Amended Complaint, with prejudice, pursuant to Rules 9(b), 12(b)(6), and 23.1 of the Federal Rules of Civil Procedure (ECF 15 at 8; ECF 16 at 8). The two Motions largely mirror one another, arguing that Plaintiff has failed to state a claim against Defendants upon which relief can be granted and asserting that, to the extent Plaintiff has alleged derivative claims, Plaintiff cannot maintain those claims "given his *pro se* status" and his failure "to comply with the requirements of Rule 23.1" (ECF 15 at 8; ECF 16 at 8).

Having considered the filings submitted by the parties, the court turns to the arguments.

## II.   LEGAL STANDARDS

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). In this review, a "court accepts as true well-pleaded factual allegations and views the allegations in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor." *Hendershot v. Gurstel L. Firm, P.C.*, No. 2:20-cv-00118-DBB-DAO, 2020 WL 8083573, at *2 (D. Utah Dec. 17, 2020) (citing

*Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013)), *report and recommendation adopted*, 2021 WL 76163 (D. Utah Jan. 8, 2021).

Additionally, Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and further provides that "[e]ach allegation must be simple, concise, and direct," *id.* R. 8(d)(1). "Rule 8 serves the important purpose of requiring plaintiffs to state their claims intelligibly so as to inform the defendants of the legal claims being asserted." *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). What's more, when alleging fraud, a heightened pleading standing applies, and "a party must state with particularity the circumstances constituting [the] fraud or mistake." Fed. R. Civ. P. 9(b). Under this standard, a plaintiff is generally required "to identify the time, place, and content of each allegedly fraudulent representation or omission, to identify the particular defendant responsible for it, and to identify the consequence thereof." *Gaddy v. Corp. of President of Church of Jesus Christ of Latter-Day Saints*, 551 F. Supp. 3d 1206, 1217 n.85 (D. Utah 2021) (quoting *Hafen v. Strebeck*, 338 F. Supp. 2d 1257, 1263 (D. Utah 2004)).

In undertaking this analysis, the court is mindful that Plaintiff is acting *pro se* and that his filings are liberally construed and held "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Still, a *pro se* plaintiff must "follow the same rules of procedure that govern other litigants." *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)). The court "will [also] not supply additional factual allegations to round out a plaintiff's

complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997).

## III.   DISCUSSION

### A.  The Fiduciary Duty Claims

The Fiduciary Duty Claims cover various topics, including the Zen payments, the Seed payments, corporate governance, HR management, HFN's patents, the software product, the company website, and the ESOP (ECF 13 at 31–83). HFN's Motion argues that Plaintiff cannot state a valid fiduciary duty claim against HFN because a corporation does not owe any duties to its stockholders (ECF 15 at 14–15). Shiralagi's Motion argues Plaintiff cannot maintain a valid fiduciary duty claim against him—or any of the Defendants for that matter—because, under Delaware law, Plaintiff's specific claims would be considered derivative claims which cannot be maintained by a pro se litigant, and the Amended Complaint has insufficiently pled such claims (ECF 16 at 14–18). Plaintiff counters the arguments in both Motions by asserting HFN is the "alter ego" of the individual defendants and that Delaware law should not be applied to his claims because "the status of HFN as a Delaware corporation may be voidable" (ECF 26 at 8, 12; ECF 27 at 9, 13). The court is unpersuaded by Plaintiff's arguments and, for the following reasons, dismisses the Fiduciary Duty Claims.

### 1.   Delaware law governs the Fiduciary Duty Claims.

According to HFN and Shiralagi, the Fiduciary Duty Claims are governed by the law of the state of incorporation, meaning that because HFN was incorporated in Delaware, Delaware law governs Plaintiff's claims (ECF 15 at 14; ECF 16 at 14). Under the "internal affairs doctrine," only one state should possess "the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors,

and shareholders. . . ." *Newsome v. Gallacher*, 722 F.3d 1257, 1272 n.6 (10th Cir. 2013) (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982)). In accordance with that doctrine, breach of fiduciary duty claims raised against a corporate officer are evaluated under "[t]he local law of the state of incorporation." *IT Portfolio, Inc. v. NER Data Corp.*, No. 1:15-cv-00179-DDD-STV, 2024 WL 2273198, at *5 (D. Colo. Feb. 22, 2024) (quoting Restatement (Second) of Conflict of Laws § 309 (Am. L. Inst. 1971)); *see also In re ZAGG Inc. S'holder Derivative Action*, 826 F.3d 1222, 1228 (10th Cir. 2016) (applying the law of the state of incorporation to claims raised by shareholders); *Transp. All. Bank, Inc. v. Arrow Trucking Co.*, 766 F. Supp. 2d 1188, 1197 (N.D. Okla. 2011) (finding it appropriate when considering breach of fiduciary duty claims "that the obligations owed by a majority shareholder to the corporation and to minority shareholders . . . be determined by the local law of the state of incorporation"). Based on the relevant law and the allegations within the Amended Complaint, identifying HFN as "a Delaware corporation" (ECF 13 ¶ 7), the court agrees with HFN and Shiralagi that Delaware law applies to the Fiduciary Duty Claims.

Plaintiff resists this conclusion in his Oppositions by challenging, for the first time, the validity of HFN's status "as a Delaware corporation," arguing it "may be voidable" (ECF 26 at 12; ECF 27 at 13). In that same vein, Plaintiff attempts to reframe the allegations in the Amended Complaint, arguing that "HFN is not functionally acting as a corporation" and, instead, is the "alter ego" of "Santhanam" and "the other [individual] Defendants" (ECF 26 at 12; ECF 27 at 13). But based on the Amended Complaint, Plaintiff's arguments are unavailing.

Notably, the arguments presented in Plaintiff's Oppositions—attacking the validity of HFN as a Delaware corporation—directly contradict his allegations in the Amended Complaint, wherein he states that HFN "is a Delaware corporation" and he maintains that HFN is subject to the

corporate obligations set forth under Delaware law (ECF 13 ¶¶ 7,17, 41). In support of this new argument, Plaintiff's Oppositions rely on facts and documents outside the pleadings (ECF 26 at 8–13; ECF 27 at 9–14). In general, "the sufficiency of a complaint must rest on its contents alone," and there are limited exceptions to this principle where a court may consider a matter outside the pleading without converting the motion into one for summary judgment, such as "facts subject to judicial notice." *Gallegos v. Bernalillo Cnty. Bd. of Cnty. Comm'rs*, 278 F. Supp. 3d 1245, 1269–70 (D.N.M. 2017) (quoting *Tal v. Hogan*, 453 F.3d at 1264 n.24 (10th Cir. 2006)); *see also* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Plaintiff has not demonstrated that this court can or should consider the additional facts and documents that purportedly support his position for purposes of the Motions, nor has he demonstrated that it would be appropriate to convert the Motions into motions for summary judgment.

For similar reasons, Plaintiff's attempt to avoid application of Delaware law by claiming he is "piercing the corporate veil" through the Amended Complaint also fails. In order to proceed under the theory that HFN is the alter ego of the individual Defendants, Plaintiff was required to "adequately allege facts that would warrant the piercing of [HFN's] corporate form." *See U.S. Cybertronics, Inc. v. Monarch Int'l Holdings, Inc.*, No. 2:05-cv-48 TS, 2005 WL 8177209, at *1 (D. Utah Aug. 15, 2005). The Amended Complaint however is completely devoid of any allegations that would alert this court that Plaintiff was attempting to proceed under an alter ego theory, and it would therefore be improper for the court to consider facts not pled in the operative complaint. *See Peretto v. Erickson*, No. 1:23-cv-00025-DBB-DBP, 2024 WL 555140, at *8 (D. Utah Feb. 12, 2024) (dismissing a claim for failing to allege sufficient facts relevant to that claim

in the operative complaint). Accordingly, for purposes of this analysis, the court will not consider Plaintiff's new theories for relief that he asserts for the first time in his Oppositions.

Accordingly, the court applies Delaware law to the Fiduciary Duty Claims.

### 2. The Fiduciary Duty Claims are derivative claims.

In the Amended Complaint, Plaintiff declares that he is bringing each cause of action against Defendants as a direct claim, and he is adamant that none are derivative claims (ECF 13 ¶ 100). Plaintiff's description of his suit however is not binding, and the court must instead "'look to all the facts of the complaint and determine for itself' whether a claim is direct or derivative." *In re MultiPlan Corp. S'holders Litig.*, 268 A.3d 784, 801 (Del. Ch. 2022) (quoting *Dieterich v. Harrer*, 857 A.2d 1017, 1027 (Del. Ch. 2004)). For the following reasons, this court agrees with HFN and Shiralagi that the Fiduciary Duty Claims are derivative.

Under Delaware law, "determining whether a stockholder's claim is derivative or direct" turns on the answering of two questions. *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004). First, whether the alleged harm was suffered by "the corporation or the suing stockholders, individually." *Id.* And second, whether "the benefit of any recovery or other remedy" would be received by "the corporation or the stockholders, individually." *Id.* In other words, courts "should look to the nature of the wrong and to whom the relief should go." *Id.* at 1039. Upon answering the relevant questions, if the court finds that the alleged injury is against the corporation and that the relief requested would go to the corporation, then the claim would appropriately be considered a derivative claim. *See id.*

As for what types of claims might be considered derivative, Delaware courts have provided further guidance relevant to the matter at hand. For instance, under Delaware law, "oversight claims" asserted against corporate officers "are derivative," *In re McDonald's Corp. S'holder*

*Derivative Litig.*, 289 A.3d 343, 367 (Del. Ch. 2023), and "a classic derivative claim" is one "alleging corporate mismanagement, and a resulting drop in the value of the company's stock," *Parnes v. Bally Ent. Corp.*, 722 A.2d 1243, 1245 (Del. 1999). Upon review of the Amended Complaint, it is clear that Plaintiff's allegations relating to corporate governance, HR management, monetization of patents, maintaining HFN's software, and updating the company website (claims 11–17) are all claims that attack the management of the corporation and the oversight within the company and are therefore correctly considered as derivative claims.

Furthermore, under Delaware law, another "classic derivative formulation" is demonstrated where "a director engages in self-dealing or commits waste" because the director is essentially taking "from the corporate treasury and any recovery would flow directly back into the corporate treasury." *Thornton v. Bernard Techs., Inc.*, No. 962-VCN, 2009 WL 426179, at *3 (Del. Ch. Feb. 20, 2009). Consequently, "[a]ny benefit to the stockholders would be limited to the indirect effect on their proportional ownership or share of the venture." *Id.* In this case, the remaining Fiduciary Duty Claims that have yet to be discussed are those related to the Zen payments, the Seed payments, and the ESOP. In applying the "classic derivative formulation" described by Delaware courts, those particular claims raised by Plaintiff all assert that a corporate director has either engaged in self-dealing or has committed waste. And because those alleged misdeeds were removing funds "from the corporate treasury," any recovery would naturally "flow directly back into the corporate treasury." *See id.* It therefore follows that the Fiduciary Duty Claims concerning the Zen payments, the Seed payments, and the ESOP (Claims 3–4, 7–8, and 19) are appropriately considered as derivative claims.

To the extent that Plaintiff seeks to differentiate his breach of fiduciary duty claims from his aiding and abetting the breach of fiduciary duty claims, all of said claims would be properly

considered as derivative under Delaware law. *See Feldman v. Cutaia*, 956 A.2d 644, 662 (Del. Ch. 2007), *aff'd*, 951 A.2d 727 (Del. 2008) ("Prior decisions of this court have validated the unsurprising proposition that an aiding and abetting claim premised on a derivative cause of action is necessarily derivative itself.").

In applying the relevant law to the allegations in the Amended Complaint, the court determines that the Fiduciary Duty Claims are derivative claims.

### 3.   Plaintiff cannot maintain these derivative claims.

As discussed above, the Fiduciary Duty Claims are all appropriately classified as derivative claims. And the parties agree that Plaintiff, as a pro se litigant, cannot maintain derivative claims (*see* ECF 16 at 17; ECF 27 at 18). *See Tal*, 453 F.3d at 1254; *see also Pope v. Hycroft Mining Holding Corp.*, No. 2022-0957-LWW, 2024 WL 3352852, at *1 (Del. Ch. July 9, 2024) ("[T]he pro se plaintiff who purports to bring derivative claims must retain counsel or those claims will be dismissed."). For that reason alone, Plaintiff's claims should be dismissed, but the court notes that those claims are further barred for two other reasons.

First, under Delaware law, where "a plaintiff does not make a pre-suit demand on the board of directors, the complaint must plead with particularity facts showing that a demand on the board would have been futile." *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 120 (Del. Ch. 2009). The same is true under Utah law. *See GLFP, Ltd. v. CL Mgmt., Ltd.*, 163 P.3d 636, 645–46 (Utah Ct. App. 2007). Plaintiff has failed to plead demand futility in the Amended Complaint, rendering his derivative claims deficient. Second, a complaint asserting derivative claims must be "verified" according to the Federal Rules of Civil Procedure, *see* Fed. R. Civ. P. 23.1(b), which the Amended Complaint is not (*see* ECF 13).

Because Plaintiff would not be able to obtain relief even as to those Defendants who have not yet appeared, the court determines that the claims should be dismissed as to all Defendants. The Fiduciary Duty Claims (Claims 3–4, 7–8, 11–17, and 19) against Defendants accordingly are hereby DISMISSED WITHOUT PREJUDICE.

### B.  The Conversion Claims

The Conversion Claims asserted against HFN and Shiralagi (Claims 1–2 and 5–6) concern the Zen payments and the Seed payments (ECF 13 ¶¶ 102–37, 174–209). The two other Conversion Claims raised by Plaintiff (Claims 9–10) are against HFN and Santhanam and concern the "time," "energy," and "travel budget" that Santhanam has allegedly spent to further his interests in other companies (*id.* ¶¶ 58, 246–83). According to the analysis set forth in their Motions, HFN and Shiralagi appear to agree that under both Utah law and Delaware law, the Conversion Claims should be considered derivative claims (ECF 15 at 17–19; ECF 16 at 19–20). The court agrees.

Concerning the Zen and Seed payments, the court notes that the allegations supporting the related claims each state that HFN is paying money to these organizations, Zen and Seed, without receiving anything in return (ECF 13 ¶¶ 31–37). As for the claims against HFN and Santhanam, the allegations are that because Santhanam is "paid a full time salary by HFN," and he has "involvement in numerous other companies" that "take a significant amount of time and energy," the time he spends working to benefit these companies amounts to a "fraudulent conversion of HFN salaries" (*id.* ¶¶ 51–58, 246–83). Likewise, Plaintiff alleges that Santhanam "use[s] the HFN travel budget" to benefit these other companies which is also a fraudulent conversion of HFN resources (*id.* ¶¶ 51–58).

As previously noted, *see supra* Part III.A.2, under Delaware law, "a classic derivative" cause of action is one where "a director engages in self-dealing or commits waste" because the

director is essentially taking "from the corporate treasury and any recovery would flow directly back into the corporate treasury." *Thornton*, 2009 WL 426179, at *3. Similarly, Utah law treats "conversion of corporate assets" and "misappropriation of corporate assets" as derivative claims, where the "plaintiff's complaint contain[s] no allegations of a harm specific to [the] plaintiff, as opposed to harms affecting other shareholders or creditors of the corporation." *Warner v. DMG Color, Inc.*, 20 P.3d 868, 872 (Utah 2000). In this matter, the Amended Complaint contains no allegations of any harm specific to Plaintiff as opposed to harm affecting other shareholders (*See generally* ECF 13). Each of the Conversion Claims is therefore appropriately classified as a derivative claim.

Despite Plaintiff's failure to plead facts that would support a conclusion that he has suffered any harm specific to him, he believes the Conversion Claims should not be dismissed because "HFN is not acting as a corporation but is instead acting as an alter ego for the Defendants in various capacities" related to each conversion claim (ECF 26 at 13; ECF 27 at 14). Again, this is an argument Plaintiff cannot rely on to prevent the dismissal of his claims. Nowhere in the Amended Complaint does Plaintiff allege that he is attempting to pierce the corporate veil and proceed with his claims against Defendants under an alter ego theory of the case. It would thus be inappropriate for the court to consider those arguments and allegations when analyzing the Motions before it. *See Peretto*, 2024 WL 555140, at *8.

Because the Conversion Claims are derivative, Plaintiff is barred from maintaining those claims as a pro se litigant. *See Tal*, 453 F.3d at 1254. Those claims are further subject to dismissal because the Amended Complaint does not "plead with particularity facts showing that a demand on the board would have been futile," *In re Citigroup Inc.*, 964 A.2d at 120, nor was the Amended

Complaint "verified" as is required by the Federal Rules of Civil Procedure for derivative actions, *see* Fed. R. Civ. P. 23.1(b).

Because Plaintiff would not be able to obtain relief even as to those Defendants who have not yet appeared, the court determines that the claims should be dismissed as to all Defendants. The Conversion Claims (Claims 1–2, 5–6, and 9–10) against Defendants accordingly are hereby DISMISSED WITHOUT PREJUDICE.

### C.  The Fraudulent Misrepresentation Claim

Finally, the court turns to the Fraudulent Misrepresentation Claim, which Plaintiff has asserted against all Defendants (ECF 13 ¶¶ 392–446). The corresponding allegations raised by Plaintiff as to that claim are that, during the 2015 settlement negotiations, Defendants misrepresented to Plaintiff and the other minority shareholders that the intended purpose of the ESOP would be to attract new talent to the company (*id.* ¶¶ 39–49). Plaintiff alleges that the 2015 Settlement was then executed and, sometime thereafter, Defendants used the ESOP to award equity to insiders and not as an incentive to new employees (*id.*). According to HFN and Shiralagi, the Fraudulent Misrepresentation Claim is insufficiently pled and is barred by the doctrine of res judicata (ECF 15 at 19–28; ECF 16 at 20–28).[3] The court addresses each argument in turn.

#### 1.  The Fraudulent Misrepresentation Claim does not comply with Rule 9(b).

To succeed on a claim for fraudulent misrepresentation, a plaintiff must establish the following elements:

> (1) a representation; (2) concerning a presently existing material fact; (3) which is false; (4) which the representor either (a) knew to be false, or (b) made recklessly; (5) for the purpose of inducing the other party to act upon it; (6) that the other party,

---

[3] HFN and Shiralagi raise two alternative grounds for dismissal of the Fraudulent Misrepresentation Claim: (1) that it is barred by the 2015 Settlement and (2) the claim is untimely (ECF 15 at 24–29; ECF 16 at 24–29). Because the court determines that the Fraudulent Misrepresentation Claim is insufficiently pled and barred by res judicata, it need not consider HFN's and Shiralagi's alternative grounds for relief.

acting reasonably and in ignorance of its falsity; (7) did rely in fact upon it; (8) and was thereby induced to act; (9) to his or her injury and damage.

*Precision Vascular Sys., Inc. v. Sarcos, L.C.*, 199 F. Supp. 2d 1181, 1191 (D. Utah 2002) (citing *Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 800 (Utah 1991)). Furthermore, a claim for fraudulent misrepresentation requires "that a complaint plead material misrepresentation and scienter with particularity." *Id.* (citing *Crookston*, 817 P.2d at 800); *see also* Fed. R. Civ. P. 9(b).

According to HFN and Shiralagi, Plaintiff's fraud claim falls "well-short" of the heightened pleading requirements imposed by Rule 9 of the Federal Rules of Civil Procedure (ECF 15 at 27; ECF 16 at 27). In the Amended Complaint, Plaintiff indicates that the ESOP was a "significant component of the 2015 settlement negotiations" and the ESOP was a "key component to attract talent to a high-tech company" (ECF 13 ¶¶ 39–40). Plaintiff indicates that the compromise reached during the negotiations was that "half the ESOP pool"—which he indicated is approximately 2,616,500 shares—would be considered "outstanding shares" (*id.* ¶ 40). According to Plaintiff, by 2021, the ESOP shares had been reduced by 757,154 shares which were not used to attract new talent to the company and, instead, used by Defendants "for their own personal gain and self-dealing" (*id.* ¶¶ 42–44). The Amended Complaint however fails to allege that the ESOP would be used exclusively to attract new talent; in fact, Plaintiff seemingly acknowledges that only "half" of the ESOP would be considered as "outstanding shares" (*id.* ¶ 40). Thus, based on the pleadings, over half of the ESOP shares have remained untouched (*id.* ¶¶ 43–44), and nowhere does Plaintiff allege that there was a time limit by which the ESOP shares had to be allocated to new employees (*see generally id.*). In evaluating his allegations as a whole, Plaintiff has not stated with particularity facts that support his position that he was induced to take any actions based on misrepresentations of Defendants and that he did so to his own detriment.

Moreover, in the cause of action itself, Plaintiff merely lists each defendant by name and then alleges that the particular defendant falsely represented that the ESOP shares would be used to attract talent to HFN (*see id.* ¶¶ 392–446). Notably, the allegations against each defendant are identical (*id.*). And while it is certainly possible that all six defendants individually made such statements to Plaintiff, these are broad allegations that fail to identify the time or place of these statements much less whether these were verbal representations or part of some written communication. Plaintiff's failure to provide any such details in his allegations renders them insufficiently pled under Rule 9(b). *See Gaddy v. Corp. of President of Church of Jesus Christ of Latter-Day Saints*, 551 F. Supp. 3d 1206, 1217 n.85 (D. Utah 2021); *see also Fisherman Surgical Instruments, LLC v. Tri-Anim Health Servs., Inc.*, No. CIV.A. 06-2082KHV, 2007 WL 852666, at *2 (D. Kan. Mar. 21, 2007) (stating a fraud defense did not satisfy Rule 9(b) where it failed "to specify the time and place of any misrepresentations or omissions, the specific content of any statements or matter omitted, the specific individual(s) who made the statements or omitted material information and the form of any statements, *i.e.* oral or written").

The court therefore agrees with Shiralagi and HFN that the Fraudulent Misrepresentation Claim is insufficiently pled and should be dismissed.

2.  The Fraudulent Misrepresentation Claim is barred by res judicata.

Beyond their argument that the claim is insufficiently pled, HFN and Shiralagi go a step further, requesting that the court dismiss the Fraudulent Misrepresentation Claim with prejudice because it is barred by the doctrine of res judicata. "The doctrine of res judicata prohibits litigation of certain claims based on the resolution of an earlier action between the same parties." *Reed v. McKune*, 298 F.3d 946, 950 (10th Cir. 2002). Res judicata, or claim preclusion, applies when three elements exist: "(1) a final judgment on the merits in an earlier action; (2) identity of the parties in

the two suits; and (3) identity of the cause of action in both suits." *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005). "If these requirements are met, res judicata is appropriate unless the party seeking to avoid preclusion did not have a 'full and fair opportunity' to litigate the claim in the prior suit." *Id.* (quoting *Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 n.4 (10th Cir. 1999)).

It is uncontested that the California Case involved the same parties as the present matter (*compare* ECF 13 at 4–5, *with* ECF 19-1 at 3–4); thus, the second element of res judicata is met. Plaintiff, however, disputes that the other two elements of res judicata apply to the Fraudulent Misrepresentation Claim (ECF 26 at 14–17). The court addresses each in turn.

The court begins with the third element discussed above, the "identity of the cause of action in both suits." *See MACTEC*, 427 F.3d at 831. In determining whether the "cause of action" shares the same identity, the "transactional approach" is applied, under which "a cause of action includes all claims or legal theories of recovery that arise from the same transaction." *Id.* at 832 (citing Restatement (Second) of Judgments § 24 (Am. L. Inst. 1982)). What constitutes a transaction then turns on an assessment of the operative facts; thus, "a new claim can go forward so long as it is based on new and independent facts not part of the previous transaction." *Haik v. Salt Lake City Corp.*, 567 F. App'x 621, 631 (10th Cir. 2014).

Applying that reasoning to the present matter, the court looks to the allegations filed in the California Case (*see* ECF 19-4) and the California court's dismissal of Plaintiff's claims (*see* ECF 19-7). The California court described Plaintiff's "securities fraud claim" as allegations regarding Defendants' "purported misrepresentations during settlement discussions in 2015," and "that years after the settlement was entered," Defendants "allocated shares from the [ESOP] in ways they had promised not to at the time of settlement" (ECF 19-7 at 2–3). The facts underlying the Fraudulent Misrepresentation Claim in this matter arise from that same transaction. Here, Plaintiff has asserted

that, during the 2015 settlement negotiations, Defendants misrepresented to Plaintiff and the other minority shareholders that the intended purpose of the ESOP would be to attract new talent to the company (ECF 13 ¶¶ 39–49). This element of res judicata has therefore been met.

Plaintiff resists this conclusion by arguing that Defendants have since "admitted" to the facts underlying his claim (ECF 26 at 15). But Plaintiff provides no case law or legal analysis that would support his position that the preclusive effect of res judicata can be avoided if the defendant has "admitted" to the operative facts. Moreover, this argument is drawn from facts not included in the Amended Complaint and it would be inappropriate for the court to consider them. *See Peretto*, 2024 WL 555140, at *8.

When it comes to the first element, whether there was a final judgment on the merits in the earlier action, the court notes that "unless otherwise indicated," dismissals under Rule 12(b)(6) "constitute a dismissal *with* prejudice" and are considered "an adjudication on the merits (not a technical or procedural dismissal), since it requires an evaluation of the substance of a complaint." *Slocum v. Corp. Exp. U.S. Inc.*, 446 F. App'x 957, 960 (10th Cir. 2011). Whereas a "dismissal without prejudice is a dismissal that does not operate as an adjudication upon the merits, and thus does not have a res judicata effect." *E.E.O.C. v. W.H. Braum, Inc.*, 347 F.3d 1192, 1201–02 (10th Cir. 2003) (quoting *Satsky v. Paramount Commc'ns, Inc.*, 7 F.3d 1464, 1468 (10th Cir. 1993)).

In the California Case, Plaintiff's securities fraud claim was determined by the court to have not been pled "with sufficient particularity," falling "well short of the heightened pleading requirements of Rule 9," and it failed to even "come close to supporting an inference of scienter given the lengthy separation in time" (ECF 19-7 at 2–3). Significantly, the California court was clear that the securities fraud claim was "dismissed with prejudice" (*id.*). Plaintiff attempts to argue that the dismissal from the California Case was "ambiguous" and was "not based on the merits of

the case" (ECF 26 at 15). But there is no mistaking the language used by the California court that the claim was "dismissed with prejudice," meaning it was an adjudication upon the merits. This court is therefore satisfied that the final element of res judicata has been met.

The court further determines that the "narrow exception" to avoid the preclusive effect of res judicata, allowing plaintiffs to proceed with a claim where they "did not have a full and fair opportunity to litigate the claim in the prior suit," does not apply here. *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1243 (10th Cir. 2017) (quoting *MACTEC*, 427 F.3d at 831). This exception only applies "where the requirements of due process were not afforded." *Lenox MacLaren*, 847 F.3d at 1243. Thus, the party seeking to avoid preclusion must show "a deficiency that would undermine the fundamental fairness of the original proceedings[.]" *Id.* (quoting *Nwosun v. Gen. Mills Restaurants, Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997)). As previously discussed, in the California Case, the court found that Plaintiff failed to satisfy the "heightened pleading requirements of Rule 9" (ECF 19-7 at 2). In the present suit, Plaintiff again failed to satisfy the pleading requirements of Rule 9. *See* Part III.C.1. Plaintiff has had more than one chance to satisfy the relevant rules of procedure and yet has failed to do so, even with this latest attempt. There is no indication that Plaintiff was not afforded due process, nor has he demonstrated that there was a deficiency that would cause the court to question the fundamental fairness of the California Case. Accordingly, Plaintiff cannot avoid preclusion of his claim.

Plaintiff failed to plead the Fraudulent Misrepresentation Claim with particularity as required by Rule 9(b), and the claim is further barred by the doctrine of res judicata. Because Plaintiff would not be able to obtain relief even as to those Defendants who have not yet appeared, the court determines that the claim should be dismissed as to all Defendants. The Fraudulent

Misrepresentation Claim (Claim 18) against Defendants accordingly is hereby DISMISSED WITH PREJUDICE.

## ORDER

For the reasons stated above, the court hereby ORDERS as follows:

1. Defendant HFN's Motion to Dismiss (ECF 15) and Defendant Kumar Shiralagi's Motion to Dismiss (ECF 16) are GRANTED;

    a. Plaintiff's Causes of Action One through Seventeen and Nineteen against Defendants are DISMISSED WITHOUT PREJUDICE;

    b. Plaintiff's Eighteenth Cause of Action against Defendants is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

DATED this 26 September 2024.

_Cecilia M. Romero_
Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah